# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| **BURKE BOWERS**, *et al.*, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | 1:15-CV-732 |
| | ) | |
| **BB&T CORPORATION**, *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

| | | |
|---|---|---|
| **BREWSTER SMITH, JR.**, *et al.*, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | 1:15-CV-841 |
| | ) | |
| **BB&T CORPORATION**, *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE CONSOLIDATED AMENDED COMPLAINT

# TABLE OF CONTENTS

QUESTION PRESENTED ....................................................................................................... 1

BACKGROUND ..................................................................................................................... 1

ARGUMENT ........................................................................................................................... 5

I.   PLAINTIFFS FAIL TO STATE A PLAUSIBLE CLAIM FOR BREACH OF
     FIDUCIARY DUTY REGARDING THE PLAN'S INVESTMENT OPTIONS ............. 6

     A.  The Plan Fiduciaries Satisfied Their Fiduciary Duties by Offering a Wide Array of
         Investment Options with Varying Risk and Fee Profiles ............................................. 6

     B.  Plaintiffs' Allegations that Different Mutual Funds and Other Types of Investments
         Had Lower Fees Do Not State a Plausible Claim for Relief ........................................ 9

         1.  The Complaint Fails to Allege Any Similarities Between the Plan's Investment
             Options and the Vanguard Funds .......................................................................... 9

         2.  ERISA Does Not Require Plan Fiduciaries to Offer Separately Managed Account
             or Collective Trust Investment Options .............................................................. 11

     C.  Plaintiffs' Underperformance Claim is Based Solely on a Hindsight Analysis and
         Should Be Dismissed .................................................................................................. 12

     D.  Plaintiffs' Stable Value Fund Claim Should Be Dismissed ....................................... 14

     E.  The Claim Related to the Unitized Stock Fund Should Be Dismissed ...................... 15

II.  PLAINTIFFS' BREACH OF FIDUCIARY DUTY CLAIM REGARDING
     RECORDKEEPING FEES SHOULD BE DISMISSED ................................................. 17

III. THE PROHIBITED TRANSACTION CLAIMS SHOULD BE DISMISSED ............... 18

IV.  THE COMPLAINT FAILS TO ALLEGE FACTS SUFFICIENT TO SHOW THAT
     CERTAIN DEFENDANTS QUALIFY AS FIDUCIARIES ........................................... 22

     A.  BB&T Corp. Is Not a Fiduciary In Any Respect ....................................................... 23

     B.  The Employee Benefits Committee and Defendant Reeder are Not Fiduciaries With
         Respect to the Actions at Issue in the Complaint ...................................................... 24

V.   PLAINTIFFS FAIL TO STATE A CLAIM FOR EQUITABLE RELIEF ..................... 26

i

VI. THE COURT SHOULD DISMISS PLAINTIFFS' CLAIMS FOR FAILURE TO
MONITOR FIDUCIARIES AND CO-FIDUCIARY LIABILITY ................................... 27

VII. PLAINTIFFS' CLAIMS ARISING BEFORE SEPTEMBER 4, 2009 ARE BARRED BY
ERISA'S SIX-YEAR STATUTE OF LIMITATIONS .......................................................... 28

CONCLUSION ......................................................................................................................... 30

# TABLE OF AUTHORITIES

**Cases**

*Amron v. Morgan Stanley Inv. Advisors, Inc.*, 464 F.3d 338 (2d Cir. 2006) ............................... 11

*Ashcroft v. Iqbal*, 556 U.S. 662 (2008) ................................................................... 5, 28

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................. 6

*Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585 (8th Cir. 2009) ................................... 21

*Browning v. Tiger's Eye Benefits Consulting*, 313 F. App'x 656 (4th Cir. 2009) ....................... 29

*Goldenberg v. Indel, Inc.*, 741 F. Supp. 2d 618 (D.N.J. 2010) ............................................. 13, 21

*CIGNA Corp. v. Amara*, 131 S. Ct. 1866 (2011) ......................................................... 27

*David v. Alphin*, 817 F. Supp. 2d 764 (W.D.N.C. 2011), *aff'd*, 704 F.3d 327 (4th Cir. 2013) .... 29

*DeBruyne v. Equitable Life Assurance Soc'y*, 920 F.2d 457 (7th Cir. 1990) ............................... 12

*DiFelice v. Fiduciary Counselors, Inc.*, 398 F. Supp. 2d 453 (E.D. Va. 2005) ........................... 12

*DiFelice v. U.S. Airways, Inc.*, 397 F. Supp. 2d 758 (E.D. Va. 2005) ..................................... 24

*DiFelice v. U.S. Airways, Inc.*, 436 F. Supp. 2d 756 (E.D. Va. 2006) ..................................... 15

*George v. Kraft Foods Global, Inc.*, 641 F.3d 786 (7th Cir. 2011) ......................................... 16

*Hecker v. Deere & Co.*, 556 F.3d 575 (7th Cir. 2009) ............................................. 6, 7, 12, 18, 20

*Hecker v. Deere & Co.*, 569 F.3d 708 (7th Cir. 2009) ..................................................... 17

*In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*, 763 F. Supp. 2d 423 (S.D.N.Y. 2011) ......................................................................................... 28

*In re Constellation Energy Grp., Inc.*, 738 F. Supp. 2d 602 (D. Md. 2010) ........................... 27, 28

*In re Mut. Fund Inv. Litig.*, 403 F. Supp. 2d 434 (D. Md. 2005) ......................................... 23

*Krueger v. Ameriprise Fin., Inc.*, No. 11-cv-02781, 2012 WL 5873825 (D. Minn. Nov. 20, 2012) ......................................................................................... 21

*Kruger v. Novant Health*, No. 1:14CV208, 2015 WL 5511052 (M.D.N.C. Sept. 17, 2015) ......... 8

*Leber v. Citigroup 401(k) Plan Inv. Comm.*, No. 07-CV-9329, 2015 WL 5244660
    (S.D.N.Y. Sept. 8, 2015) ................................................................................. 13

*Leber v. Citigroup, Inc.*, No. 07 Civ. 9329, 2010 WL 935442 (S.D.N.Y. Mar. 16, 2010) ..... 20, 21

*Loomis v. Exelon Corp.*, 658 F.3d 667 (7th Cir. 2011) ............................................. 7, 11

*Mehling v. N.Y. Life Ins. Co.*, 163 F. Supp. 2d 502 (E.D. Pa. 2001) ........................... 20

*Pegram v. Herdich*, 530 U.S. 211 (2000) .................................................................. 23

*Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt., Inc.*, 712 F.3d 705
    (2d Cir. 2013) ................................................................................................. 12, 13

*Renfro v. Unisys Corp.*, 671 F.3d 314 (3rd Cir. 2011) ...................................... 7, 10, 18

*Rochow v. Life Ins. Co. of N. Am.*, 780 F.3d 364 (6th Cir. 2015) ................................. 26

*Sec'y of State for Def. v. Trimble Navigation Ltd.*, 484 F.3d 700 (4th Cir. 2007) .......................... 1

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) ................................ 1

*Tibble v. Edison Int'l*, 135 S. Ct. 1823 (2015) .................................................. 8, 14, 29

*Tibble v. Edison Int'l*, 729 F.3d 1110 (9th Cir. 2013) ............................................ 8, 16

*Veney v. Wyche*, 293 F.3d 726 (4th Cir. 2002) ...................................................... 6, 26

