# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| **BURKE BOWERS**, *et al.*, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | 1:15-CV-732 |
| | ) | |
| **BB&T CORPORATION**, *et al.*, | ) | |
| | ) | |
| **Defendants** | ) | |
| | ) | |

| | | |
|---|---|---|
| **BREWSTER SMITH, JR.**, *et al.*, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | 1:15-CV-841 |
| | ) | |
| **BB&T CORPORATION**, *et al.*, | ) | |
| | ) | |
| **Defendants** | ) | |
| | ) | |

## DEFENDANT CARDINAL INVESTMENT ADVISORS, LLC'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS THE CONSOLIDATED SECOND AMENDED COMPLAINT

55929487.2

# TABLE OF CONTENTS

**Page**

I. ISSUES PRESENTED .................................................................... 1

II. RELEVANT BACKGROUND FACTS ...................................... 2

    A. Cardinal was first retained in 2009 to provide investment consulting services. ..... 2

    B. Cardinal executed a second agreement effective January 1, 2012. ........................ 3

    C. Cardinal is added as a party just prior to the document discovery deadline. .......... 5

III. ARGUMENTS AND AUTHORITIES ....................................... 6

    A. Request for judicial notice of the 2009 and 2012 Agreements. ............................. 7

    B. Who is a "Fiduciary" under ERISA? .................................................. 8

        1. Recent DOL regulations suggest that the services provided by Cardinal do not give rise to fiduciary status. .................................................... 8

        2. A fiduciary is only liable to the extent it performs a fiduciary function. ........................................................................................ 9

        3. Plaintiffs fail to allege Cardinal was a fiduciary with respect to the actions at issue. ..................................................................................... 11

        4. Plaintiffs' mere conclusory assertions in the Complaint are insufficient as a matter of law ....................................................................... 13

        5. Dismissal of Counts I-IV of the Complaint against Cardinal is warranted. ...................................................................................... 18

            a. Count I ....................................................................................... 18

            b. Count II ..................................................................................... 20

            c. Count III .................................................................................... 21

            d. Count IV .................................................................................... 21

            e. Cardinal was improperly "lumped in" with the other Defendants. ............. 22

    f.  Far more than mere conclusory allegations should be expected at
this stage of this case. ............................................................................ 22

    g.  Case law supports granting Cardinal's Motion to Dismiss. ....................... 23

IV. CONCLUSION ..................................................................................................... 27

55929487.2

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2008) ............................................................................... 6, 7, 21

*Beddall v. Street Bank & Trust Co.,*
    137 F.3d 12 (1st Cir. 1998) ................................................................................. 7

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) ............................................................................................ 7

*Brandt v. Grounds,*
    687 F.2d 895 (7th Cir. 1982) ............................................................................ 25

*Chicago Bd. Options Exchange, Inc. v. Connecticut General Life Ins. Co.,*
    713 F.2d 254 (7th Cir. 1983) ....................................................................... 25, 26

*Chicago Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.,*
    474 F.3d 463 (7th Cir. 2007) ............................................................................ 26

*Coleman v. Nationwide Life Ins. Co.,*
    969 F.2d 54 (4th Cir. 1992), *cert. denied*, 506 U.S. 1081, 113 S.Ct.
    1051, 122 L.Ed.2d 359 (1993) ...................................................................... 9, 10

*Cotton v. Massachusetts Mut. Life Ins. Co.*
    402 F.3d 1267 (11th Cir. 2005) ........................................................................ 24

*Custer v. Sweeney,*
    89 F. 3d 1156 (4th Cir. 1996) ..................................................................... 10, 11

*Farm King Supply, Inc. Integrated Profit Sharing Plan & Trust v. Edward*
    *D. Jones & Co.,*
    884 F.2d 288 (7th Cir. 1989) ............................................................................ 26

*Firestone Tire & Rubber Co. v. Bruch,*
    489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989) ...................................... 10

*Hecker v. Deere & Co.*
    556 F.3d 575 (7th Cir. 2009) ............................................................................ 26

*Pappas v. Buck Consultants, Inc.*,
    923 F.2d 531 (7th Cir. 1991) ................................................................. 26

*Pegram v. Herdich*,
    530 U.S. 211 (2000) ............................................................................... 8

*Plumb v. Fluid Pump Service, Inc.*,
    124 F.3d 849 (7th Cir. 1997) ................................................................. 27

*Randall v. United States*,
    30 F.3d 518 (4th Cir. 1994), *cert. denied*, 514 U.S. 1107, 115 S.Ct.
    1956, 131 L.Ed.2d 849 (1995) ............................................................... 11

*Renfro v. Unisys Corp.*,
    671 F.3d 314 (3rd Cir. 2011) .......................................................... 23, 24

*Sec'y of State for Def. v. Trimble Navigation Ltd.*,
    484 F.3d 700 (Fourth Cir. 2007) ............................................................. 7

*Tegtmeier v. Midwest Operating Engineers Pension Trust Fund*,
    390 F. 3d 1040 (7th Cir. 2004) .............................................................. 26

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ............................................................................... 7

*In re USEC Sec. Litig.*,
    190 F.Supp.2d 808 (D.Md.2002) ............................................................ 7

*Veney v. Wyche*,
    293 F.3d 726 (4th Cir. 2002) ............................................................ 7, 22

*Walker v. National City Bank of Minneapolis*,
    18 F.3d 630 (8th Cir. 1994) ................................................................... 27

**Statutes**

29 U.S.C. § 1002(21)(A) .................................................................... 8, 12

29 U.S.C. § 1002(21)(A)(ii) .................................................................... 25

29 U.S.C. §1102(a)(1) ........................................................................... 12

29 U.S.C. § 1104 ................................................................................... 26

29 U.S.C. § 1104(a)(1)(B) ........................................................................ 5

iv

Employee Retirement Income Security Act of 1974 ................................................................. 1

ERISA ................................................ 1, 2, 4, 8, 9, 10, 11, 13, 15, 18, 20, 21, 24, 25, 26, 27

ERISA § 3(21)(A) ............................................................................................................. 8

**Other Authorities**

29 C.F.R, 2510.3-21(c)(1) (2016) ...................................................................................... 9

5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure §
    1357, 317–18 (2d ed.1990) ......................................................................................... 11

Fed. R. Civ. P. 12(b)(6) ........................................................................................... 1, 24, 27

Rule 12(b)(6) of the Federal Rules of Civil Procedure ................................................... 1, 8

*https://www.whitehouse.gov/the-press-office/2017/02/03/presidential-*
    *memorandum-fiduciary-duty-rule* .................................................................................. 2

Local Rules 7.2 and 7.3 ............................................................................................... 1, 27

55929487.2

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and Local Rules 7.2 and 7.3, Defendant Cardinal Investment Advisors, LLC, ("Cardinal") by and through its undersigned counsel, hereby move this Court to dismiss Plaintiffs' Consolidated Second Amended Complaint ("Complaint") (Dkt. # 88), for failure to state a claim upon which relief can be granted against Cardinal. Plaintiffs have brought claims for relief under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), with respect to the BB&T Corporation 401(k) Savings Plan (the "Plan"), and specifically, against Cardinal in its limited role as an outside investment consultant to the Compensation Committee of the Board of Directors (the "Committee" or "Compensation Committee") of BB&T Corporation ("BB&T") with respect to the Plan.

