**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| BURKE BOWERS, et al. | |
| Plaintiffs, | |
| v. | No. 1:15-cv-732-CCE-JEP |
| BB&T CORPORATION, et al. | |
| Defendants. | |
| BREWSTER SMITH, JR., et al., | |
| Plaintiffs, | |
| v. | No. 1:15-cv-841-CCE-JEP |
| BB&T CORPORATION, et al., | |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION**

# TABLE OF CONTENTS

I.    Plaintiffs' allegations and claims. ..................................................................... 2

II.   The Proposed Class Definition.................................................................... 7

III.  Argument.................................................................................................... 9

   A. Plaintiffs meet the requirements of Rule 23(a).......................................... 9

           1.Numerosity................................................................................... 10

           2.Commonality................................................................................. 10

           3.Typicality. .................................................................................... 12

           4. Adequacy ................................................................................... 13

   B. Plaintiffs meet the requirements of Rule 23(b)(1). .................................... 16

IV.  Conclusion................................................................................................ 20

Case 1:15-cv-00732-CCE-JEP   Document 147   Filed 04/10/17   Page 2 of 29

# TABLE OF AUTHORITIES

**Cases**

*Abbott v. Lockheed Martin Corp.*,
  286 F.R.D. 388 (S.D. Ill. 2012) .................................................................. 17

*Abbott v. Lockheed Martin Corp.*,
  No. 06-701, 2015 U.S.Dist.LEXIS 93206 (S.D.Ill. July 17, 2015) ............ 15

*Abbott v. Lockheed Martin Corp.*,
  No. 06-701, Doc. 403 (S.D. Ill. Aug. 1, 2014) ......................................... 17

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ................................................................... 9, 13, 18

*Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*,
  133 S.Ct. 1184 (2013) .................................................................................. 9

*Andrus v. N.Y. Life Ins. Co.*,
  No. 16-05698, Doc. 69 (S.D.N.Y. Feb. 16, 2017) ..................................... 16

*Banyai v. Mazur*,
  205 F.R.D. 160 (S.D.N.Y. 2002) ............................................................... 11

*Beesley v. Int'l Paper Co.*,
  No. 06-703, Doc. 240 (S.D.Ill. Sept. 30, 2008) ......................................... 17

*Beesley v. Int'l Paper Co.*,
  No. 06-703, Doc. 543 (S.D. Ill. Oct. 10, 2013) ......................................... 17

*Brotherston v. Putnam Invs., LLC*,
  No. 15- 13825, Doc. 88 (D.Mass. Dec. 13, 2016) ..................................... 16

*Broussard v. Meineke Discount Muffler Shops*,
  155 F.3d 331 (4th Cir. 1998) ...................................................................... 10

*Brown v. Nucor Corp.*,
  576 F.3d 149 (4th Cir. 2009) ............................................................ 9, 10, 12

*Browning v. Tiger's Eye Benefits Consulting, Inc.*,
  No. 06-1404, 313 Fed.Appx. 656 (4th Cir. Feb. 26, 2009) ......................... 7

*Bussian v. DaimlerChrysler Corp.*,
  No. 04-387-WLO, 2007 U.S.Dist.LEXIS 44184, 2007 WL 1752059
  (M.D.N.C. June 18, 2007) .......................................................................... 11

*Caputo v. Pfizer, Inc.*,
  267 F.3d 181 (2d Cir. 2001) ........................................................................ 7

*Gen. Tel. Co. of Sw. v. Falcon*,
457 U.S. 147 (1982) ................................................................................................. 9

*George v. Kraft Foods Global Inc.*,
251 F.R.D. 338 (N.D. Ill. 2008) .............................................................................. 17

*George v. Kraft Foods Global Inc.*,
No. 08-3799, 2012 U.S.Dist. LEXIS 26536 (N.D.Ill. Feb. 29, 2012) ................. 16, 17

*Gordan v. Massachusetts Mutual Life Insurance Co.*,
No. 13-30184, Doc. 112 (D. Mass. June 22, 2016) ................................................. 17

*Gunnells v. Healthplan Servs., Inc.*,
348 F.3d 417 (4th Cir. 2003) .............................................................................. 10, 14

*Hutson v. CAH Acquisition Co. 10, LLC*,
No. 15-742-WLO, 2016 U.S.Dist.LEXIS 107329
(M.D.N.C. Aug. 15, 2016) .......................................................................... 11, 12, 13, 14

*In re Northrop Grumman Corp. ERISA Litig.*,
No. 06-06213, 2011 U.S.Dist.LEXIS 94451 (C.D.Cal. Mar. 29, 2011) ..................... 16

*In re Protected Vehicles, Inc.*,
397 B.R. 339 (Bankr. D.S.C. 2008) ......................................................................... 14

*In re Schering Plough Corp. ERISA Litig.*,
589 F.3d 585 (3d Cir. 2009) ....................................................................... 1, 11, 16, 19

*J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc.*,
76 F.3d 1245 (1st Cir. 1996) ...................................................................................... 7

*Jackson v. Wells Fargo Bank, N.A.*,
136 F.Supp.3d 687 (W.D.Pa. 2015) ......................................................................... 15

*Kanawi v. Bechtel Corp.*,
254 F.R.D. 102 (N.D. Cal. 2008) ................................................................... 13, 16, 17

*Krueger v. Ameriprise Fin., Inc.*,
304 F.R.D. 559 (D.Minn. 2014) ...................................................... 11, 13, 16, 17, 19

*Kruger v. Novant Health*,
No. 14-208, Doc. 53 (M.D.N.C. May 17, 2016) ....................................................... 17