**Statutes**

29 U.S.C. § 1002(21)(A) ......................................................................................... 23

29 U.S.C. § 1101(b)(1) ............................................................................................ 19

29 U.S.C. § 1105 ..................................................................................................... 24

29 U.S.C. § 1105(a) ................................................................................................. 28

29 U.S.C. § 1106(a) ........................................................................................... 18, 20

29 U.S.C. § 1106(b) ................................................................................................ 18

29 U.S.C. § 1106(b)(3) ............................................................................................ 19

29 U.S.C. § 1108 ..................................................................................................... 20

iv

29 U.S.C. § 1108(a) ........................................................................................... 21

29 U.S.C. § 1108(b)(2) ...................................................................................... 22

29 U.S.C. § 1108(c)(2) ....................................................................................... 22

29 U.S.C. § 1113(1)-(2) ..................................................................................... 28

29 U.S.C. § 1113(2) ........................................................................................... 29

29 U.S.C. § 1132(a)(3) ....................................................................................... 26

**Regulations**

29 C.F.R. § 2509.75-8 Q & A FR-16 .................................................................. 24

29 C.F.R. § 2550.404c-1(b)(3) ........................................................................... 15

**Federal Rules of Civil Procedure**

Fed. R. Civ. P. 12(b)(6) .................................................................................. 1, 4

**Other Authorities**

42 Fed. Reg. 18734 (Apr. 8, 1977) .................................................................... 21

Advisory Council on Emp. Welfare and Pension Benefit Plans, *Outsourcing Employee Benefit Plan Services*, at 17 (Nov. 2014) ............................................................ 18

U.S. Dep't of Labor, Emp. Benefits Sec. Admin., *401(k) Plan Fee Disclosure Form*, https://www.dol.gov/ebsa/pdf/401kfefm.pdf ......................................... 6

U.S. Dep't of Labor, Emp. Benefits Sec. Admin., *A Look at 401(k) Plan Fees*, at 7 (Aug. 2013), http://www.dol.gov/ebsa/pdf/401kFeesEmployee.pdf ............................. 10

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and Local Rules 7.2 and 7.3, Defendants respectfully submit this Memorandum of Law in support of their Motion to Dismiss the Consolidated Amended Complaint.

## QUESTION PRESENTED

Whether the Consolidated Amended Complaint ("Complaint" or "Am. Compl.") should be dismissed because it fails to state a claim upon which relief can be granted?

## BACKGROUND

BB&T Corporation ("BB&T Corp.") is one of the largest financial services holding companies in the United States. Through more than 2,100 financial centers in 15 states and Washington, D.C., it offers a full range of consumer and commercial banking, securities brokerage, asset management, mortgage and insurance products.

The company established the BB&T Corporation 401(k) Savings Plan (the "Plan") in 1982 as a retirement savings vehicle for employees of its operating subsidiaries and affiliates. The Plan has been amended and restated several times, most recently as of January 1, 2013. (*See* Declaration of Michael J. Prame ("Prame Decl."), Ex. 1 (BB&T Corp. 401(k) Savings Plan, Jan. 1, 2013 Restatement ("Plan Document")); Am. Compl. ¶ 10 (referring to provisions of the Plan Document).)[1] The Plan is a defined contribution plan governed by the Employee Retirement Income Security Act of 1974, as amended

---

[1] In connection with a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., a court may consider "the complaint in its entirety, as well as . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Further, the court may consider documents that are "integral to the complaint." *Sec'y of State for Def. v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).

1

("ERISA").  (*See* Prame Decl. Ex. 2 (Summary Plan Description for BB&T Corporation 401(k) Savings Plan ("SPD")) at 25; Am. Compl. ¶ 26 (referring to materials provided to Plan participants).)  Employees who participate in the Plan contribute a portion of their compensation to the Plan and the company matches employee contributions at a rate of 100% for the first 6% of compensation.  (*See* Prame Decl. Ex. 2 at 4.)

Over 38,000 employees participate in the Plan.  Plaintiffs are twelve current and former Plan participants.  (Am. Compl. ¶¶ 11-22.)  Their Complaint primarily focuses on the investment options that have been made available over time to the Plan participants. The investment options have included a mix of mutual funds managed by affiliates of BB&T Corp. (including Defendant Sterling Capital Management, LLC ("Sterling Capital")), mutual funds managed by other companies (such as T. Rowe Price and Fidelity), multiple options designed to protect principal, and a company stock fund.  (*Id.* ¶ 81.)  Defendant Branch Banking and Trust Company ("Branch Bank"), a subsidiary of BB&T Corp., provides trustee and recordkeeping services.  (*Id.* ¶ 26.)

The Plan Document identifies who serves in a fiduciary capacity under ERISA and enumerates each fiduciary's particular duties.  (Prame Decl. Ex. 1 at § 10.)  Defendant Compensation Committee of BB&T Corp.'s Board ("Compensation Committee") is responsible for determining which investment options to make available to Plan participants.  (*Id.* at § 10.1.5; Am. Compl. ¶ 26.)  Defendant Employee Benefits Plan Committee ("Employee Benefits Committee")—whose members are appointed by the BB&T Corp. Board of Directors (the "Board")—has the duty of interpreting Plan

2

provisions and administering the Plan in accordance with its terms. (*See* Prame Decl. Ex. 1 § 10.1.2; Am. Compl. ¶ 24.) Without distinguishing between the different fiduciary roles, Plaintiffs allege the Defendants breached ERISA's fiduciary duties of prudence and loyalty by (1) using investment options that charged "high" management fees relative to other investment options available in the market and, in some cases, underperformed market indices (*id.* ¶¶ 65-89, 139-46); (2) offering short-term fixed income options instead of a stable value fund (*id.* ¶¶ 90-100, 147-51); (3) using a "unitized" common stock fund (*id.* ¶¶ 101-07, 152-57); and (4) allowing Branch Bank to receive allegedly excessive compensation for providing plan recordkeeping services (*id.* ¶¶ 44-64, 131-38). Plaintiffs also allege that, in causing the Plan to use BB&T and Sterling Capital mutual funds and to use Branch Bank as a recordkeeper, Defendants engaged in prohibited transactions under ERISA (*id.* ¶¶ 168-80). In addition to these direct claims, Plaintiffs assert that certain Defendants failed to monitor fiduciaries they appointed (*id.* ¶¶ 158-67). Finally, Plaintiffs allege that Defendants are liable for equitable relief (*id.* ¶¶ 181-89).

The claims Plaintiffs assert in the Complaint are not novel. The plaintiffs' class action bar has brought more than a dozen lawsuits in recent years against large financial institutions related to the retirement plans those institutions sponsor for their employees. A common theme in these lawsuits is that the plan uses investment options that are managed by an affiliate of the financial institution that, in plaintiffs' view, charges fees higher than those that are charged by either other mutual fund managers or by managers of other types of investment products, such as separately managed accounts or bank

3

collective trusts. Courts, however, have appropriately concluded that plan fiduciaries fulfill their duties under ERISA by offering sufficient mix of investment options with varying fee and risk profiles. As discussed in greater detail below, the Plan has always included a wide array of investment options with varying risk profiles, investment strategies, and associated fees. The Plan's investment lineup is substantially similar to the lineups in other lawsuits where courts have dismissed under Rule 12(b)(6), Fed. R. Civ. P. the same claims as Plaintiffs have asserted in this case.