## I.

### ISSUES PRESENTED

1.      Should Plaintiffs Complaint should be dismissed against Cardinal pursuant to Fed. R. Civ. P. 12(b)(6) because Plaintiffs have failed to assert ***any*** specific allegations demonstrating that Cardinal transcended its role as an investment consultant for BB&T and exercised discretionary decision making  authority with respect to the investments and other alleged conduct giving rise to its claims for relief?

2.      Does the fact that that Cardinal has acknowledged "the role of a fiduciary" from January 1, 2012 with respect to certain consulting services provided to the Plan render it a fiduciary for all purposes under ERISA?  Or, do recent Department of Labor ("DOL") regulations effectively provide that the services provided by Cardinal do not

1

constitute fiduciary "investment advice" under ERISA, where, as in this case, the consulting services are being provided to a sophisticated independent fiduciary, such as the Compensation Committee[1].

## II.

## RELEVANT BACKGROUND FACTS

**A.    Cardinal was first retained in 2009 to provide investment consulting services.**

Via letter agreement dated April 20, 2009 (the "2009 Agreement"), Cardinal was retained by the Committee to provide the following investment consulting for the Compensation Committee:

- Coordination with current consultant to transition performance history and other relevant data;

- Development of asset allocation and investment policy and guidelines to include asset/liability modeling, as required;

- Development and annual review of detailed manager guidelines and performance benchmarks;

- Monitoring of investment managers' performance and style adherence;

- Customized quarterly performance reporting on a net of fees basis;

---

[1] Although President Trump has issued a memorandum dated February 3, 2017, directing the DOL to further review the likely impact of the regulations on investors, the executive memorandum did nothing to delay the regulations' April 2017 applicability date.  *See https://www.whitehouse.gov/the-press-office/2017/02/03/presidential-memorandum-fiduciary-duty-rule.*
In addition, even if the DOL should determine, as part of its study, that a new proposed rulemaking should be issued that would revise the final regulations, it is entirely possible that the sophisticated independent fiduciary portion of the regulations would remain unaffected, as this specific change to the prior regulation arguably provides *more* flexibility to ERISA plan investment consultants than was provided under the former rule.

55929487.2

- Asset class education, as needed;

- Support at Investment Committee or other relevant meetings, as requested;

- Analysis and support of custodian, manager or investment accounting search, selection, and transition, as needed; and

- Creation of peer analyses or other ad hoc investment research, as needed.

Cardinal was not retained as a fiduciary in the 2009 Agreement. Cardinal was retained to only provide advice and recommendations and it did not exercise any discretionary decision making authority with respect to transactions or decisions made by the Committee. (See Exhibit 1). The 2009 Agreement specifically provided that Cardinal would:

> [P]rovide advice and recommendations to the Committee based on both its judgment and with regard to the services defined in Exhibit A, which is incorporated herein by this reference. Cardinal does not provide investment advice or recommendations regarding the purchase or sale of specific securities. Cardinal will provide the Committee with alternatives and various courses of action; however, ***all decisions regarding the Committee investments remain with the Committee*** (emphasis added).

## B. Cardinal executed a second agreement effective January 1, 2012.

In or about December 2011, Cardinal executed a second agreement with the Compensation Committee to provide general investment consulting services, effective January 1, 2012 (the "2012 Agreement"). The 2012 Agreement called for Cardinal to provide the same nine (9) categories of consulting services:

3

- Coordination with current consultant to transition performance history and other relevant data;

- Development of asset allocation and investment policy and guidelines to include asset/liability modeling, as required;

- Development and annual review of detailed manager guidelines and performance benchmarks;

- Monitoring of investment managers' performance and style adherence;

- Customized quarterly performance reporting on a net of fees basis;

- Asset class education, as needed;

- Support at Investment Committee or other relevant meetings, as requested;

- Analysis and support of custodian, manager or investment accounting search, selection, and transition, as needed; and

- Creation of peer analyses or other ad hoc investment research, as needed.

See Exhibit 2.

In the 2012 Agreement, Cardinal acknowledged "the role of a fiduciary" under ERISA ("fiduciary"), but only as it related to consulting services provided with respect to the Plan, and assuming without conceding that such services would be classified as fiduciary services, only as provided in the "applicable provisions of ERISA." *See page 1*

55929487.2

of the 2012 Agreement. And, just like the 2009 Agreement, the 2012 Agreement made clear that Cardinal was not responsible for any discretionary decision-making authority with respect to the investment decisions of the Plan. The 2012 Agreement provided as follows:

> Cardinal will provide advice and recommendations to the Committee based on both its judgment and with regard to the services defined in Exhibit A, which is incorporated herein by this reference. Cardinal does not provide investment advice or recommendations regarding the purchase or sale of specific securities. Cardinal will provide the Committee with alternatives and various courses of action; however, ***all decisions regarding the Committee investments remain with the Committee*** (emphasis added).

## C. Cardinal is added as a party just prior to the document discovery deadline.

On the eve of the document discovery deadline in this case, and after they had filed a motion seeking an extension of the document discovery deadline, Plaintiffs filed a Second Amended Complaint asserting four (4) claims of breach of fiduciary duty against Cardinal. However, all four claims contain nothing more than brief, conclusory assertions of wrongdoing on the part of Cardinal that involve actions beyond the scope of its fiduciary responsibility as outlined in the 2012 Agreement. Almost without exception, it appears as if Plaintiffs simply went through the Amended Complaint and added the word "Cardinal" to the factual allegations giving rise to the claims they had previously asserted against the BB&T Defendants.