*Lilly v. Harris-Teeter Supermarket*,
720 F.2d 326 (4th Cir. 1983) .................................................................................. 10

*Longo v. Trojan Horse Ltd.*,
No. 13-418, 2016 U.S.Dist.LEXIS 127910 (E.D.N.C. September 20, 2016) ........ 1, 16

*Loomis v. Exelon Corp.*,
No. 06-4900, 2007 U.S.Dist.LEXIS 46893 (N.D. Ill. June 26, 2007) ........................ 17

iv

*Martin v. Caterpillar Inc.*,
   No. 07- 1009, Doc. 173 (C.D. Ill. April 21, 2010) ...................................... 17

*Mass. Mut. Life Ins. Co. v. Russell*,
   473 U.S. 134 (1985) .................................................................................. 13

*Melton ex rel. Dutton v. Carolina Power & Light Co.*,
   283 F.R.D. 280 (D.S.C. 2012) .................................................................. 14

*Nolte v. Cigna Corp.*,
   No. 07-2046, 2013 U.S.Dist.LEXIS 101165 (C.D. Ill. July 3, 2013) ........................ 17

*Ortiz v. Fibreboard Corp.*,
   527 U.S. 815 (1999) .................................................................................. 19

*Partington v. Am. Int'l Specialty Lines Ins. Co.*,
   443 F.3d 334 (4th Cir. 2006) ...................................................................... 9

*Piazza v. EBSCO Indus. Inc.*,
   273 F.3d 1341 (11th Cir. 2001) .................................................................. 19

*Smith v. Bayer Corp.*,
   564 U.S. 299 (2011) .................................................................................. 19

*Spano v. Boeing Co.*,
   294 F.R.D. 114 (S.D. Ill. 2013) .................................................................. 17

*Tatum v. R.J. Reynolds Tobacco Co.*,
   254 F.R.D. 59 (M.D.N.C. 2008) ........................................ 1, 9, 11, 12, 13, 16, 19

*Tatum v. RJR Pension Inv. Comm.*,
   761 F.3d 346 (4th Cir. 2014) ...................................................................... 1

*Taylor v. United Tech. Corp.*,
   No. 06-1494, 2008 U.S.Dist.LEXIS 43655 (D. Conn. June 3, 2008) ........................ 17

*Thorn v. Jefferson-Pilot Life Ins. Co.*,
   445 F.3d 311 (4th Cir. 2006) ...................................................................... 9

*Tibble v. Edison Int'l*,
   135 S.Ct. 1823 (2015) .......................................................................... 2, 5, 15

*Tibble v. Edison Int'l*,
   843 F.3d 1187 (9th Cir. *en banc* 2017) ........................................................ 2

*Tibble v. Edison Int'l*,
   No. 07-5359, 2009 U.S.Dist.LEXIS 120939 (C.D.Cal. June 30, 2009) .............. 17, 19

*Tussey v. ABB Inc.*,
   2007 WL 4289694 (W.D.Mo. Dec. 3, 2007) ............................................ 16

Case 1:15-cv-00732-CCE-JEP   Document 147   Filed 04/10/17   Page 5 of 29

*Tussey v. ABB, Inc.*,
    No. 06-4305, 2012 U.S.Dist.LEXIS 157428 (W.D.Mo. Nov. 2, 2012) ..................... 15

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ................................................................................................ 10

*Ward v. Dixie Nat'l Life Ins. Co.*,
    595 F.3d 164 (4th Cir. 2010) ................................................................................ 14

*Will v. General Dynamics Corp.*,
    No. 06-698, 2010 U.S.Dist. LEXIS 95630 (S.D. Ill. Nov. 22, 2010) ........................ 17

**Statutes**

29 U.S.C. §1002(16(A) ................................................................................................ 2

29 U.S.C. §1002(34) ................................................................................................... 2

29 U.S.C. §1102(a) ..................................................................................................... 2

29 U.S.C. §1103(a) ................................................................................................ 2, 18

29 U.S.C. §1103(c)(1) ................................................................................................. 3

29 U.S.C. §1104(a) ..................................................................................................... 1

29 U.S.C. §1104(a)(1) ................................................................................ 3, 8, 11, 18

29 U.S.C. §1105(a) .................................................................................................. 1, 3

29 U.S.C. §1106 ......................................................................................................... 1

29 U.S.C. §1106(a) ..................................................................................................... 6

29 U.S.C. §1106(a)(1) ................................................................................................. 3

29 U.S.C. §1106(b) ................................................................................................. 4, 7

29 U.S.C. §1109(a) ............................................................................. 1, 4, 12, 13, 19

29 U.S.C. §1113 ......................................................................................................... 7

29 U.S.C. §1132(a)(2) ................................................................................ 1, 4, 12, 13

29 U.S.C. §1132(a)(3) .............................................................................................. 1, 12

**Rules**

Fed.R.Civ.P. 23(a) ............................................................................................ 9, 16, 17

Fed.R.Civ.P. 23(a)(1) ................................................................................................ 10

Fed.R.Civ.P. 23(a)(2) ................................................................................................ 10

Fed.R.Civ.P. 23(a)(3) ................................................................................................ 12

Fed.R.Civ.P. 23(a)(4) ................................................................................................ 13

Fed.R.Civ.P. 23(b) ................................................................................................. 9, 16

Fed.R.Civ.P. 23(b)(1) ....................................................................... 1, 16, 17, 20

Fed.R.Civ.P. 23(b)(1)(A) ................................................................... 2, 18, 19, 20

Fed.R.Civ.P. 23(b)(1)(B) ....................................................................... 2, 19, 20

Fed.R.Civ.P. 23(g) ........................................................................ 9, 13, 14, 15, 20