Plaintiffs' claim that Defendants breached their duties by retaining investment options that underperformed certain market indices also should be dismissed because it is based solely on a hindsight analysis of market performance. The courts have consistently held that the ultimate outcome of an investment is not proof of its imprudence.

The court also should dismiss Plaintiffs' claim challenging the use of short-term, fixed income options instead of a stable value fund. ERISA fiduciaries are not required to use a stable value fund product and other courts have recognized that 401(k) plan fiduciaries often have decided to include similar short term, fixed income options.

Plaintiffs' claim related to the use of a "unitized" common stock also fails to state a claim upon which relief can be granted. The courts have recognized that the vast majority of company stock funds of publicly traded companies are unitized. As such, Defendants fulfilled their duty to act as others in a like capacity would act.

Although Plaintiffs assert that the recordkeeping fee was excessive, they offer no facts regarding the scope and value of the services that Branch Bank provided.

4

In addition to their silence on those critical elements of their claim, Plaintiffs' assertions that Defendants were required to conduct a request for proposals ("RFP") for recordkeeping services and should not have compensated the recordkeeper on a percentage-of-assets basis lack foundation and have been rejected by other courts.

Plaintiffs' prohibited transaction claims are similarly conclusory in that they fail to properly plead the transactions at issue are not covered by the applicable statutory and administrative exemptions to the prohibited transaction rules. Plaintiffs' claims also lack merit because ERISA's prohibited transaction rules do not apply to a mutual fund manager's collection of fees or a recordkeeper's receipt of "revenue sharing" payments.

Finally, as discussed below, (a) the Complaint should be dismissed as to certain Defendants because they do not qualify as fiduciaries with respect to the conduct at issue; (b) Plaintiffs' claim for equitable relief should be dismissed because they have not alleged a distinct injury that could not be redressed through their breach of fiduciary duty claims and, in any event, Plaintiffs are seeking money damages, which is not a form of equitable relief; (c) Plaintiffs' failure to monitor and co-fiduciary liability claims are derivative of Plaintiffs' breach of fiduciary duty claims and should be dismissed with those claims; and (d) any claims arising before September 4, 2009 are time-barred.

## ARGUMENT

The Supreme Court has described that plaintiffs are required to allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2008). As such,

5

to survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. And, courts need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002).

## I.    PLAINTIFFS FAIL TO STATE A PLAUSIBLE CLAIM FOR BREACH OF FIDUCIARY DUTY REGARDING THE PLAN'S INVESTMENT OPTIONS

### A.    The Plan Fiduciaries Satisfied Their Fiduciary Duties by Offering a Wide Array of Investment Options with Varying Risk and Fee Profiles

Plaintiffs' claim in Count II that Defendants[2] breached their fiduciary duties by selecting mutual funds with "high" investment management fees and expenses (Am. Compl. ¶¶ 69, 143), is based on the erroneous premise that a plan fiduciary must offer the lowest-cost investments available in the marketplace. Both the courts and the United States Department of Labor ("DOL") agree, however, that "nothing in ERISA requires every fiduciary to scour the market to find and offer the cheapest possible fund (which might, of course, be plagued by other problems)." *Hecker v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009); *see also* U.S. Dep't of Labor, Emp. Benefits Sec. Admin., *401(k) Plan Fee Disclosure Form*, https://www.dol.gov/ebsa/pdf/401kfefm.pdf ("The service provider offering the lowest cost services is not necessarily the best choice for your plan.").

---

[2]  Count II is asserted against BB&T Corp., the Board, the Compensation Committee, the Employee Benefits Committee, and the individual directors and committee members.

Instead, plan fiduciaries fulfill their duties by offering an array of investment options with varying risk and fee profiles. *Renfro v. Unisys Corp.*, 671 F.3d 314, 327 (3rd Cir. 2011); *Hecker*, 556 F.3d at 586. Interpreting and applying that fiduciary standard, several Circuit Courts of Appeals have affirmed the dismissal of complaints asserted against the fiduciaries of 401(k) plans with investment lineups substantially similar to the investment lineup used in the Plan.

In *Renfro*, the Third Circuit affirmed the dismissal of an excessive fee claim where the plan offered 73 investment options with expense ratios ranging from 0.10% to 1.21%. *Renfro*, 671 F.3d at 327-328 (concluding that, taking into account the "risk profiles, investment strategies, and associated fees" of the investment options, the plan offered a "reasonable mix and range of investment options [such that] plaintiffs' factual allegations . . . do not plausibly support [plaintiffs'] claims." Similarly, in *Hecker*, the Seventh Circuit held that the plaintiffs' excessive fee allegations failed to state a plausible claim because the plan offered a sufficient array of investments, including 26 core options (23 of which were mutual funds) with expense ratios from 0.07% to over 1%. *Hecker*, 556 F.3d at 587. *See also Loomis v. Exelon Corp.*, 658 F.3d 667, 670-72 (7th Cir. 2011) (dismissing breach of fiduciary duty claims where a plan included 32 investment options with investment fees from 0.03% to 0.96%).

More recently, the Ninth Circuit affirmed summary judgment in favor of plan fiduciaries on an excessive fee claim because the plan included approximately 40 mutual funds with expense ratios varying from 0.03% to 2.0%. *Tibble v. Edison Int'l*, 729 F.3d

7

1110, 1135 (9th Cir. 2013), *vacated on other grounds*, 135 S. Ct. 1823 (2015) (vacating

the Ninth Circuit's decision based on ERISA's statute of limitations).

Here, the Plan currently offers 29 investment options with expense ratios that

range from 0.85% to 1.03%. (Am. Compl. ¶ 69; Prame Decl. Ex. 2 at 9-12.) Over the

purported class period, the vast majority of the Plan's investment options had expense

ratios less than 1.0%. (*See* Complaint (Dkt. # 1) ("*Bowers* Complaint"), Ex. F at 15 (Dkt.

# 1-6) (identifying that 24 of 26 investment options in 2012 had expense ratios under

1.0%).) And the highest expense ratio Plaintiffs identify—1.53% in 2009 for the BB&T

International Equity Fund (Am. Compl. ¶ 37)—is within the range of reasonable fees

approved by the Ninth Circuit in *Tibble*.

Plaintiffs' allegations further show that the Plan's investment options include

options with varying degrees of risk associated with the underlying investments in stocks

(small cap, mid cap, large cap, company stock), bond funds, money-market funds, and

stable value products. (*Id.* ¶¶ 37, 39, and 56.) The investment strategies for those options

include strategies that focus on growth, value, income, capital preservation, international

investment, market index and/or target retirement date. (*Id.*) Accordingly, Plaintiffs'

own allegations confirm that the Plan offers an investment lineup consistent with those

upon which the Third and Seventh Circuits relied in dismissing excessive fees claims.

This Court's decision in *Kruger v. Novant Health*, No. 1:14CV208, 2015 WL

5511052 (M.D.N.C. Sept. 17, 2015), denying a motion to dismiss, is not to the contrary.

In *Kruger*, the Court denied a motion to dismiss an excessive fee claim because

8

"plaintiffs have alleged these fees are excessive, *not by virtue of their percentage as in Hecker and its progeny*, but because there are different versions of the *same investment vehicle* available to the Plan that have lesser fees." *Id.* at *5 (emphasis added). Specifically, plaintiffs alleged defendants failed to consider "lower cost funds with the identical managers, investment[] styles, and stocks where available." *Id.* at *3.