The allegations giving rise to Plaintiffs' claims for breach of fiduciary duty involve decisions, actions and/or omissions allegedly taken solely by the BB&T Defendants, and Cardinal's status as an investment consultant and advisor, standing

5

alone, should not be sufficient to subject it to liability for the four claims of breach of fiduciary duty asserted herein. Plaintiffs ignore the fact that Cardinal was engaged as a fiduciary, but only to the extent of the services it provided to BB&T beginning January 1, 2012, and the services provided by Cardinal do not give rise to Plaintiffs' claims for damages herein. Indeed, tellingly absent from Plaintiffs' 87 page Complaint are *any* specific allegations demonstrating that Cardinal transcended its role as an investment consultant for BB&T and exercised any discretionary decision-making authority with respect to the investments and other actions at issue in this case.

And the relevant Plan document leaves no doubt that the Compensation Committee has the authority to control investment options. (*See* Prame Decl. Ex. 1 at § 10.1.5 [Dkt. # 52] (Compensation Committee's duties are: "(a) To determine from time to time the investment funds to be made available to participants; and (b) To adopt an investment policy statement for the plan."). The Plan document is consistent with both of the Agreements which show that Cardinal was engaged to perform a discreet subset of investment consulting services and it was not retained to make investment decisions for the Plan.

## III.

## ARGUMENTS AND AUTHORITIES

The Supreme Court has concluded that plaintiffs are required to allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2008). As such, to

55929487.2

survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. And, courts need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002).

A.      **Request for judicial notice of the 2009 and 2012 Agreements.**

In ruling on a motion to dismiss in an ERISA action, the court is not confined to the allegations in the complaint, but may review the plan documents referred to in the complaint and relied on by the plaintiff. *Beddall v. Street Bank & Trust Co.*, 137 F.3d 12, 17 (1st Cir. 1998); *In re USEC Sec. Litig.*, 190 F.Supp.2d 808, 813 (D.Md.2002) (noting that in a securities fraud action, "the Court is entitled to rely on public documents quoted by, relied upon, incorporated by reference or otherwise integral to the complaint, and such reliance does not convert such a motion into one for summary judgment").[2] Plaintiffs' make reference to Cardinal's acknowledgement of "the role of a fiduciary" *(¶ 24(g))*; and that acknowledgment is contained in the 2012 Agreement.  As a result, we respectfully ask the Court,  to take notice of the 2012 Agreement and 2009 Agreement,

---

[2] In connection with a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., a court may consider "the complaint in its entirety, as well as … documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Further, the court may consider documents that are "integral to the complaint." *Sec'y of State for Def. v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (Fourth Cir. 2007).

55929487.2

respectively (collectively the "Agreements") for purposes of deciding this Motion to Dismiss.

**B.    Who is a "Fiduciary" under ERISA?**

Under ERISA § 3(21)(A), a person is a fiduciary only to the extent:

    (i)         He exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets,

    (ii)        He renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so; or

    (iii)       He has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). The "to the extent" language places a critical limitation on fiduciary status:

> In every case charging breach of ERISA fiduciary duty, then, the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint.
>
> *Pegram v. Herdich*, 530 U.S. 211, 226 (2000).

    1.    Recent DOL regulations suggest that the services provided by Cardinal do <u>not give rise to fiduciary status.</u>

Beginning on June 7, 2016, when the newly-issued investment advice fiduciary regulations promulgated by the DOL became effective, the arrangement between

8

Cardinal and BB&T as described in the 2012 Agreement would *clearly and certainly* not give rise, in and of itself, of any fiduciary status with respect to the Plan. Specifically, pursuant to 29 C.F.R, 2510.3-21(c)(1) (2016), a party is not considered an investment advice fiduciary to the extent that (a) advice is provided to Plan fiduciary that is sophisticated (a bank, among other entities, or an independent fiduciary that manages or controls at least $50 million in assets) and independent of the advisor, and (b) the advisor does not receive compensation from the Plan. Plaintiffs do not allege that Cardinal received any compensation from the Plan.

        2.    <u>A fiduciary is only liable to the extent it performs a fiduciary function.</u>

Further, it is well settled law in this Circuit that, a party is a fiduciary only "to the extent" that it performs a fiduciary function. As such, fiduciary status under ERISA is not an "all-or-nothing concept," and "***a court must ask whether a person is a fiduciary with respect to the particular activity at issue.***" *Coleman v. Nationwide Life Ins. Co.,* 969 F.2d 54, 61 (4th Cir. 1992), *cert. denied*, 506 U.S. 1081, 113 S.Ct. 1051, 122 L.Ed.2d 359 (1993) (district court erred in concluding that Nationwide was a fiduciary who had committed a breach, when it failed to follow the allocation of responsibilities that the plan documents themselves provided).

The Fourth Circuit, in *Coleman*, summarized the analysis applicable to the present motion. Before one can conclude that a fiduciary duty has been violated, it must be established that the party charged with the breach meets the statutory definition of "fiduciary." *Id.* The discretionary authority or responsibility which is pivotal to the

9

55929487.2

statutory definition of "fiduciary" is allocated by the plan documents themselves. *Cf. Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111, 109 S.Ct. 948, 954, 103 L.Ed.2d 80 (1989) (looking to plan documents to determine whether plan administrator exercised discretionary powers in interpreting plan provisions).

In *Coleman*, the Court examined whether Nationwide possessed discretionary authority or responsibility to notify all plan beneficiaries of circumstances, such as the failure of a plan sponsor to pay policy premiums that would affect the availability of benefits to all. Nothing in the plan at issue in that case suggested that Nationwide had any authority or responsibility to provide such notification. Indeed, Nationwide was not directed by that plan to provide notice to all beneficiaries under any circumstances. The Court noted that there was nothing in the formal allocation of responsibilities to conclude that Nationwide possessed the necessary discretionary authority to render it a fiduciary. It then looked beyond the formalities to see if Nationwide in fact exercised authority over these sorts of notifications and concluded that it had not.

In *Custer v. Sweeney*, 89 F. 3d 1156 (4th Cir. 1996), the *Coleman* analysis was relied upon by the district court to dismiss an ERISA claim for breach of fiduciary duty against an attorney who had provided legal advice to the Plan. Because the pension plan documents in question did not confer fiduciary status on the attorney, the Court in that case set out to "discern from Custer's amended complaint the functions that Sweeney allegedly performed" in making its ruling on the motion to dismiss. *Id*. at 1162.