## Introduction

The Employee Retirement Income Security Act ("ERISA") imposes stringent duties upon fiduciaries of workplace retirement plans such as 401(k) plans—duties that are "the highest known to law." *Tatum v. RJR Pension Inv. Comm.*, 761 F.3d 346, 356 (4th Cir. 2014); *see* 29 U.S.C. §1104(a), §1105(a), §1106. Plaintiffs are participants in the BB&T Corporation 401(k) Savings Plan (the "Plan"). They contend that Defendants, as fiduciaries of their Plan, breached their stringent duties by causing their Plan to incur excessive fees for administrative and investment services and by providing imprudent investment options, resulting in millions of dollars of losses to the Plan. On behalf of a class of all Plan participants, Plaintiffs seek to recover for their Plan from Defendants all damages and equitable remedies due under 29 U.S.C. §1109(a). 29 U.S.C. §1132(a)(2); 29 U.S.C. §1132(a)(3).

Plaintiffs are pursuing these claims on behalf of their Plan to obtain remedies due their Plan. Because of the "derivative nature" these claims, they are "paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class, as numerous courts have held." *Longo v. Trojan Horse Ltd.*, No. 13-418, 2016 U.S.Dist.LEXIS 127910 \*23 (E.D.N.C. September 20, 2016)(quoting *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 604 (3d Cir. 2009)); *Tatum v. R.J. Reynolds Tobacco Co.*, 254 F.R.D. 59, 67 (M.D.N.C. 2008)(Tilley, J., listing cases).[1] This case is no exception. For the following reasons, the Court should certify this action as a class action under Federal

---

[1] *See Tatum*, 761 F.3d at 355 n.4 (noting no appeal of certification).

Rule of Civil Procedure 23(b)(1)(A) or (B).

## I.    Plaintiffs' allegations and claims.

The Plan is an individual account, defined-contribution plan, under ERISA. 29 U.S.C. §1002(34); Doc. 88 ¶8 (Second Amd. Compl.). In such plans, a participant's retirement benefits will be limited to the value of her or his individual account, which is determined solely by employee and employer contributions plus the amount gained through investment in the options made available in the plan, less expenses. *Tibble v. Edison Int'l*, 135 S.Ct. 1823, 1826 (2015). "Expenses, such as management or administrative fees, can sometimes significantly reduce the value of an account in a defined-contribution plan." *Id.* "[T]he higher the fees charged to a beneficiary, the more the beneficiary's investment shrinks." *Tibble v. Edison Int'l*, 843 F.3d 1187, 1198 (9th Cir. *en banc* 2017).

Each of the twelve named Plaintiffs is a current or former Plan participant. Doc. 88 ¶¶11–22; Doc. 99 ¶¶11–22 (Answer). The Plan has over 37,000 participants with account balances and $3 billion in assets.  Doc. 99 ¶10. Plan assets are held in trust by a BB&T company. *Id.* ¶32; 29 U.S.C. §1103(a). The BB&T Defendants[2] are the named fiduciaries of the Plan (29 U.S.C. §1102(a)) and Plan administrator (29 U.S.C. §1002(16(A)). Doc. 88 ¶24(a)–(e). Since 2009, Defendant Cardinal Investment Advisors, Inc. has provided fiduciary investment advice to the Compensation Committee regarding Plan investments

---

[2] Unless specified otherwise, as used herein "BB&T Defendants" means BB&T Corporation, the Board of Directors of BB&T Corporation, BB&T Corporation Employee Benefits Plan Committee, BB&T Corporation Board of Directors, Compensation Committee of the Board of Directors of BB&T Corporation.

and the Plan's investment and administrative expenses. *Id.* ¶24(g)–(h); see also Docs.

126-01, 126-02.

Among ERISA's stringent fiduciary duties are what are commonly known as the

duties of loyalty and prudence, which require fiduciary to

> discharge his duties with respect to a plan solely in the interest of the
> participants and beneficiaries and—
>   (A) for the exclusive purpose of: (i) providing benefits to participants and
> their beneficiaries; and (ii) defraying reasonable expenses of administering
> the plan; [and]
>   (B) with the care, skill, prudence, and diligence under the circumstances
> then prevailing that a prudent man acting in a like capacity and familiar
> with such matters would use in the conduct of an enterprise of a like
> character and with like aims[.]

29 U.S.C. §1104(a)(1).[3] A fiduciary is liable for the breach of another fiduciary if he

knowingly participates in or conceals the breach, enabled the breach through his own

breach of duty, or knew of the breach and failed to take reasonable efforts under the

circumstances to remedy it. 29 U.S.C. §1105(a). A fiduciary may not cause a plan to

engage in a transaction, "if he knows or should know that such transaction constitutes a

direct or indirect—(A) sale or exchange, or leasing, of any property between the plan and

a party in interest; (C) furnishing of goods, services, or facilities between the plan and a

party in interest; [or] (D) transfer to, or use by or for the benefit of a party in interest, of

any assets of the plan[.]" 29 U.S.C. §1106(a)(1).  A fiduciary also shall not "(1) deal with

the assets of the plan in his own interest or for his own account, (2) in his individual or in

any other capacity act in any transaction involving the plan on behalf of a party (or

---

[3] See also 29 U.S.C. §1103(c)(1).

represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries, or (3) receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan." 29 U.S.C. §1106(b).

A fiduciary who breaches his duty is "personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary." 29 U.S.C. §1109(a). Any plan participant (as well as a plan fiduciary and the Secretary of Labor) is authorized to bring an action to secure his plan's remedies under §1109(a). 29 U.S.C. §1132(a)(2).