In contrast to *Kruger*, the Complaint makes only passing reference to two mutual funds that Plaintiffs allege were available at a lesser fee. (Am. Compl. ¶ 70.) As to those two funds, the alternatives Plaintiffs identify are alleged to have expense ratios only two one hundredths of one percent (0.02%) and thirteen one hundredths of one percent (0.13%) lower than that the investment option in the Plan. Even accepting those allegations as true, the nominal difference in the expense ratios does not plausibly call into question whether the plan fiduciaries breached their fiduciary duties more broadly with respect to the selection of the entire investment lineup, as Plaintiffs claim. This Court should follow the Circuit Court rulings discussed above and dismiss Count II.

### B. Plaintiffs' Allegations that Different Mutual Funds and Other Types of Investments Had Lower Fees Do Not State a Plausible Claim for Relief

#### 1. The Complaint Fails to Allege Any Similarities Between the Plan's Investment Options and the Vanguard Funds

Plaintiffs' attempt to compare the fees associated with the Plan's investment options to the fees of Vanguard mutual funds and other non-mutual fund investments (Am. Compl. ¶¶ 69-83), similarly misses the mark as Plaintiffs fail to describe, much less compare, the risk profiles of either set of funds. The Seventh Circuit in *Renfro* required

9

exactly that comparison be made to state a plausible claim. *See Renfro*, 671 F.3d at 327

(holding that, in assessing whether the claims are plausible, courts are to consider the

"risk profiles, investment strategies, and associated fees" of the investment options).

In fact, Plaintiffs' Complaint contains no specific facts about the risk profiles of the

Vanguard mutual funds compared to the BB&T funds, such as percentage investment in

the same companies, average length of investment, degree of presumed risk, etc.

The Complaint simply lacks any basis to enable the Court to plausibly infer that the

expense ratios of the Vanguard and BB&T funds are comparable.

  To the contrary, there is ample reason why the Vanguard funds are not appropriate

points of comparison. The Plan's investment options and the Vanguard funds are based

on different management styles that, by design, involve very different costs and benefits.

The Plan's investment options are, for the most part, "actively managed," meaning that

the funds are operated by "an investment adviser who continually researches, monitors,

and actively trades the holdings of the fund to seek a higher return than the market [and

these funds] generally have higher fees." U.S. Dep't of Labor, Emp. Benefits Sec.

Admin., *A Look at 401(k) Plan Fees*, at 7 (Aug. 2013), http://www.dol.gov/ebsa/pdf/

401kFeesEmployee.pdf. In contrast, Vanguard and other "passively managed" funds that

"seek to obtain the investment results of an established market index by duplicating the

holdings included in the index" generally have lower management fees because they

"require little research or trading activity." *Id*. Notably, in the context of analogous

excessive fee claims under the Investment Company Act of 1940, the Second Circuit

observed the ineffectiveness of comparisons to Vanguard's passively managed funds, concluding that Vanguard is "known for its emphasis on keeping costs low," and the fact that fees of another fund company may be higher "raises little suspicion." *Amron v. Morgan Stanley Inv. Advisors, Inc.*, 464 F.3d 338, 345 (2d Cir. 2006). This Court should adopt the Second Circuit's reasoning and dismiss Plaintiffs' excessive fee claim.

### 2. ERISA Does Not Require Plan Fiduciaries to Offer Separately Managed Account or Collective Trust Investment Options

Plaintiffs also assert in Count II that Defendants failed to offer separately managed account or collective trust investment options. According to Plaintiffs, those investment vehicles are "less expensive" than the mutual funds that were made available to Plan participants. (Am. Compl. ¶¶ 71-83, 143.) The Seventh Circuit rejected a similar claim in *Loomis*, concluding:

> A pension plan that directs participants into privately held trusts or commingled pools (the sort of vehicles that insurance companies use for assets under their management) lacks the mark-to-market benchmark provided by a retail mutual fund. It can be hard to tell whether a closed fund is doing well or poorly, or whether its expenses are excessive in relation to the benefits they provide. It can be hard to value the vehicle's assets (often real estate rather than stock or bonds) when someone wants to withdraw money, and any error in valuation can hurt other investors.

*Loomis*, 658 F.3d at 671-72; *see also Tibble*, 729 F.3d at 1134 ("Non-mutual funds alternatives such as commingled pools are not subject to the same 'reporting, governance, and transparency requirements' as mutual funds, which are governed by the Securities Act of 1933 and the Investment Company Act of 1940.") (citations omitted). Without allegations explaining why a particular mutual fund investment option is not prudent,

11

Plaintiffs' mere allegation that separately managed accounts and collective trusts are "less expensive" is insufficient to state a plausible claim for which relief can be granted. *Hecker*, 556 F.3d at 586 (a fiduciary is not required to offer the cheapest possible investment options).

### C. Plaintiffs' Underperformance Claim is Based Solely on a Hindsight Analysis and Should Be Dismissed

Plaintiffs also claim in Count II that the Defendants breached their fiduciary duties by retaining two investment options—the BB&T/Sterling Capital International Fund (the "International Fund") and the BB&T Large Cap Fund (later renamed the Sterling Capital Select Equity Fund) (the "Large Cap Fund")—that Plaintiffs assert underperformed the S&P 500 Index and the Russell 1000 Value Index over various time periods. (Am. Compl. ¶¶ 84-89.) Plaintiffs' claim with respect to these two funds should be dismissed because "the ultimate outcome of an investment is not proof of imprudence." *DeBruyne v. Equitable Life Assurance Soc'y*, 920 F.2d 457, 465 (7th Cir. 1990).

"[T]he general fiduciary obligation of § 404(a) does not require prescience of fiduciaries, but instead measures a fiduciary's performance based on the facts then at their disposal." *DiFelice v. Fiduciary Counselors, Inc.*, 398 F. Supp. 2d 453, 467 (E.D. Va. 2005); *see also DeBruyne*, 920 F.2d at 465 ("fiduciary duty of care . . . requires prudence, not prescience"). Accordingly, to state a claim, Plaintiffs must allege "*nonconclusory* factual content raising a *plausible* inference of misconduct [that] does not rely on 'the vantage point of hindsight.'" *Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt., Inc.*, 712 F.3d 705, 718 (2d Cir. 2013) (citation omitted) (emphasis in

12

original) [hereinafter "*PBGC*"].  Specifically, Plaintiffs must "allege[] facts that, if proved, would show that an adequate investigation would have revealed to a reasonable fiduciary that the investment at issue was improvident."  *Id.  Cf. Goldenberg v. Indel, Inc.*, 741 F. Supp. 2d 618, 637 (D.N.J. 2010) (observing that, to state a claim, "[o]ne would need to know the reason for the poor performance in order to be able to assess whether the decision to invest in the Fund was suspect").

By focusing on the investment performance of the International Fund and the Large Cap Fund relative to certain market indices, the Complaint mirrors the sort of hindsight analysis that is insufficient to state a claim for breach of fiduciary duty.  *See PBGC*, 712 F.3d at 722-23 (concluding that hindsight analysis "without further factual allegations" was insufficient to state claim the defendants acted imprudently).  Aside from hindsight underperformance, Plaintiffs do not identify any issue with the two investment funds—such as a change in investment philosophy or risk profile—that may have warranted consideration by the Plan fiduciary of whether to stop offering the funds as investment options.  *See Leber v. Citigroup 401(k) Plan Inv. Comm.*, No. 07-CV-9329, 2015 WL 5244660, at *9 (S.D.N.Y. Sept. 8, 2015) ("[P]laintiffs' [underperformance claims] do not raise a plausible inference that a prudent fiduciary would have found those Funds to be 'so plainly risky' as to render the investments in them imprudent." (citing *PBGC*, 712 F.3d at 719)).