55929487.2

The Fourth Circuit Court noted that while the plaintiff's amended complaint was "replete with assertions of [the attorney's] 'discretionary authority, control, and responsibility over the management of the Fund and certain assets of the Fund,' it nevertheless lacks any specific allegations capable of demonstrating that [the attorney] transcended his role as legal counsel." *Id*. at 1163, *citing* 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357, 317–18 (2d ed.1990) (noting that court need not accept plaintiffs' " 'unwarranted deductions,' 'footless conclusions of law,' or 'sweeping legal conclusions cast in the form of factual allegations' " (footnotes omitted)); *see also Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994), *cert. denied*, 514 U.S. 1107, 115 S.Ct. 1956, 131 L.Ed.2d 849 (1995). Plaintiffs' conclusory allegations in this case against Cardinal are strikingly similar to the conclusory allegations against the attorney in *Sweeney*. And the *Coleman/Sweeney* analysis leads to one simple conclusion: the Plaintiffs' claims against Cardinal should be dismissed.

3.   Plaintiffs fail to allege Cardinal was a fiduciary with respect to the actions <u>at issue.</u>

In this case, Plaintiffs have failed to allege sufficient facts that show that Cardinal was a fiduciary with respect to the actions at issue. Plaintiffs do not allege that Cardinal began to exercise any discretionary decision making authority beyond its stated role as an investment counselor to the Committee. Nor do Plaintiffs allege that such discretionary decision making authority by Cardinal gave rise to their claims for damages. At various points in the Complaint, the name Cardinal appears as nothing more than an add-on in an impermissible attempt to sweep Cardinal into this lawsuit.

11

It is not clear from the face of the Complaint if Plaintiffs are alleging that Cardinal is a fiduciary because it was either named as a fiduciary or because of certain exercises of discretion. Plaintiffs allege that "Defendants identified below include both 'named fiduciaries' under 29 U.S.C. §1102(a)(1), who have authority under the written plan document to control and manage the administration of the plan, and functional fiduciaries under 29 U.S.C. §1002(21)(A), who possess or exercise certain types of authority, responsibility, or control over the Plan." ¶*23*. Plaintiffs merely allege that Cardinal acknowledged its role as a fiduciary (without reference to when such acknowledgement occurred),[3] and the Complaint contains no facts that show that Cardinal exercised sufficient control and management of the Plan to be considered a functional fiduciary under ERISA. Plaintiffs' failure to specify the nature of Cardinal's liability is fatal to their Complaint.

Cardinal contends that, at most, it acknowledged the role as a fiduciary in the 2012 Agreement, but only to the extent Cardinal was actually engaging in fiduciary activities under ERISA. Cardinal asserts that this language was anticipatory, and by law, Cardinal should not be considered a fiduciary. As noted above, BB&T is a bank, the Committee manages billions of dollars of retirement plan assets, and nothing the Plaintiffs have alleged shows that Cardinal is paid from the Plan. As a result, at least the DOL takes the position in recently issued regulations cited above that Cardinal should not be deemed a fiduciary with respect to the services provided to the Committee. Unless Plaintiffs allege

---

[3] Cardinal did not agree for its role to potentially rise to the level of a fiduciary until January 1, 2012, but then it was solely limited to the scope of the investment consulting services provided to the Committee.

55929487.2

that Cardinal is paid from the Plan-which they did not-, Cardinal should not be deemed a fiduciary with respect to the Plan, because under ERISA the services provided by Cardinal do not rise to the level of "investment advice" deemed to be a fiduciary service under DOL guidance.  The DOL's position on this one issue is a reasonable and generally accepted principle of law-- namely, that one cannot be a fiduciary by simply providing advice to party that is itself a sophisticated independent fiduciary if such advisor is not paid from the Plan.   Cardinal has not expressly assumed the fiduciary status that Plaintiffs' claim, and Plaintiffs cite nothing outside of the 2012 Agreement to prove their point.

> 4.  Plaintiffs' mere conclusory assertions in the Complaint are insufficient <u>as a matter of law.</u>

All of Plaintiffs' factual allegations concerning Cardinal's alleged wrongful conduct are set forth below.  As the Court will see, Plaintiffs simply went back and added the words "and Cardinal" to their factual allegations against the BB&T Defendants. Moreover, assuming without conceding that Cardinal was a fiduciary, Plaintiffs never addressed the facts that: 1) Cardinal did not acknowledge its potential role as a fiduciary until January 1, 2012;  and 2) the Agreements made clear Cardinal was not responsible for any investment decisions made by the Committee.

- For instance, instead of using the Plan's bargaining power to benefit employees, BB&T Defendants, ***who were advised by Defendant Cardinal Investment Advisors ("Cardinal"),*** acted to benefit themselves or others by using high-cost proprietary investment funds managed by BB&T and its subsidiary and hiring BB&T itself or another BB&T subsidiary to be the Plan's trustee and recordkeeper, and selecting other high-cost investment options. *¶1;*

55929487.2

- The Charter of the Compensation Committee of the Board of Directors of BB&T Corporation gives to the Compensation Committee the authority to obtain advice and assistance from advisors, including outside investment consultants. From at least 2009 to the present, beginning with a search conducted by BB&T along with representatives from BB&T Human Systems and BB&T Asset Management, *the Compensation Committee engaged the services of Defendant Cardinal Investment Advisors, LLC ("Cardinal") to serve as an outside investment consultant to the Compensation Committee. ¶24 (f)*;

- *In its role as an investment advisors and consultant and the services it provide[s] to the Compensation Committee, Cardinal acknowledged its role under ERISA as a fiduciary to the Plan. The Compensation Committee expressly acknowledged and required Cardinal's role as fiduciary to the Plan. ¶24 (g)*;

- Although not fully disclosed to Plaintiffs at this time, *the services provided by Cardinal to the Compensation Committee included, but was not limited to: (i) providing advice and recommendations to the Compensation Committee regarding investments offered in the Plan; (ii) amending and revising the Statement of Investment Policy for the Plan; (iii) monitoring the investment options and the managers of the investment options in the Plan for annual reviews, compliance with the Statement of Investment Policy, and adherence to stated style and performance; (iv) the analysis of custodian, manager and investment account search, selection, and transition; (v) preparing reporting of the investment options including the performance of the investments, net of fees; and (vi) conducting Plan administrative fee reviews, cost assessments, and fee benchmarking studies. Further, Cardinal provided overall support to the Compensation Committee as requested by the Compensation Committee. ¶24 (h)*;