Plaintiffs contend Defendants breached these duties and committed prohibited transactions in two general respects: causing the Plan to pay BB&T excessive administrative fees and providing imprudent and unreasonably expensive investment options.[4] Plaintiffs allege Defendants used a BB&T company to provide plan trustee and recordkeeping services without any competitive bidding process and allowed that company to take excessive compensation from the Plan at the expense of Plan participants. Doc. 88 ¶¶26, 46–47, 49–65; Doc. 99 ¶46. That compensation came from revenue sharing—diverting a portion of the asset-based fees collected from Plan

---

[4] A more detailed description of Plaintiffs' claims is provided in their Memorandum In Opposition to Motion to Dismiss at 4–27 (Doc. 56 at 11–34). All "Doc." page references are the ECF footer page number.

investment options to BB&T. Doc. 88 ¶56. Plaintiffs allege Defendants failed to monitor the amount of revenue sharing that was paid or have BB&T return to the Plan such amounts as exceeded a reasonable administrative fee. *Id.* ¶¶55, 57–58, 60. As Plan assets grew from $1.4 billion to over $2.9 billion, BB&T's asset-based fees also grew enormously, even though its services to the Plan did not change. *Id.* ¶62. Compared to a market rate based on a fixed fee per participant (not the amount of Plan assets) a Plan of this size could have obtained, the Plan paid millions of dollars in excessive recordkeeping fees. *Id.* ¶¶63, 65, 138.

Plaintiffs also allege that Defendants disloyally and imprudently provided Plan investment options, including several of BB&T's own proprietary mutual funds, that performed poorly and had fees far in excess of superior low-cost alternatives that were readily available to the Plan. *Id.* ¶¶35, 37–44, 70–72, 75–81, 145.[5] Plaintiffs allege Defendants provided BB&T funds not based on their merits as investments, or because doing so was in the interest of Plan participants, but because they provided significant profits to BB&T, and retained those funds despite their poor performance. *Id.* ¶¶35, 85, 144. Defendants provided both proprietary and non-proprietary mutual funds with expense ratios that were far in excess of other options available to the Plan, including separate accounts, collective trusts, lower-cost mutual funds, and lower-cost share classes with the identical investment manager and investment. *Id.* ¶144.

---

[5] Defendants had an ongoing duty to remove imprudent or unreasonably expensive Plan funds regardless of when these funds were first put in the Plan. *Tibble*, 135 S.Ct. at 1828.

Plaintiffs allege seven counts of fiduciary breach. Count I asserts breach of loyalty and prudence in causing the Plan to pay excessive recordkeeping and administrative fees. *Id.* ¶¶137–38. Count II asserts breach of loyalty and prudence in providing imprudent and unreasonably expensive investment options. *Id.* ¶¶144–46. Count III asserts breach of loyalty and prudence in providing the BB&T Corporation One-Year Bank Investment Account and the Federated Investors Treasury Obligations Fund, which both hold very short-term instruments and for many consecutive years have generated only minimal returns that did not come close to keeping pace with inflation. *Id.* ¶151. Maintaining these funds in the Plan caused the Plan tens of millions of dollars in losses compared to what would have been earned in a stable value fund that is specifically designed for large retirement plans such as the Plan. *Id.* Count IV asserts breach of loyalty and prudence in using a unitized structure for the BB&T Common Stock Fund, investing a portion of the fund's assets in a microscopically low yielding proprietary money market fund that allowed BB&T Corporation and its subsidiary Sterling Capital to collect additional revenues, and causing the Fund to hold excessive cash and pay excessive fees. *Id.* ¶157. Count V asserts that the Board of Directors of BB&T Corporation and the individual Directors separately breached their duties of loyalty and prudence by failing to properly monitor and replace the fiduciaries whom they had appointed and who committed the breached described in Counts I – IV. *Id.* ¶¶166–67. Count VI asserts Defendants engaged in prohibited transactions under 29 U.S.C. §1106(a) by causing the Plan to use and pay BB&T as recordkeeper and trustee, using BB&T and Sterling Capital mutual funds as

6

Plan investment options, and utilizing and allowing BB&T or its subsidiary to provide services to the Plan and receive compensation from the Plan. *Id.* ¶¶171–73. Count VII asserts that Defendants committed prohibited transactions under 29 U.S.C. §1106(b) by allowing BB&T or its subsidiary to provide services to the Plan and receive payments from the Plan. *Id.* ¶¶176–80.

## II.     The Proposed Class Definition

Plaintiffs move for certification of the following class:

> All current and former participants and beneficiaries of the BB&T
> Corporation 401(k) Savings from January 1, 2007 through the date of
> judgment, who were injured by the conduct alleged in the Second Amended
> Complaint, excluding the Defendants.

Although ERISA generally provides for a six-year limitation on fiduciary breach actions, in cases of fraud or concealment, the limitations period does not commence until the date of discovery of the breach or violation. 29 U.S.C. §1113;[6] *Browning v. Tiger's Eye Benefits Consulting, Inc.*, No. 06-1404, 313 Fed.Appx. 656, 663 (4th Cir. Feb. 26, 2009) (citing *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 188 (2d Cir. 2001), and *J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc.*, 76 F.3d 1245, 1255 (1st Cir. 1996), among others). The class period begins on January 1, 2007, because that is the

---

[6] "No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of—(1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation; except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation."