Plaintiffs' allegation that "Defendants failed to engage in a prudent process for the selection and retention of Plan investment options" (Am. Compl. ¶ 145), similarly lacks

13

sufficient support to raise a plausible inference of misconduct. Plaintiffs do not allege

that Defendants failed to meet at regular intervals to review the Plan investment options

and consider whether to maintain or change the investment lineup. *See Tibble v. Edison

Int'l*, 135 S. Ct. 1823, 1828 (2015) (a fiduciary "must 'systematic[ally] conside[r] all the

investments of the trust at regular intervals' to ensure that they are appropriate" (citations

omitted) (alterations in original)). To the contrary, Plaintiffs' allegations confirm that the

investment lineup did not remain static; Defendants met and decided to make changes to

the lineup over time. (*See* Am. Compl. ¶ 91 (describing the addition of a stable value

fund); ¶ 82 (describing the replacement of the target date mutual funds).) Accordingly,

Plaintiffs' claims related to the International Fund and the Large Cap Fund should be

dismissed.

### D. Plaintiffs' Stable Value Fund Claim Should Be Dismissed

In Count III, Plaintiffs allege that Defendants[3] breached their fiduciary duties by

(1) "fail[ing] to make a reasoned decision as to whether it would be in participants' best

interests to offer a stable value fund" earlier than 2012, (*id.* ¶ 150), and (2) after adding a

stable value fund, by continuing to retain two other funds that Plaintiffs allege "had failed

to keep pace with inflation for years and were not providing any meaningful retirement

benefits," (*id.*) Plaintiffs' contention that a failure to offer a stable value fund is

imprudent lacks foundation. Rather than requiring plans to offer stable value funds,

DOL's regulations require only that plans offer "a broad range of investment

---

[3] Count III is asserted against BB&T Corp., the Board, the Compensation Committee, the Employee Benefits Committee, and the individual directors and committee members.

alternatives."  *See* 29 C.F.R. § 2550.404c-1(b)(3).  The regulations do not mandate any particular type of investment.

The Plan's investment lineup has included multiple options designed to protect principal in exchange for more modest investment returns.  (Am. Compl. ¶ 91.)  At the start of the alleged class period, the Plan included the BB&T One-Year Bank Investment Contract (the "Investment Contract") and the Federated Investors Treasury Obligations Fund (the "Treasury Fund").  (*Id.*)  In 2012, the Investment Contract was replaced by the BB&T Corporation Associate Insurance Deposit Account (the "Deposit Account"), and a stable value fund was added as a third option for protecting principal.  (*Id.*)

Plaintiffs' allegation that the Plan should have stopped offering the Treasury Fund and Deposit Account after adding the stable value fund in 2012 also fails to state a claim. It is not imprudent for a plan to offer a stable value fund alongside similar investment options, and other courts have approved investment lineups that include both. *See DiFelice v. U.S. Airways, Inc.*, 436 F. Supp. 2d 756, 765-66 (E.D. Va. 2006) (observing that plan's investments, which included a money market fund and a stable value fund, were "appropriate and sufficiently diverse").

## E.     <u>The Claim Related to the Unitized Stock Fund Should Be Dismissed</u>

The Plan permits investment in the stock of BB&T Corp. through the BB&T Common Stock Fund.  (Am. Compl. ¶ 101.)  The fund is a "unitized" fund, meaning that participants hold units of an account that includes BB&T stock as well as cash.  (*Id.*) Unitized employer stock funds offer several benefits.  The cash buffer allows participants

to sell their interests quickly, compared to direct stock holdings that must be sold in a process that often takes three business days. *See Tibble*, 729 F.3d at 1137 (citing *George v. Kraft Foods Global, Inc.*, 641 F.3d 786, 793 (7th Cir. 2011)). The cash buffer also keeps the fund's value comparatively stable: while the company's stock may appreciate more quickly than a unitized account, the stock will lose value quicker that the unitized account. *See id.*

In Count IV, Plaintiffs allege that it was imprudent for Defendants[4] to offer the BB&T Common Stock Fund with a unitized structure. (Am. Compl. ¶ 156.) In another case in which Plaintiffs' counsel was involved, it was observed that the vast majority of employer stock funds of publicly traded companies are unitized. *George*, 641 F.3d at 802 n.2 (Cudahy, J., concurring in part and dissenting in part) (noting that "the prevalence of unitized stock funds may be as high as 90%") (citation omitted). Plaintiffs' Complaint offers no basis for inferring that, by using a unitized structure, Defendants breached their fiduciary duty by acting in way that others in a like capacity would not act.

Plaintiffs' allegation that Defendants breached ERISA's duty to engage in a prudent decision-making process is too conclusory to give rise to a plausible claim of breach of fiduciary duty. Plaintiffs, for example, do not allege sufficient facts to establish a particular time over the purported class period when a prudent fiduciary would otherwise have revisited the decision to offer the unitized fund.

---

[4] Count IV is asserted against BB&T Corp., the Board, the Compensation Committee, the Employee Benefits Committee, and the individual directors and committee members.

Plaintiffs also raise the conclusory allegation that Defendants breached their fiduciary duties because the BB&T Common Stock Fund held "excessive cash." (Am. Compl. ¶¶ 104, 107, 109.)  This allegation lacks the factual details necessary to state a plausible claim.  Plaintiffs do not allege what level of cash would be permissible, nor that the cash level was excessive with respect to the number or amount of the transactions in the company stock.  Nor do Plaintiffs allege facts establishing that Defendants failed to follow a prudent process either for determining the amount of cash to hold or for monitoring the cash liquidity level at any time thereafter.  Count IV of the Complaint, therefore, fails to state a claim and should be dismissed.

## II.     PLAINTIFFS' BREACH OF FIDUCIARY DUTY CLAIM REGARDING RECORDKEEPING FEES SHOULD BE DISMISSED

In Count I, Plaintiffs assert that the Defendants[5] failed to prudently select a recordkeeper and paid excessive recordkeeping fees.  In order to allege a plausible claim that the process to select the recordkeeper was deficient, Plaintiffs must allege facts regarding what the process actually entailed.  Similarly, with respect to the compensation for the recordkeeping services, Plaintiffs must allege facts establishing the scope and the value of those services.  *See generally Hecker v. Deere & Co.*, 569 F.3d 708, 711 (7th Cir. 2009) (observing that the scope and nature of services should be considered in assessing excessive fee claims).  Plaintiffs' Complaint is silent on those points.  The only parts of the "process" that Plaintiffs mention at all are to claim (1) that Defendants'

---

[5]  Count I is asserted against BB&T Corp., the Board, the Compensation Committee, the Employee Benefits Committee, and the individual directors and committee members.

17

failure to solicit bids for the recordkeeper was a breach of a fiduciary duty; and (2) any payment made to the recordkeeper on a percentage-of-assets basis was a breach of a fiduciary duty. (Am. Compl. ¶¶ 135-137.) Contrary to Plaintiffs' allegation, fiduciaries are not required to solicit bids through a RFP. A fiduciary may fulfill its duties by obtaining the advice of a competent professional consultant. *See* Advisory Council on Emp. Welfare and Pension Benefit Plans, *Outsourcing Employee Benefit Plan Services*, at 17 (Nov. 2014), http://www.dol.gov/ebsa/publications/2014ACreport3.html ("[P]lan sponsors and plan fiduciaries . . . may engage consultants and other experts to assist with the task of selecting and monitoring service providers.").