- Here, since the BB&T Defendants *and Cardinal* must monitor the BB&T recordkeeping entity's fees, there is a direct conflict of interest, and the Plan's fees became excessive in part because Defendants failed to assess, monitor and control the amount of the revenue sharing payments to BB&T or its subsidiary. *¶55;*

- As this chart shows, the level of revenue sharing that BB&T Corporation or its subsidiary received from the proprietary BB&T and Sterling Capital mutual funds was not only asset-based instead of a flat fee per participant,

55929487.2

but also several orders of magnitude higher than the revenue sharing from the non-proprietary options. BB&T Defendants, *and Cardinal*, selected and retained the proprietary BB&T and Sterling Capital mutual funds in part because of this revenue sharing system, driving revenue to their in-house recordkeeper, and exceeding by orders of magnitude a reasonable level of fees. *¶58*;

- From the beginning of 2009 to year-end 2014, the Plan's assets more than doubled, from $1.4 billion to over $2.9 billion. By year-end 2012, the Plan's assets had increased 57% percent compared to the beginning of 2009, to $2.2 billion. Because the revenue sharing payments are asset-based, the already excessive compensation paid to BB&T or its subsidiary each year from 2010 through 2012 skyrocketed by over 50% compared to 2009— about $2 million more per year—even though the administrative services that BB&T or its subsidiary provided to the Plan remained essentially the same. BB&T Defendants *and Cardinal* could have capped the amount of revenue sharing to ensure that any excessive amounts were returned to the Plan. *¶62*;

- Based on these facts, BB&T Defendants *and Cardinal* failed to prudently monitor and control BB&T's recordkeeping compensation, particularly the amount of asset-based, uncapped revenue sharing received by BB&T or its subsidiary. By allowing BB&T or its subsidiary to receive an uncapped amount of revenue sharing, Defendants allowed BB&T or its subsidiary to receive excessive compensation for the same level of service. *¶63*;

- Moreover, had BB&T Defendants, *and Cardinal*, conducted a competitive bidding process for the Plan's recordkeeping services, the market would have determined a reasonable recordkeeping fee for the Plan. Had BB&T Defendants *and Cardinal* done so, they would have seen that the amount the Plan was paying to BB&T or its subsidiary was greatly excessive. That would have allowed BB&T Defendants *and Cardinal* to negotiate a reduction in recordkeeping fees, either from the BB&T recordkeeping entity, or by retaining a new recordkeeper. At that point, even if the Plan continued to use revenue sharing to pay for recordkeeping, the amount of revenue sharing could have been capped at a reasonable level, with any excess returned to the Plan. *¶64*;

- BB&T Defendants *and Cardinal's* failure to obtain competitive bids, while allowing BB&T to receive an uncapped amount of revenue sharing,

55929487.2

resulted in the Plan paying millions of dollars in excessive fees for recordkeeping. *¶65*;

- BB&T Defendants, ***and Cardinal***, also failed to prudently investigate and use the lowest cost share class of certain mutual funds in the Plan,… *¶71*;

- Aside from excessive fees compared to other mutual funds that were available to the Plan, BB&T Defendants, ***and Cardinal***, also failed to adequately investigate (or failed to come to a reasoned decision) offering non-mutual fund alternatives, such as collective trusts and separately managed accounts. Each mutual fund in the Plan charged fees greatly in excess of the rates BB&T Defendants, ***and Cardinal***, could have obtained for the Plan by using these comparable products. *¶72*;

- Sterling Capital's advertised fee schedule for a Large Cap Value separate account starts at 60 basis points, and declines to 40 basis points on incremental assets over $50 million. Based on the Plan's $228 million investment in the Sterling Capital Behavioral Large Cap Value mutual fund (a.k.a. Select Equity Fund), the Plan would have paid only 43 basis points under the separate account fee schedule. Thus, BB&T Defendants, ***and Cardinal***, could have cut the 85 basis point mutual fund fee in half simply by converting the mutual fund to a separate account. *¶77*;

- Similarly, Sterling Capital advertises a "Special Opportunities Portfolio" with a declining fee schedule that starts at 70 basis points on the first $25 million in assets, and declines to 40 basis points on all incremental assets above $75 million. Based on the Plan's $222 million investment in the Sterling Capital Special Opportunities mutual fund, BB&T Defendants, ***and Cardinal***, could have reduced the 96 basis point mutual fund fee paid by the Plan by more than half by converting the mutual fund to a separate account. *¶78*;

- Based on Sterling Capital's advertised fee schedules, Defendants could have obtained similar savings for each of the other Sterling Capital mutual funds in the Plan. Had BB&T Defendants, ***and Cardinal***, obtained those institutional rates, the Plan would have saved over $4 million in investment management expenses in 2014 alone. *¶79*;

- Moreover, unlike mutual funds, which by law must charge the same fee to all investors, separate account fee schedules are subject to negotiation. Indeed, industry data show that actual fee schedules are typically lower

55929487.2

than advertised fee schedules, particularly when a plan has a large amount of assets to invest, as the Plan did here. Accordingly, the fee savings that BB&T Defendants, **and Cardinal,** could have obtained for the Plan were even greater than the amounts reflected in the investment managers' advertised fee schedules. By using almost exclusively mutual funds, BB&T Defendants **and Cardinal** squandered the ability to negotiate lower fees for the benefit of the Plan. *¶81;*

- The Plan's "target date funds" demonstrate the fee savings available through collective trusts. Since 2009, the Plan has included a series of "target date funds," in which each fund has a "target" retirement date and changes its asset allocation to become more conservative as the target date approaches. Until the end of 2014, BB&T Defendants **and Cardinal** used mutual funds managed by T. Rowe Price for the target date option, which charged up to 76 basis points. As of January 2, 2015, these Defendants replaced the mutual funds with collective trust versions of the T. Rowe Price target date funds. Each of the collective trusts charges 49 basis points, meaning the mutual fund versions were up to 55% more expensive. *¶83;*

- The high fees were not justified by superior investment performance. BB&T Defendants **and Cardinal** retained proprietary funds in the Plan that consistently and historically underperformed, further demonstrating that the reason the funds were retained in the Plan was to maintain the revenue stream to BB&T Corporation and its subsidiaries from the excess fees charged by the funds. *¶85;*