date of the previous Plan restatement, and Plaintiffs contend that Defendants unlawfully concealed their breaches of duty since that date. Doc. 88 ¶¶109–17. The BB&T Defendants' fraudulent concealment of their fiduciary breaches dates back to at least early 2006 and was implemented by the very top BB&T executives. For instance, BB&T's executives, not the Committee, personally reviewed and revised consultant reports that were critical of Defendants' management of the Plan, including the level of fees charged by Plan options. Doc. 133 at 9−10; Doc. 131-19 at 3; Doc. 131-20 at 56. The Committee's minutes reveal not only that the Committee was complicit with BB&T's executives' actions benefitting the company, not Plan participants, but that BB&T's Asset Management group was making recommendations on new fund additions to the Plan and addressing the consultant's concerns regarding the Plan's fees. Doc. 133-06 at 1−2. Notably, in June 2006, in response to the consultant's concerns, BB&T's top executives made clear that they needed "to stay better informed of changes [to the Plan's investments] as they may directly impact [BB&T's] budget." Doc. 131-21 at 1. This violates ERISA's requirement to run the Plan for the exclusive befit of Plan participants. 29 U.S.C. §1104(a)(1). BB&T's top executives' authority over the Plan was further confirmed in the Plan's December 2006 adopted Investment Policy Statement which was confirmed again in 2008. Doc. 131-03 at 2; 131-04 at 5. As described in detail in Plaintiffs' Motion to Compel, BB&T's executives, acting for the company's interests, continued their critical involvement in all aspects of the Plan during the entire relevant time period, yet concealed that from participants. Doc. 133 at 6−9. The Court denied

8

BB&T Defendants' motion to dismiss Plaintiffs' fraud and concealment allegations and BB&T Defendants' attempt to limit the scope of this action to six years. Doc. 58; cf. Doc. 56 at 37 (Mem. In Opp.at 30).

Plaintiffs seek to represent this class and to have Schlichter Bogard & Denton appointed as lead class counsel and Nichols Kaster appointed as additional counsel for class under Fed.R.Civ.P. 23(g).

## III. Argument.

Certification involves a two-step analysis. *Tatum*, 254 F.R.D. at 63 (citing *Partington v. Am. Int'l Specialty Lines Ins. Co.*, 443 F.3d 334, 340 (4th Cir. 2006)). First, the Court must find that the proposed class meets the four prerequisites of Rule 23(a). Second, the Court must determine that the action is maintainable under at least one of the three categories set forth in Rule 23(b). *Id.* (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997)). "The likelihood of the plaintiffs' success on the merits, however, is not relevant to the issue of whether certification is proper." *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 319 (4th Cir. 2006). The Court cannot "engage in free-ranging merits inquiries at the certification stage." *Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S.Ct. 1184, 1194–95 (2013).

### A. Plaintiffs meet the requirements of Rule 23(a).

The Court must engage in "a rigorous analysis" to determine that "the prerequisites of Rule 23(a) have been satisfied." *Brown v. Nucor Corp.*, 576 F.3d 149, 152 (4th Cir. 2009) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)). The Rule 23(a)

requirements are commonly known as numerosity, commonality, typicality, and adequacy of representation. *Id.* at 152–59. The latter three requirements "'tend to merge,' with commonality and typicality 'serving as guideposts for determining whether ... maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Id.* at 152 (quoting *Broussard v. Meineke Discount Muffler Shops*, 155 F.3d 331, 337 (4th Cir. 1998)). "Indeed, '[c]ertification is only concerned with the commonality (not the apparent merit) of the claims and the existence of a sufficiently numerous group of persons who may assert those claims.'" *Id.* (quoting *Lilly v. Harris-Teeter Supermarket*, 720 F.2d 326, 332–33 (4th Cir. 1983)).

The proposed class satisfies all of these requirements.

### 1. Numerosity.

The proposed class includes over 30,000 individuals. Doc. 99 ¶10. That class "is so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1) ; *Gunnells v. Healthplan Servs., Inc.,* 348 F.3d 417, 425 (4th Cir. 2003)(class of 1,400 employees easily satisfies numerosity).

### 2. Commonality.

There are "questions of law or fact common the class." Fed.R.Civ.P. 23(a)(2); *Brown*, 576 F.3d at 152. Commonality concerns "the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "[E]ven a single common question will do." *Id.*

10

at 359 (quotation and editing marks omitted). The commonality test "is not demanding, and is met when there is at least one issue whose resolution will affect all or a significant number of the putative class members." *Hutson v. CAH Acquisition Co. 10, LLC*, No. 15-742-WLO, 2016 U.S.Dist.LEXIS 107329, *6–7 (M.D.N.C. Aug. 15, 2016) (quoting *Bussian v. DaimlerChrylser Corp.*, No. 04-387-WLO, 2007 U.S.Dist.LEXIS 44184, 2007 WL 1752059, *5 (M.D.N.C. June 18, 2007)).

Because an ERISA fiduciary breach action is an action on behalf of a plan regarding duties owed at the plan level, "commonality is quite likely to be satisfied[.]" *Schering*, 589 F.3d at 599 n. 11. "In general, the question of defendants' liability for ERISA violations is common to all class members because a breach of a fiduciary duty affects all participants and beneficiaries." *Tatum,* 254 F.R.D. at 64 (quoting *Banyai v. Mazur*, 205 F.R.D. 160, 163 (S.D.N.Y. 2002)); *see also Krueger v. Ameriprise Fin., Inc.*, 304 F.R.D. 559, 572 (D.Minn. 2014).

Here, the Plan fiduciaries owed their duties to the Plan and made decisions at the Plan level that affected the Plan as a whole and, hence, all participants. *See* 29 U.S.C. §1104(a)(1). The same array of options, the same structure of fees, and the same fiduciary actions and omissions applied to <u>all</u> participants. Thus, there are numerous common questions on which all class members' claims depend, including: whether each defendant is a fiduciary; the extent and nature of the duties Defendants owed to the Plan; whether each defendant breached his, her or its fiduciary duty or engaged in a prohibited transaction in each respect alleged by Plaintiffs; whether the Plan suffered losses from

11

these breaches; how to calculate the Plan's losses; and what equitable relief should be imposed to remedy such breaches and prohibited transactions and to prevent future ERISA violations. The evidence required to answer these contentions are Plan-level facts and are therefore the same for all Plan participants. The answers to these questions do not depend on the circumstances of any particular participant. Therefore, the questions of law and fact in this action are common to each class member.