Further, as to the payment of fees on a percentage-of-assets basis, the Seventh Circuit, in *Hecker*, affirmed that "such an arrangement . . . violates no statute or regulation." 556 F.3d at 585; *see Renfro*, 671 F.3d at 327-28 (dismissing claim based on "conclusory assertions" that participants "should have paid per-participant fees rather than fees based on a percentage of assets in the plan"). This Court should follow the precedent set forth by the Third and Seventh Circuits and dismiss Plaintiffs' claims.

## III.    THE PROHIBITED TRANSACTION CLAIMS SHOULD BE DISMISSED

In Counts VI and VII of the Complaint, Plaintiffs allege that, in violation of ERISA § 406(a) and (b), 29 U.S.C. § 1106(a) and (b), Defendants[6] (1) "caused the Plan

---

[6]  In Count VI, Plaintiffs allege violations of ERISA § 406(a)(1)(A), (C), and (D) against BB&T Corp., the Board, the Compensation Committee, the Employee Benefits Committee, and the individual directors and committee members. In Count VII, Plaintiffs allege violations of ERISA § 406(b)(1), (2) and (3) against BB&T Corp.,

to use BB&T and Sterling Capital mutual funds as investment options"; (2) "caused the

Plan to . . . use BB&T Corporation or its subsidiary [Branch Bank] as the Plan's trustee

and recordkeeper"; (3) received "revenue sharing from the Plan's mutual funds"; and

(4) received "fees from the BB&T and Sterling Capital mutual funds in the Plan,

including the proprietary money market fund in the BB&T Common Stock Fund."

(Am. Compl. ¶¶ 170, 176-77.)  These claims should be dismissed for two reasons.

First, Plaintiffs incorrectly claim that ERISA § 406(b)(3) applies to the

(a) collection of fees for managing the BB&T/Sterling Capital mutual funds; and/or

(b) receipt of revenue sharing from the mutual funds.  ERISA § 406(b)(3) proscribes that,

"A fiduciary with respect to a plan shall not . . . receive any consideration for his own

personal account from any party dealing with such plan in connection with a transaction

involving the *assets of the plan*."  29 U.S.C. § 1106(b)(3) (emphasis added).  The assets

of a mutual fund, however, are not "assets of the plan."  Specifically, ERISA § 401(b)(1),

29 U.S.C. § 1101(b)(1), provides:

> In the case of a plan which invests in any security issued by an investment
> company registered under the Investment Company Act of 1940, the assets
> of such plan shall be deemed to include such security but shall not, solely
> by reason of such investment, be deemed to include any assets of such
> [registered investment company].

Put another way, the "assets of the plan" include the shares of the mutual fund that

employee contributions are used to purchase, but not the assets of the mutual fund.  Thus,

the management fees collected by a registered investment company are not plan assets,

Branch Bank, Sterling Capital, the Board, the Compensation Committee, and the
individual directors and committee members.

19

even though they are paid in part out of contributions used to purchase mutual fund shares. *See Hecker*, 556 F.3d at 584. As the collection of fees and expenses by a mutual fund manager is not a transaction involving "the assets of the plan," the subsequent payment of revenue sharing by a mutual fund manager does not constitute a transaction involving the assets of the plan. *See id.* (dismissing revenue sharing claim because "[t]he fees were drawn from the assets of the mutual funds in question, which, as the statute provides, are not assets of the Plans")). As such, Plaintiffs have not alleged a plausible claim that BB&T Corp., Branch Bank, or Sterling Capital engaged in a prohibited transaction under ERISA § 406(b)(3).

Second, the express language of the statute conditions the existence of a prohibited transaction on the non-applicability of a statutory or administrative exemption under ERISA § 408. *See* 29 U.S.C. § 1106(a) ("Except as provided in section 408 . . . ."). Consistent with the statutory framework, courts have concluded that, in order to state a plausible claim, a plaintiff must allege facts establishing not only that (1) a transaction described in ERISA § 406 has occurred, but also (2) that the transaction did not fall within an applicable statutory or administrative exemption under ERISA § 408, 29 U.S.C. § 1108. *See Leber v. Citigroup, Inc.*, No. 07 Civ. 9329, 2010 WL 935442, at *10 (S.D.N.Y. Mar. 16, 2010) ("[W]here the complaint does not allege any basis for presuming that a defendant's conduct fell outside a statutory exemption . . . it is deficient."); *Mehling v. N.Y. Life Ins. Co.*, 163 F. Supp. 2d 502, 510-11 (E.D. Pa. 2001) (dismissing claims because plaintiffs failed to allege the transactions were non-exempt).

Defendants recognize that the pleading standard is not settled and Plaintiffs will respond that other courts have concluded that the statutory and administrative exemptions are akin to affirmative defenses as to which a plaintiff need not allege facts to survive a motion to dismiss.[7] *See, e.g.*, *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 600-01 (8th Cir. 2009); *Krueger v. Ameriprise Fin., Inc.*, No. 11-cv-02781, 2012 WL 5873825, at *16 (D. Minn. Nov. 20, 2012) (applying *Braden*); *Goldenberg*, 741 F. Supp. 2d at 632 (same). Defendants are not aware of a ruling by the Fourth Circuit regarding the pleading standard for a prohibited transaction claim.[8] Based on the plain language of the statute conditioning the existence of a prohibited transaction on the non-applicability of an exemption under ERISA § 408, Defendants maintain that the better view is that Plaintiffs initially must allege facts demonstrating that the relevant exemptions do not apply.

There are a series of exemptions applicable to Plaintiffs' prohibited transaction claims. For example, under Prohibited Transaction Class Exemption 77-3, 42 Fed. Reg. 18734 (Apr. 8, 1977) ("PTE 77-3),[9] "'the restrictions of section [ ] 406 . . . shall not apply'" to the investment of plan assets in affiliated mutual funds provided certain conditions are met. *Leber*, 2010 WL 935442, at *10 (quoting PTE 77-3). Plaintiffs do not allege facts to establish that any of the elements of PTE 77-3 are not satisfied here.

---

[7]  The *Braden* decision was cited favorably in *Kruger*, 2015 WL 5511052, at *6.

[8]  In *Elmore v. Cone Mills Corp.*, 23 F.3d 855, 864 (4th Cir. 1994), the Fourth Circuit described that *at trial* defendants may have the burden of proof regarding certain elements of an exemption. The Fourth Circuit did not address the pleading standard.

[9]  DOL is authorized under ERISA § 408(a), 29 U.S.C. §1108(a), to grant administrative exemptions to the restrictions imposed by the prohibited transaction rules.

Further, ERISA § 408(b)(2) provides:

> The prohibitions provided in section 406 shall not apply to . . . Contracting or making reasonable arrangements with a party in interest for . . . services necessary for the establishment or operation of the plan, if no more than reasonable compensation is paid therefor.

29 U.S.C. § 1108(b)(2).  Plaintiffs do not allege that the recordkeeping and trustee services provided by Branch Bank were unnecessary; in fact, Plaintiffs admit that recordkeeping services are "necessary for every defined contribution plan."  (Am. Compl. ¶ 44.)