- Until 2012, the plan did not offer a stable value fund. Instead, the Plan included two short-duration fixed income options which BB&T Defendants **and Cardinal** knew would not provide a meaningful long-term retirement asset because of below-inflation returns of under 1% per year: *¶92;*

- The Plan's largest investment option is the BB&T Common Stock Fund, at over $600 million in assets. Instead of allowing participants to invest directly in shares of BB&T Corporation common stock (traded on the New York Stock Exchange as BBT), BB&T Defendants **and Cardinal** provided participants units in an account that included BB&T stock and cash. *¶102;*

Contrary to the foregoing conclusory and often incorrect mistaken assertions,

Cardinal did not agree for its role to potentially rise to the level of a Plan fiduciary "under

17

the applicable provisions of ERISA" until January 1, 2012, and even then, its responsibilities under the Agreements were expressly limited to providing advice and recommendations to the Committee, and expressly *excluded* any decision-making authority whatsoever with respect to the assets of the Plan. When considered against these actual facts, Plaintiffs' conclusory allegations do not constitute well-pleaded factual allegations and cannot, as a matter of law, support claims for breach of fiduciary duty against Cardinal in each of Counts I through IV of the Complaint.

> 5.  Dismissal of Counts I-IV of the Complaint against Cardinal is warranted.

>    a.  Count I

In Count I, Plaintiffs assert a claim for breach of fiduciary duty against Cardinal, and the other Defendants, alleging that Cardinal "failed to engage in a prudent and loyal process to ensure that the compensation paid to BB&T or its subsidiary was reasonable for the administrative services provided to the Plan." Plaintiffs' claim against Cardinal rests upon the conclusory (and incorrect) assertion that Cardinal was "directly responsible for ensuring that the plan's fees [were] reasonable for the services provided." Conspicuously absent from this Count are any allegations by the Plaintiffs which show that Cardinal actually exercised any control over the selection of the recordkeeper/administrative service provider or that it had a duty to monitor the Plan's trustee/recordkeeper as to either performance or fees.

In fact, the Agreements both clearly show that exercising any control over the selection of the recordkeeper/administrative service provider was not among the tasks

55929487.2

Cardinal agreed to perform for the Committee. And, there are no factual allegations that show Cardinal disregarded the Agreements and proceeded to perform such services for the Committee. For example, Plaintiffs do not allege any specific facts to the effect that Cardinal actually *provided* any advice to the Compensation Committee regarding the retention of Sterling Capital Management as recordkeeper/trustee at all in 2012 or after, or had any authority to negotiate fees with service providers. Absent any factual allegations -beyond mere conclusory assertions- that show that Cardinal was responsible for these tasks and failed to perform them, or undertook to perform these tasks and performed them in a subpar manner, Plaintiffs Count I against Cardinal should be dismissed for failure to state a claim upon which relief can be granted.

Cardinal could not have been involved in the initial fiduciary decision to engage a BB&T subsidiary as recordkeeper/trustee. According to Plaintiff's statement of facts, the decision to engage BB&T Asset Management, Inc. took place prior to Cardinal's involvement with the Plan, ¶*36.* The challenged decision to retain Sterling Capital Management in October of 2010 following BB&T Asset Management's merger into that entity also pre-dated Cardinal's fiduciary status with respect to the Plan. *Id.* And, Cardinal could not have breached any fiduciary duty by "retaining" Sterling Capital Management's services during and after 2012 because Cardinal had no authority to hire and fire Plan service providers under the terms of the Agreements.

55929487.2

b.      Count II

In Count II, Plaintiffs assert a claim for breach of fiduciary duty against Cardinal for its alleged failure to properly monitor and manage the assets of the Plan. However, Plaintiffs allege no facts which show that Cardinal ever had that responsibility. The Agreements make clear that Cardinal was not responsible for any investment decisions made by Committee. Further, Plaintiffs fail to allege any facts that show that Cardinal was actually involved in making any investment decisions, and if involved, how those actions by Cardinal give rise to the damages allegedly suffered by Plaintiffs. A mere conclusory assertion that a party failed to properly manage the assets of an ERISA qualified plan, without more, is not enough to defeat a motion to dismiss:

> "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."

> *Iqbal*, 556 U.S. at 678.

Moreover, Cardinal could not have been involved in the initial fiduciary decision to offer BB&T proprietary funds as investment options under the Plan (at whatever fee structure/performance history). According to Plaintiff's statement of facts, the decision to offer the BB&T proprietary funds was made long before Cardinal's involvement in the Plan at all. **¶*37*.** Cardinal could not have breached any fiduciary duty by "retaining" the BB&T proprietary funds during and after 2012 because Cardinal had no authority to eliminate any investment options from the Plan (or to add any particular investment funds, for that matter), and there are no factual allegations in the Complaint that show

20

that Cardinal actually provided a recommendation that the Compensation Committee *should retain* the BB&T proprietary funds in 2012 and after.

      c.     Count III

In Count III, Plaintiffs allege that Cardinal breached its fiduciary duty of loyalty and prudence under ERISA by failing to properly evaluate and monitor the Plan's investments. Once again, this Count contradicts what the Agreements show Cardinal had been retained to do, and the Complaint contains no factual allegations that show that Cardinal acted in direct contravention of the Agreements, which both expressly stated that "all decisions regarding the Committee investments remain with the Committee."

      d.     Count IV

In Count IV, Plaintiffs allege that Cardinal breached its fiduciary duty of loyalty and prudence, because BB&T used a "unitized structure for the BB&T Common Stock Fund." Completely absent from this Count is any factual allegation that shows that Cardinal decided on this course of action, or even recommended it to BB&T. And, the facts before the Court show that Cardinal was ***not responsible for this task*** as both versions of the Agreements explicitly state that "Cardinal does not provide investment advice or recommendations regarding the purchase or sale of specific securities."