### 3. Typicality.

The "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). The typicality requirement "is satisfied when the claims asserted by the named plaintiffs 'arise out of the same course of conduct and are based on the same legal theories as the claims of the unnamed class members.'" *Hutson*, 2016 U.S. Dist. LEXIS 107329, *12 (quoting *Tatum*, 254 F.R.D. at 65).

Plaintiffs' claims are typical for many of the same reasons that there are overwhelmingly common issues of fact and law. *Brown*, 576 F.3d at 152. The claims of the named Plaintiffs and all class members arise from the same events and course of conduct, because Defendants' actions were directed to and affected the Plan as a whole. All participants paid a portion of the Plan's asset-based fees, which were assessed against each investment option in the Plan. The named Plaintiffs and all class member participants are asserting the same claims based on the same legal theory and remedial theory—enforcement through §1132(a)(2) and (a)(3) of Defendants' obligations under §1109(a) to make good to the Plan the losses resulting from Defendants' breach of duty

and prohibited transactions and to obtain appropriate equitable relief. Because a §1132(a)(2) claim is inherently a representative claim, any participant's claim is necessarily typical of the claims of the class, since any participant is asserting *the Plan's* claim. For these reasons, courts routinely find any participant's ERISA fiduciary breach claim to be typical of the claims of all participants in the plan. *See Tatum*, 254 F.R.D. at 64–66; *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 110 (N.D. Cal. 2008); *Krueger*, 304 F.R.D. at 573, and cases cited on p. 16−17, *infra*.

### 4. Adequacy

Plaintiffs "will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). "This requirement examines possible conflicts of interest between the named plaintiffs and the proposed class, as well as the competency and conflicts of class counsel." *Hutson*, 2016 U.S. Dist. LEXIS 107329, *14 (citing *Tatum*, 254 F.R.D. at 67); *see also Amchem*, 521 U.S. at 625; Fed.R.Civ.P. 23(g).

### a. Plaintiffs have no conflicts with other class members.

Plaintiffs' interests are aligned with the class members' interests because they all are acting on behalf of their Plan in seeking to enforce the fiduciary duties that Defendants owed to the entire Plan and to recover damages and equitable relief that are due to the Plan. See 29 U.S.C. §1109(a); *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 n.9 (1985). Because Plaintiffs are pursuing claims on behalf of the Plan and not individual claims, there is no conflict between Plaintiffs' individual interests and the interests of the class. To the contrary, the interests of all Plan participants are aligned because "all class

13

members 'share common objectives and the same factual and legal positions and have the same interest in establishing the liability of defendants.'" *Ward v. Dixie Nat'l Life Ins. Co.*, 595 F.3d 164, 180 (4th Cir. 2010)(editing marks omitted, quoting *Gunnells*, 348 F.3d at 434, 431; *see also Hutson*, 2016 U.S. Dist. LEXIS 107329, *14.[7] Through their declarations, Plaintiffs establish that they will fairly and adequately represent the interests of the class. Exs. 1–12.[8]

### b. Plaintiffs' counsel are qualified, experienced, and able to conduct this class action.

The Court must determine that class counsel will be adequate, "meaning that counsel is 'qualified, experienced, and generally able to conduct the proposed litigation.'" *Hutson*, 2016 U.S. Dist. LEXIS 107329, *14 (quoting *In re Protected Vehicles, Inc.*, 397 B.R. 339, 345 (Bankr. D.S.C. 2008)). "Adequacy of counsel is generally 'presumed in the absence of specific proof to the contrary.'" *Id.* (quoting *Melton ex rel. Dutton v. Carolina Power & Light Co.*, 283 F.R.D. 280, 287 (D.S.C. 2012)). The Court must appoint class counsel for a certified class, considering: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed.R.Civ.P. 23(g).

---

[7] Any claimed conflict "must be fundamental" and not "merely speculative or hypothetical." *Ward*, 595 F.3d at 180.

[8] In a complex case such as this, class representatives need not have extensive knowledge of the facts of the case in order to be adequate. *Gunnells*, 348 F.3d at 430.

Plaintiffs' lead counsel—Schlichter, Bogard & Denton LLP—has the most experience in prosecuting ERISA fiduciary breach class actions such as this and will fairly and adequately represent the interests of the class. Declaration of Jerome J. Schlichter, ¶¶7, 15–20. The firm conducted an extensive investigation of potential claims in this action, and is committed to devoting all necessary resources to representing the class and vigorously prosecuting this action, as it has done in numerous prior ERISA fiduciary breach actions. *Id.* ¶¶8, 10–14, 21. The firm's experience is shown by its appointment as class counsel in 18 other, large ERISA fiduciary breach class actions, in which it has obtained multi-million dollar settlements and judgments, and, in the only 401(k) excessive fee case the U.S. Supreme Court has handled, obtained a unanimous opinion in favor of ERISA plan participants (*Tibble*). Schlichter Decl. ¶¶6, 12. The firm is recognized as "a pioneer and the leader in the field" of 401(k) plan excessive fee litigation (*Abbott v. Lockheed Martin Corp.*, No. 06-701, 2015 U.S.Dist.LEXIS 93206, *4–5 (S.D.Ill. July 17, 2015)) and "clearly experts in ERISA litigation" (*Tussey v. ABB, Inc.*, No. 06-4305, 2012 U.S.Dist.LEXIS 157428, *10 (W.D.Mo. Nov. 2, 2012)). For these reasons Schlichter, Bogard & Denton LLP should be appointed lead class counsel under Rule 23(g).