Similarly, ERISA § 408(c)(2), 29 U.S.C. § 1108(c)(2), provides that the prohibited transaction rules should not be "construed to prohibit any fiduciary from . . . receiving any reasonable compensation for services rendered, or for the reimbursement of expenses properly and actually incurred, in the performance of his duties with the plan," except as otherwise identified within ERISA § 408(c).  Again, Plaintiffs do not allege a basis for concluding this exemption does not apply.

Having failed to allege a basis for concluding that the relevant exemptions do not apply, Plaintiffs' prohibited transaction claims should be dismissed.

## IV.   THE COMPLAINT FAILS TO ALLEGE FACTS SUFFICIENT TO SHOW THAT CERTAIN DEFENDANTS QUALIFY AS FIDUCIARIES

Counts I-VIII each requires that the Defendants functioned as fiduciaries with regard to the decisions and conduct that Plaintiffs challenge.  Plaintiffs obscure this requirement by lumping over 35 Defendants together and alleging that they all violated ERISA's fiduciary duties.  Under ERISA § 3(21)(A), a person is a fiduciary only:

to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). The "to the extent" language places a critical limitation on fiduciary status: "In every case charging breach of ERISA fiduciary duty, then, the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Pegram v. Herdich*, 530 U.S. 211, 226 (2000).

A.   **BB&T Corp. Is Not a Fiduciary In Any Respect**

BB&T Corp. is the sponsor of the Plan. (Am. Compl. ¶ 5.) Plan sponsorship, however, "does not create fiduciary status, because it is merely a corporate or settlor function." *In re Mut. Fund Inv. Litig.*, 403 F. Supp. 2d 434, 446-47 (D. Md. 2005).

Plaintiffs do not allege that BB&T Corp. itself exercises any control or authority over the selection of investment options or service providers. Plaintiffs instead attempt to pin fiduciary liability on BB&T Corp. under an agency theory by alleging that it "[a]ct[s] through its Board of Directors and other BB&T Corporation officers, directors, employees, agents, affiliates, subsidiaries, and committees" to exercise discretionary

authority or control.  (Am. Compl. ¶ 25.)[10]  Imposing liability under an agency theory, however, would undermine the basic ERISA fiduciary principle that limits fiduciary status "to the extent" a person carries out one of the functions set forth in ERISA § 3(21)(A).  *See* 29 C.F.R. § 2509.75-8 Q & A FR-16 ("The personal liability of a fiduciary . . . is generally limited to the fiduciary functions, which he or she performs with respect to the plan.").  Further, the courts have rejected the application of common law agency principles in the ERISA context because the statute already includes a provision under which a person, if he otherwise qualifies as a fiduciary, can be liable as a co-fiduciary for the breaches of his delegates.  ERISA § 405, 29 U.S.C. § 1105 (setting forth conditions on co-fiduciary liability).  *See DiFelice v. U.S. Airways, Inc.*, 397 F. Supp. 2d 758, 780 (E.D. Va. 2005) ("Because ERISA § 405(c) directly addresses the liability of a fiduciary for the breaches of its delegates, it has therefore supplanted traditional agency principles in this specific context.").  As BB&T Corp. is not a fiduciary, the claims against it should be dismissed.

> **B.** **The Employee Benefits Committee and Defendant Reeder are Not Fiduciaries With Respect to the Actions at Issue in the Complaint**

Plaintiffs' claims against the Employee Benefits Committee and its individual members fail because the Employee Benefits Committee is not alleged to have functioned

---

[10]  Plaintiffs allege that BB&T Corp. may be a fiduciary "to the extent" that it, rather than Branch Bank, is the plan trustee.  (Am. Compl. ¶ 26.)  The SPD and the BB&T Corporation 401(k) Savings Plan Trust Agreement clearly identify Branch Bank as the trustee.  (*See* Prame Decl., Ex. 2 at 1; Ex. 3 at 1; Am. Compl. ¶ 26 (referring to documents provided to participant).)  To the extent Plaintiffs maintain BB&T Corp. "acts through" Branch Bank (Am. Compl. ¶ 25), their claim fails for the reasons set forth in this section.

24

as an ERISA fiduciary with respect to the actions at issue in the Complaint. The factual

bases for the alleged fiduciary status of the Employee Benefits Committee are that it:

- Is "the fiduciary responsible for interpreting the provisions of the Plan, determining the rights of participants under the Plan, administering the Plan in accordance with its terms (except to the extent the Plan delegates such powers to another fiduciary), accounting for the interests of participants in the Plan, and directing the Trustee in the distribution of trust assets"; and

- Is "responsible 'for the general administration and interpretation of the plan[.]'"

(Am. Compl. ¶ 24(b).) None of those actions qualify the Employee Benefits Committee

as a fiduciary with respect to the plan investment and fee decisions about which Plaintiffs

complain. In other words, while Plaintiffs' allegations may show that the Employee

Benefits Committee may serve as an ERISA fiduciary in some respects, they do not

demonstrate that it is a proper defendant as to Plaintiffs' claims.

Plaintiffs include a conclusory allegation that the Employee Benefits Committee

"controlled the available investments in which the participants could place their

retirement assets" and "chose the BB&T [proprietary] fund[] [investment options] . . . ."

(*Id.* ¶ 34.) However, Plaintiffs contradict themselves by alleging that the Compensation

Committee—not the Employee Benefits Committee—is "the fiduciary responsible for

determining the investment funds to be made available to participants and adopting an

investment policy statement for the Plan." (*Id.* ¶ 24(e).) The Plan Document leaves no

doubt that the Compensation Committee has the authority to control investment options.

(*See* Prame Decl. Ex. 1 at § 10.1.5 (Compensation Committee's duties are: "(a) To

determine from time to time the investment funds to be made available to participants;

25

and (b) To adopt an investment policy statement for the plan.")  The Court, therefore, need not take Plaintiffs' allegations regarding the Employee Benefits Committee's control over the Plan investment options as true and should dismiss the claims against the committee.  *Veney*, 293 F.3d at 730 (court need not "'accept as true allegations that contradict matters properly subject to judicial notice or by exhibit'" (citation omitted)).

For the same reason, Defendant Steven L. Reeder is not a fiduciary in connection with Plaintiffs' claims.  Plaintiffs allege only that he signed the Plan's annual returns/reports filed with the federal government.  (Am. Compl. ¶ 24(c).)  As the signing of annual filings has no bearing on the claims asserted in the Complaint, the Court should dismiss Mr. Reeder from the lawsuit.

## V. PLAINTIFFS FAIL TO STATE A CLAIM FOR EQUITABLE RELIEF

In Count VIII, Plaintiffs seek "appropriate equitable relief" under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), from BB&T Corp., Branch Bank, and Sterling Capital.  (Am. Compl. ¶¶ 181-89.)  In seeking equitable relief, Plaintiffs may not "repackage" the breach of fiduciary duty claim that they assert in Count II related to the Plan's use of the proprietary BB&T/Sterling Capital mutual funds.  *See Rochow v. Life Ins. Co. of N. Am.*, 780 F.3d 364, 371 (6th Cir. 2015) ("[E]quitable relief is not ordinarily appropriate where Congress has elsewhere provided adequate means of redress for a claimant's injury.").  Plaintiffs' claim should be dismissed as Plaintiffs do not identify an injury for which they seek redress under ERISA § 502(a)(3), and for which their claim in Count II under ERISA § 502(a)(2) does not provide an adequate remedy.