But, more importantly, Cardinal ***could not have been involved*** in the initial fiduciary decision to use a unitized structure for the BB&T Common Stock Fund. According to Plaintiff's statement of facts, the decision to structure the BB&T Common Stock Fund in that manner dated back to at least January 1, 2007, ***¶37*** which precedes

55929487.2

Cardinal's engagement in any capacity by the BB&T Compensation Committee by more than two years.

      e.    <u>Cardinal was improperly "lumped in" with the other Defendants.</u>

In fact, conspicuously absent from the Complaint are any factual allegation that show that Cardinal, itself, exercised any control or authority over the selection of investment options, service providers, fees to be charged or paid, or the structure of any funds or holdings.  Instead, all Plaintiffs did was lump Cardinal in with all of the "other Defendants" and make sweeping allegations of wrongdoing applicable to all of them. Cardinal submits that such a scant factual basis is insufficient to withstand a challenge via motion to dismiss in a lawsuit that has been ongoing for months.

      f.    <u>Far more than mere conclusory allegations should be expected at this stage of this case.</u>

Importantly, the timing of the Complaint adding Cardinal as a party to the action should not be lost on the Court.  Plaintiffs' claims against Cardinal, which were not apparently asserted "upon information and belief," were filed months after this suit was initiated, including several months after document discovery commenced.  With the benefit of several months of discovery and their knowledge of the factual record in this case, a well-pleaded complaint against Cardinal should, at a minimum, contain some factual allegations that extend beyond the mere conclusory assertions offered by Plaintiffs.  And in ruling on this motion, the Court need not take Plaintiffs' conclusory allegations regarding Cardinal's involvement with the Plan investment options as true and should dismiss the claims against it.  *Veney v. Wiche*, 293 F.3d 726, 730 (4th Cir.

55929487.2

2002) (court need not "'accept as true allegations that contradict matters properly subject to judicial notice or by exhibit'" (citation omitted)).

g.   Case law supports granting Cardinal's Motion to Dismiss.

A dismissal of Plaintiffs' Complaint would be consistent with the jurisprudence of this Circuit and other Circuits that have addressed this issue.  In *Renfro v. Unisys Corp.,* 671 F.3d 314 (3rd Cir. 2011), the court addressed similar allegations to those asserted by Plaintiffs in this case.  In the complaint, plaintiffs alleged that Unisys Corporation ("Unisys")  and  Fidelity Management Trust Company and related-entities ("Fidelity") breached their duties of loyalty and prudence by selecting and retaining retail mutual funds in the range of investment options. Specifically, plaintiffs contended the administrative fees governed by the trust agreement, and the fees associated with each retail mutual fund, were excessive in light of the services rendered as compared to other, less expensive, investment options not included in the plan. These allegations focused on the inclusion of so-called retail mutual funds, which were available to individual investors with small investments as well as to large ERISA funds such as Unisys's. Plaintiffs alleged that Unisys could have selected investments having lower fees than mutual funds and/or used the size of its plan as leverage to bargain for lower fee rates on mutual funds.

The district court in *Renfro* granted Fidelity's motion to dismiss, concluding as a matter of law under the trust agreement that Fidelity was not a fiduciary with respect to the challenged conduct, because Fidelity did not exercise control over the inclusion of

55929487.2

investment options in the plan.4  On appeal, the Court examined whether Fidelity was a fiduciary with respect to the challenged conduct of selecting and retaining investment options in the Unisys plan.  The Third Circuit affirmed the dismissal by the district court relying upon the language in Fidelity's agreement with Unisys:

> The **"agreement expressly disclaimed any role for Fidelity in selecting investment options, stating, "[Fidelity entities] shall have no responsibility for the selection of investment options under the Trust," Instead, the agreement required that Fidelity be explicitly "direct [ed] ... as to what investment options ... Plan participants may invest in." Fidelity's limited role as a directed trustee, delineated in the trust agreement, does not encompass the activities alleged as a breach of fiduciary duty—the selection and maintenance of the mix and range of investment options included in the plan.** Id. at 323.

In *Cotton v. Massachusetts Mut. Life Ins. Co.* 402 F.3d 1267 (11th Cir. 2005), the United States Court of Appeals for the Eleventh Circuit affirmed the granting of a rule 12(b)(6) motion to dismiss where defendant Mass Mutual had conceded that it was a fiduciary for the limited purpose of making death benefit determinations under the policies, but it sought a dismissal, because, among other reasons, the amended complaint failed to establish that it was  "a fiduciary for any other purpose."  The Plaintiffs in *Cotton* were very similar to the conclusory allegations before the Court in this case. Plaintiffs had alleged that Mass Mutual (a) "sold Policies and helped establish the Plan,"

---

[4] The agreement expressly disclaimed any role for Fidelity in selecting investment options, stating, "[Fidelity entities] shall have no responsibility for the selection of investment options under the Trust," Instead, the agreement required that Fidelity be explicitly "direct [ed] ... as to what investment options ... Plan participants may invest in." Fidelity's limited role as a directed trustee, delineated in the trust agreement, does not encompass the activities alleged as a breach of fiduciary duty—the selection and maintenance of the mix and range of investment options included in the plan.  this issue in the context of a trust agreement appointing Fidelity as a directed trustee limited Fidelity's role to "hold and invest ... plan assets in trust among several investment options selected by the Applicable Fiduciary," and to "perform recordkeeping and administrative services for the Plan if the services are purely ministerial in nature and are provided within a framework of plan provisions, guidelines and interpretations conveyed in writing to [Fidelity] by the Administrator."

55929487.2

(b) "administered, managed, and controlled such Policies," (c) "exercised discretionary authority over plan assets," and (d) "exercised discretionary authority with respect to plan management and administration." The district court determined that the simple conclusory allegations that Mass Mutual fell within the statutory definition of fiduciary, were insufficient and not well-pleaded factual allegations. Indeed, because the plaintiffs do not otherwise explain from whence this discretion came or how specifically Mass Mutual "administered, managed, and controlled" the plan, their allegations are really no more than a conclusory assertion that Mass Mutual is an ERISA fiduciary.

Two Seventh Circuit opinions are also particularly helpful in analyzing the present issue before the Court: *Brandt v. Grounds*, 687 F.2d 895, 897 (7ᵗʰ Cir. 1982); *Chicago Bd. Options Exchange, Inc. v. Connecticut General Life Ins. Co.*, 713 F.2d 254, 259 (7ᵗʰ Cir. 1983). In *Brandt,* the Seventh Circuit affirmed the dismissal of an action against a bank that had allowed a plan trustee to withdraw $175,000 from the plan's accounts. The trustee had obtained the money by forging, or by obtaining under false pretenses, the signature of another trustee. In addition to alleging a breach of the bank's duties as a depository for accepting the forged instruments, plaintiffs alleged that the bank had breached its fiduciary duties under ERISA by acting imprudently in violation of the prudent man standard of 29 U.S.C. § 1104(a)(1)(B). The court agreed that the bank may have been a fiduciary as a result of its providing investment advice for a fee, 29 U.S.C. § 1002(21)(A)(ii), but it held that "its fiduciary status existed only 'to the extent' that it provided that advice .... Thus, the personal liability of the Bank would be limited to its

25

55929487.2

violations of 29 U.S.C. § 1104 in performing its investment advising functions." 687 F.2d at 897. The bank therefore was not a fiduciary with respect to its functions as a depository.