Nichols Kaster, PLLP also has "extensive class action experience." *Jackson v. Wells Fargo Bank, N.A.*, 136 F.Supp.3d 687, 714 (W.D.Pa. 2015); Declaration of Kai Richter ¶¶3–5, 8–9, 11, 13–14. The firm has been appointed class counsel in hundreds of class and collective action cases, and has recovered hundreds of millions of dollars for its

clients in those cases. Richter Dec. ¶¶9, 14. Nichols Kaster also has expertise specific to

ERISA actions, and is currently litigating several cases involving breach of fiduciary duty

claims under ERISA. *Id.* ¶¶5–6. In many of these cases, the firm has achieved favorable

rulings, including two recent orders granting class certification.[9] *Id.* ¶6. Based on its

experience, Nichols Kaster is viewed as a leader in this area, and the firm's attorneys

have been interviewed by several media sources in connection with their ERISA work.

*Id.* ¶7. In addition, lead counsel Kai Richter was recently asked to speak at a nationwide

forum on ERISA litigation. *Id.* The firm is well-qualified to represent the class.

### B. Plaintiffs meet the requirements of Rule 23(b)(1).

  Having satisfied all of the requirements of Rule 23(a), Plaintiffs need only satisfy one

subsection of Rule 23(b). Most ERISA fiduciary breach actions are certified under Rule

23(b)(1) because they are "paradigmatic" Rule 23(b)(1) class actions. *Longo*, 2016 U.S.

Dist.LEXIS 127910, \*23 (quoting *Schering*, 589 F.3d at 604); *Tatum*, 254 F.R.D. at 67;

*Krueger*, 304 F.R.D. at 575–78; *George v. Kraft Foods Global Inc*., No. 08-3799, 2012

U.S.Dist. LEXIS 26536, \*3–7 (N.D.Ill. Feb. 29, 2012); *In re Northrop Grumman Corp.*

*ERISA Litig*., No. 06-06213, 2011 U.S.Dist.LEXIS 94451, \*62 (C.D.Cal. Mar. 29,

2011)(quoting *Kanawi*, 254 F.R.D. at 111); *Tussey v. ABB Inc.*, 2007 WL 4289694, \*8

(W.D.Mo. Dec. 3, 2007). Indeed, Federal Courts across the country, including this

District, have consistently and overwhelmingly granted class certification in excessive

---

[9] *Brotherston v. Putnam Invs., LLC*, No. 15- 13825, Doc. 88 (D.Mass. Dec. 13, 2016);
*Andrus v. N.Y. Life Ins. Co.*, No. 16-05698, Doc. 69 (S.D.N.Y. Feb. 16, 2017)(certified
for settlement purposes).

fee ERISA cases, most of which have been handled by Schlichter, Bogard & Denton, LLP. *Kruger v. Novant Health*, No. 14-208, Doc. 53 (M.D.N.C. May 17, 2016); *Beesley v. Int'l Paper Co.*, No. 06-703, Doc. 240 (S.D.Ill. Sept. 30, 2008), and Doc. 543 (S.D. Ill. Oct. 10, 2013); *Nolte v. Cigna Corp.*, No. 07-2046, 2013 U.S.Dist.LEXIS 101165, 6–7 (C.D. Ill. July 3, 2013); *Martin v. Caterpillar Inc.*, No. 07-1009, Doc. 173 (C.D. Ill. April 21, 2010); *George v. Kraft Foods Global Inc.*, 251 F.R.D. 338, 351–52 (N.D. Ill. 2008)(*George I*); *George v. Kraft Foods Global Inc.*, 2012 U.S.Dist.LEXIS 26536, *6 (*George II*); *Taylor v. United Tech. Corp.*, No. 06-1494, 2008 U.S.Dist.LEXIS 43655, 15 (D. Conn. June 3, 2008); *Kanawi v. Bechtel Corp.*, 254 F.R.D. at 111–12; *Loomis v. Exelon Corp.*, No. 06-4900, 2007 U.S.Dist.LEXIS 46893, 11 (N.D. Ill. June 26, 2007); *Will v. General Dynamics Corp.*, No. 06-698, 2010 U.S.Dist. LEXIS 95630, *5–6 (S.D. Ill. Nov. 22, 2010); *Tibble v. Edison Int'l,* No. 07-5359, 2009 U.S. Dist. LEXIS 120939, *20, *29 (C.D. Cal. June 30, 2009); *Spano v. Boeing Co.*, 294 F.R.D. 114 (S.D. Ill. 2013); *Krueger v. Ameriprise Fin., Inc.*, 304. F.R.D. 559 (D. Minn. 2014); *Abbott v. Lockheed Martin Corp.*, 286 F.R.D. 388, 405 (S.D. Ill. 2012), and *Abbott*, No. 06-701, Doc. 403 at 3–6, 12 (S.D. Ill. Aug. 1, 2014); and, *Gordan v. Massachusetts Mutual Life Insurance Co.,* No. 13-30184, Doc. 112 (D. Mass. June 22, 2016).

Rule 23(b)(1) provides:

> A class action may be maintained if Rule 23(a) is satisfied and if ... (1) prosecuting separate actions by or against individual class members would create a risk of:
>> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests[.]