26

Plaintiffs cannot proceed under ERISA § 502(a)(3) for the additional reason that they have not sought a form of equitable relief. Plaintiffs claim that the Plan's service providers received "excessive compensation" for their services. (*See* Am. Compl. ¶ 62.) An award of any such "excessive compensation" would be in the form of money damages, which would constitute legal relief, not equitable relief. *See CIGNA Corp. v. Amara*, 131 S. Ct. 1866, 1878-80 (2011)).

## VI. THE COURT SHOULD DISMISS PLAINTIFFS' CLAIMS FOR FAILURE TO MONITOR FIDUCIARIES AND CO-FIDUCIARY LIABILITY

Plaintiffs make two failure to monitor claims under Count V. First, Plaintiffs allege that the Board had a fiduciary responsibility to appoint and remove members of the Employee Benefits Committee, and the Board breached its fiduciary duty to monitor the performance of its appointees. (Am. Compl. ¶¶ 162, 165.) Second, Plaintiffs allege that, to the extent the Board delegated its fiduciary duties to other entities or individuals, it breached its duty to "ensure than any delegated tasks were being performed prudently and loyally." (*See id.* ¶¶ 164-65.) Plaintiff's failure to monitor claims are derivative of the claims in Counts I-IV. *See In re Constellation Energy Grp., Inc.*, 738 F. Supp. 2d 602, 614 (D. Md. 2010) (observing that claims for failure to monitor "depend on a finding that the defendants breached the underlying duties of prudence and loyalty"). Should the Court dismiss Counts I-IV, Count V should be dismissed as well.

Plaintiffs also assert claims for breach of co-fiduciary duties against BB&T Corp., the Board, the Compensation Committee, and the Employee Benefits Committee. (*See* Am. Compl. ¶¶ 138, 146, 151, 157.) These claims fail for two reasons. First, they are

27

derivative claims that require "an antecedent breach [of fiduciary duty] to be viable." *In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*, 763 F. Supp. 2d 423, 580-81 (S.D.N.Y. 2011); *Constellation Energy*, 738 F. Supp.2d at 614.  Second, Plaintiffs have not adequately plead claims for co-fiduciary liability under ERISA § 405(a).[11]  Plaintiffs allege no facts in support of their co-fiduciary liability claims: they merely recite the legal standard for co-fiduciary liability, which is not enough to defeat a motion to dismiss. *Iqbal*, 556 U.S. at 678.

## VII.  PLAINTIFFS' CLAIMS ARISING BEFORE SEPTEMBER 4, 2009 ARE BARRED BY ERISA'S SIX-YEAR STATUTE OF LIMITATIONS

Under ERISA, a plaintiff must file suit within the *shorter* of either (1) six years after "the date of the last action which constituted a part of the breach or violation" or (2) three years from the date that plaintiff had "actual knowledge" of the breach.  ERISA § 413(1)-(2), 29 U.S.C. § 1113(1)-(2).  Plaintiffs seek a January 1, 2007 start date for the class period (Am. Compl. ¶ 127), but claims based on alleged actions and omissions prior to September 4, 2009 (six years prior to the filing of the *Bowers* Complaint) are untimely.

---

[11] Under ERISA § 405(a), 29 U.S.C. § 1105(a), a fiduciary may be liable for a breach of fiduciary responsibility of another fiduciary:

> **(1)** if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;
>
> **(2)** if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or
>
> **(3)** if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

28

In an attempt to extend the limitations period, Plaintiffs plead that Defendants "concealed their fiduciary breaches" and "other information they are required to provide" under ERISA. (*Id.* ¶¶ 51, 54.) ERISA § 413(2), 29 U.S.C. § 1113(2), provides for tolling of the statute of limitations in cases of fraud or concealment. To avail themselves of the fraud or concealment exception, however, Plaintiffs must show that defendants "engaged in a course of conduct *designed* to conceal evidence of their alleged wrongdoing . . . ." *Browning v. Tiger's Eye Benefits Consulting*, 313 F. App'x 656, 663 (4th Cir. 2009) (emphasis added). The standard for tolling is "synonymous with a requirement of 'intent.'" *David v. Alphin*, 817 F. Supp. 2d 764, 779-80 (W.D.N.C. 2011), *aff'd*, 704 F.3d 327 (4th Cir. 2013). Here, Plaintiffs do not plead that Defendants undertook the alleged course of conduct with the intent to cover up any alleged fiduciary breaches.[12]

Plaintiffs also cite the Supreme Court's recent holding in *Tibble*, (Am. Compl. ¶ 142), which does not salvage any claims based on actions or omissions before September 4, 2009. In *Tibble* the Court concluded that ERISA's "duty of prudence involves a continuing duty to monitor investments and remove imprudent ones," but such a claim would only be timely "so long as the alleged breach of the continuing duty occurred within six years of suit." *Tibble*, 135 S. Ct. at 1829. In other words, *Tibble* does not extend the statute of limitations beyond the six years before a complaint is filed.

---

[12]  Defendant E. Rhone Sasser did not serve on the Board within the six-year period preceding the filing of the lawsuit. As such, he should be dismissed from the case.

## CONCLUSION

Based on the foregoing, Defendants respectfully request that the Court dismiss

Plaintiffs' Consolidated Amended Complaint with prejudice.

Respectfully submitted,

GROOM LAW GROUP, CHARTERED

WOMBLE CARLYLE SANDRIDGE & RICE, LLP

*/s/ Michael J. Prame*
Michael J. Prame*
Paul Rinefierd*
1701 Pennsylvania Ave., NW
Washington, DC 20006
Phone:  (202) 861-6633
Fax:  (202) 659-4503
Email:  mprame@groom.com
prinefierd@groom.com

*\*Appearing by special appearance*

*/s/ Brent F. Powell*
Ronald R. Davis
NC State Bar No. 20408
Brent F. Powell
NC State Bar No. 41938
One West Fourth Street
Winston-Salem, NC 27101
Telephone:  (336) 721-3600
Facsimile:  (336) 721-3660
Email:  rdavis@wcsr.com
brpowell@wcsr.com

Debbie W. Harden
NC State Bar No. 10576
One Wells Fargo Center
301 South College Street, Suite 3500
Charlotte, NC 28202
Telephone:  (704) 331-4900
Facsimile:  (704) 331-4955
Email:  dharden@wcsr.com

*Attorneys for Defendants*

30

## CERTIFICATE OF SERVICE

This is to certify that, on December 23, 2015, a copy of the foregoing *DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE CONSOLIDATED AMENDED COMPLAINT* was filed electronically with the Clerk of Court using the CM/ECF system, which will automatically send notification of filing to the following:

Kai H. Richter*
krichter@nka.com

Adam W. Hansen*
ahansen@nka.com

Carl F. Engstrom*
cengstrom@nka.com

Joe Hashmall*
jhashmall@nka.com

Jerome J. Schlichter*
jschlichter@uselaws.com

Heather Lea*
hlea@uselaws.com

Michael A. Wolff*
mwolff@uselaws.com

Sean E. Soyars*
ssoyars@uselaws.com

Troy A. Doles*
tdoles@uselaws.com

David B. Puryear, Jr.
puryear@puryearandlingle.com

Attorneys for Plaintiffs

*Appearing by special appearance*

/s/ Michael J. Prame
Michael J. Prame*
Groom Law Group, Chartered
1701 Pennsylvania Ave., NW
Washington, DC 20006
Phone: 202-861-6633
Fax: 202-659-4503

31