Similarly, in *Chicago Board,* the court held that Connecticut General was a fiduciary because it had discretionary authority over management of plan assets by virtue of Connecticut General's power to amend its annuity contract with the Chicago Board Options Exchange. The court noted, however, that Connecticut General's fiduciary status "only govern[ed] actions taken in regard to amending the contract and did not impose fiduciary obligations upon Connecticut General when taking other actions." 713 F.2d at 259.

Indeed, merely "playing a role" or furnishing professional advice is not enough to transform a company into a fiduciary. *Hecker v. Deere & Co.* 556 F.3d 575 (7th Cir. 2009). It is well-settled law that many people help develop and manage benefit plans, for example, lawyers and accountants, to name two groups, but despite their considerable influence they are not, without more, considered them to be Plan fiduciaries. *Pappas v. Buck Consultants, Inc.,* 923 F.2d 531, 535 (7th Cir. 1991); *Farm King Supply, Inc. Integrated Profit Sharing Plan & Trust v. Edward D. Jones & Co.,* 884 F.2d 288, 292 (7th Cir. 1989); *see also Chicago Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.,* 474 F.3d 463, 471–72 (7th Cir. 2007) (ERISA plaintiff must show that entity "was acting in its capacity as a fiduciary at the time it took the actions that are the subject of the complaint."); *See also, Tegtmeier v. Midwest Operating Engineers Pension Trust*

55929487.2

*Fund*, 390 F. 3d 1040 (7th Cir. 2004); *Plumb v. Fluid Pump Service, Inc.,* 124 F.3d 849 (7th Cir. 1997)(in assessing whether a person can be held liable for breach of fiduciary duty, "a court must ask whether [that] person is a fiduciary with respect to the particular activity at issue); *Walker v. National City Bank of Minneapolis,* 18 F.3d 630 (8th Cir. 1994)(unless ERISA mandates otherwise, division of authority in the plan determines the duties of the various fiduciaries).

Consistent with the case law and other guidance cited above, Cardinal respectfully submits that Plaintiffs' claims against it for breach of fiduciary duty should be dismissed because Cardinal's limited role as an investment advisor does not encompass the activities alleged as a breach of fiduciary duty by Plaintiffs—the selection and maintenance of the mix and range of investment options included in the Plan.

## IV.

## CONCLUSION

WHEREFORE, Defendant Cardinal Investment Advisors, LLC respectfully requests that this Court enter an order dismissing Plaintiffs' Consolidated Second Amended Complaint with prejudice as to Cardinal pursuant to Federal Rule of Civil Procedure 12(b)(6) and Local Rules 7.2 and 7.3, and in any event, without a doubt with respect to any acts taken before 2012, when Cardinal accepted some limited fiduciary status. Finally, Cardinal should be dismissed to the extent of any acts taken before it agreed to provide services to the Committee in 2010, effective as of April 1, 2009.

55929487.2

Dated this 7th day of February 2017.

Respectfully submitted,

POLSINELLI PC

By /s/ *Robert J. Garrey*
    Robert J. Garrey*
    Texas Bar No. 07703420
    bgarrey@polsinelli.com

POLSINELLI PC
2950 N. Harwood St., Ste. 2100
Dallas, Texas 75201
Telephone:  (214) 397-0030
Facsimile:  (214) 397-0033

/s/ Colleen Crowley
Colleen Crowley, NC Bar #25375
555 Fayetteville Street, Suite 720
Raleigh, NC 27601
Telephone:  (919) 832-1744
Facsimile:   (919) 832-1794

*Appearing by Special Appearance*

**ATTORNEYS FOR DEFENDANT
CARDINAL INVESTMENT
ADVISORS, LLC**

28

## CERTIFICATE OF SERVICE

This is to certify that on the 7th day of February 2017, I filed the forgoing document using the courts CM/ECF system, which will automatically send notification of filing to the following parties:

NICHOLS KASTER, PLLP
Kai H. Richter, MN No. 0296545 *
Carl F. Engstrom, MN No. 0396298*
4600 IDS Center
80 S 8th Street
Minneapolis, MN 55402
(612) 256-3200, (612) 338-4878 (fax)
krichter@nka.com
cengstrom@nka.com

*Proposed Additional Class Counsel and Attorneys for Bowers Plaintiffs*

SCHLICHTER BOGARD & DENTON
Jerome J. Schlichter, MO No. 32225*
Heather Lea, MO No. 49872*
Sean E. Soyars, MO No. 57317*
100 South Fourth Street
St. Louis, MO 631025
(314) 621-6115, (314) 621-7151 (fax)
jschlichter@uselaws.com
hlea@uselaws.com
ssoyars@uselaws.com

*Proposed Lead Class Counsel and Attorneys
For Smith Plaintiffs*

GROOM LAW GROUP, CHARTERED
Michael J. Prame*
Mark Bieter*
Justin Holmes*
Paul Rinefierd*
1701 Pennsylvania Ave., NW
Washington, DC 20006
(201) 861-6633, (202) 659-4501 (fax)

*Attorneys for Defendants*

WOMBLE CARLYLE SANDRIDGE & RICE
Ronald R. Davis, NC State Bar No. 20408
Brent F. Powell, NC State Bar No. 41938
One West Fourth Street
Winston-Salem, NC 27101
(336) 721-3600, (336) 721-3660 (fax)
brpowell@wcsr.com

Debbie W. Harden, NC State Bar No. 10576
One Wells Fargo Center
301 South College Street, Suite 3500
Charlotte, NC 28202
(704) 331-4900, (704) 331-4955 (fax)
dharden@wcsr.com

*Attorneys for Defendants*

29

PURYEAR & LINGLE, PLLC
David B. Puryear, Jr.
NC State Bar No. 11063                    *Appearing by Special Appearance
5501-E Adams Farm Lane
Greensboro, NC  27407
(336) 218-0227
Puryear@puryearandlingle.com

*Local Counsel for Smith Plaintiffs*

                                / s/ *Robert J. Garrey*
                                  Robert J. Garrey
                                  *Attorney for Defendant Cardinal Investment*
                                  *Advisors, LLC*

55929487.2