Rule 23(b)(1)(A) "'takes in cases where the party is obligated by law to treat the members of the class alike[.]'" *Amchem*, 521 U.S. at 614 (citation omitted). "One person may have rights against, or be under duties toward, numerous persons constituting a class, and be so positioned that conflicting or varying adjudications in lawsuits with individual members of the class might establish incompatible standards to govern his conduct." Fed.R.Civ.P. 23, Adv. Comm. Note, 1966 amend., sub. (b)(1)(A). The assets of an ERISA plan, including this Plan, are held in a single trust for the benefit of all participants. 29 U.S.C. §1103(a). Defendants' fiduciary duties at issue here are owed to the Plan, meaning to all participants as a class. 29 U.S.C. §1104(a)(1). Defendants owed their fiduciary duties to *all* participants in the Plan, and hence all class members. In discharging their duties to the Plan, Defendants were obligated to treat all participants (hence all class members) alike.

Allowing over 37,000 individual class members to pursue this action on behalf of the Plan could result in varying adjudications over whether Defendants breached their duties and committed the prohibited transactions as alleged, which Defendants are liable for those breaches and prohibited transactions, and how to measure the Plan's damages and other relief. For example, on the administrative and recordkeeping fees claims, the fact-finder will have to determine Plan losses by deciding—with the assistance of expert testimony and other evidence—how much the recordkeeper was paid, whether the

18

services were necessary, and whether the fees were reasonable for the services provided. Separate individual adjudications as to those elements will establish incompatible standards for Defendants in terms of how much in losses or profits they must restore to the Plan under §1109(a). As many courts have recognized, such claims are properly certified under Rule 23(b)(1)(A). *Krueger*, 304 F.R.D. at 576–77 (citing cases); *Tibble v. Edison Int'l*, No., 2009 U.S.Dist.LEXIS 120939, *20–21, *27.

For similar reasons, under Rule 23(b)(1)(B), one participant's action over these claims "as a practical matter, would be dispositive of the interests" of the other participants' actions over the same claims because they concern the same actions, damages, and fiduciary duties owed to the Plan. Fed.R.Civ.P. 23(b)(1)(B). An action "which charges a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of security holders or beneficiaries, and which requires an accounting or like measures to restore the subject of the trust" are typical Rule 23(b)(1)(B) actions. Fed.R.Civ.P. 23, Adv. Comm. Note, 1966 amend., sub. (b)(1)(B); *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 834 (1999). Because of the trust-like nature of a defined contribution plan, with fiduciary duties owed to the plan and not to individual participants, numerous courts have found similar claims to be paradigmatic Rule 23(b)(1)(B) class actions. *Tatum*, 254 F.R.D. at 67; *Schering*, 589 F.3d at 604; *Piazza v. EBSCO Indus. Inc.*, 273 F.3d 1341, 1352–53 (11th Cir. 2001); *Krueger*, 304 F.R.D. at 577–78. Although there would be no res judicata effect against absent participants, (*Smith v. Bayer Corp.*, 564 U.S. 299, 313–15 (2011)), as a "practical matter" a prior adjudication

will at least influence a subsequent court's adjudication of the same claims. Plaintiffs' claims qualify as class actions under both Rule 23(b)(1)(A) and (b)(1)(B).

## IV.    Conclusion

For the foregoing reasons, the Court should certify all of Plaintiffs' claims as a class action under Federal Rule of Civil Procedure 23(b)(1), appoint as class representatives Brewster Smith, Erik Gavidia, Stephanie Gavidia, Doris Kirouac, Paula Bridges, Nancy Johnson, Kerri Greaner, Burke Bowers, Robert Sims, Stacy Holstein, Jeffrey Stauffer and Patricia Wells. Under Rule 23(g), the Court should appoint as lead class counsel Schlichter, Bogard & Denton LLP and as Nichols Kaster PLLP as additional counsel for the class.

April 10, 2017                              Respectfully submitted,


/s/ Kai H. Richter                          /s/ Troy A. Doles
NICHOLS KASTER, PLLP                        SCHLICHTER BOGARD & DENTON LLP
Kai H. Richter, MN No. 0296545*             Jerome J. Schlichter, MO No. 32225*
Carl F. Engstrom, MN No. 0396298*           Michael A. Wolff, MO No. 38207*
Adam W. Hansen, MN No. 0391704*             Troy A. Doles, MO No. 47958*
4600 IDS Center                             Heather Lea, MO No. 49872*
80 S 8th Street                             Sean E. Soyars, MO No. 57317*
Minneapolis, MN 55402                       Kurt C. Struckhoff, MO No. 61873*
(612) 256-3200, (612) 338-4878 (fax)        100 South Fourth Street
krichter@nka.com                            St. Louis, Missouri 63102
cengstrom@nka.com                           (314) 621-6115, (314) 621-5934 (fax)
ahansen@nka.com                             jschlichter@uselaws.com
                                            mwolff@uselaws.com
*Proposed Additional Class Counsel and*     tdoles@uselaws.com
*Attorneys for Bowers Plaintiffs*           hlea@uselaws.com
                                            ssoyars@uselaws.com
*appearing by *special appearance*          kstruckhoff@uselaws.com


                                            *Proposed Lead Class Counsel and Attorneys*
                                            *for Smith Plaintiffs*

                                            *appearing by *special appearance*

                                            /s/ David B. Puryear, Jr.
                                            David B. Puryear, Jr.
                                            North Carolina State Bar No. 11063
                                            PURYEAR & LINGLE, PLLC
                                            5501-E Adams Farm Lane
                                            Greensboro, NC 27407
                                            (336) 218-0227
                                            puryear@puryearandlingle.com


                                            *Local Counsel for all Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on April 10, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically send notification of filing to all counsel of record.

/s/ Troy A. Doles

22