**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| ROBERT SIMS, et al., | |
|     Plaintiffs, | |
| v. | No. 1:15-cv-732-CCE-JEP |
| BB&T CORPORATION, et al., | |
|     Defendants. | |
| | |
| BREWSTER SMITH, JR., et al., | |
|     Plaintiffs, | |
| v. | No. 1:15-cv-841-LCB-JEP |
| BB&T CORPORATION, et al., | |
|     Defendants. | |

**REPLY MEMORANDUM IN SUPPORT OF**
**THE BB&T DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

# TABLES OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii

PROCEDURAL OBECTION ............................................................................... 1

STANDARD OF REVIEW ................................................................................. 1

ARGUMENT ..................................................................................................... 3

    I.      PLAINTIFFS' CLAIMS ARE UNTIMELY. ............................................. 3

          A.  Plaintiffs Have Not Established a Basis for Extending the Six Years
              Limitations Period ...................................................................... 3

          B.  Plaintiffs' Investment Claims Should Be Limited to the Period After
              September 4, 2012. ...................................................................... 5

    II.     DEFEDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON
          PLAINTIFFS' STOCK FUND CLAIM (COUNT IV). ............................... 6

    III.    SUMMARY JUDGMENT SHOULD BE ENTERED ON PLAINTIFFS'
          RECORDKEEPING CLAIMS (COUNTS I, VI & VII) ............................. 8

    IV.    SUMMARY JUDGMENT SHOULD BE ENTERED ON PLAINTIFFS'
          CLAIMS RELATED TO THE MUTUAL FUNDS' FEES. (COUNT II). 10

    V.     BB&T IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS'
          OTHER CLAIMS RELATED TO INVESTMENT OPTIONS ................. 10

          A.  The use of affiliated investments is not a breach of fiduciary ............... 10

          B.  The Use of Affiliated Mutual Funds is Not a Prohibited Transaction
              (Counts VI and VII). ................................................................... 11

          C.  Summary Judgment Should Be Granted on Plaintiffs' "Alternative
              Investment" Claims .................................................................. 13

               i.    Separate Accounts and CITs ................................................... 13

               ii.   Passive versus Active Funds .................................................. 14

               iii.  BIC ....................................................................................... 15

    VI.    BB&T DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT
          ON PLAINTIFFS' UNDERPERFORMANCE CLAIM (COUNT II). ...... 16

i

CERTIFICATE OF COMPLIANCE WITH WORD COUNT ......................................... 19

CERTIFICATE OF SERVICE ......................................................................................... 19

ii

# TABLE OF AUTHORITIES

Cases:

*Barchock v. CVS Health Corp.*, ___ F.3d. ___,
  2018 WL 1444333 (1st Cir. March 23, 2018) ............................................................ 6, 7
*Brotherston v. Putnam Investments, Inc.*,
  No. 15-13825, 2017 WL 2634361 (D. Mass. June 19, 2017)...................... 11, 14, 15, 16
*Brown v. Owens Corning Inv. Review Comm.*,
  622 F.3d 564 (6th Cir. 2010) ................................................................................................ 6
*Browning v. Tiger's Eye Benefits Consulting*,
  313 F. App'x 656 (4th Cir. 2009) ...................................................................................... 3
*David v. Alphin*,
  817 F. Supp. 2d 764 (W.D.N.C. Sept. 22, 2011),
  *aff'd on other grounds*, 704 F.3d 327 (4th Cir. 2013) .................................................... 3
*DiFelice v. U.S. Airways, Inc.*,
  497 F.3d 410 (4th Cir. 2007) ......................................................................................... 8, 17
*Dupree v. Prudential Ins. Co. of Am.*,
  No. 99-8337, 2007 WL 2263892 (S.D. Fla. Aug. 10, 2007) ................................... 11, 16
*Evans v. Akers*,
  534 F.3d 65 (1st Cir. 2008)................................................................................................ 18
*George v. Kraft Foods Glob., Inc.*,
  684 F. Supp. 2d 992 (N.D. Ill. Jan. 27, 2010),
  *aff'd in part, rev'd in part*, 641 F.3d 786 (7th Cir. 2011)................................................. 5
*Haddock v. Nationwide*,
  419 F. Supp. 2d 156 (D. Conn. 2006)............................................................................. 13
*Hecker v. Deere & Co.*,
  556 F.3d 575 (7th Cir. 2009) ........................................................................................ 5, 14
*Henry v. Champlain Enterprises, Inc.*,
  445 F.3d 610 (2d Cir. 2006) ............................................................................................. 10
*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986)............................................................................................................. 1
*Merrimon v. Unum Life Insurance Co. of America*,
  758 F.3d 46, 56 (1st Cir. 2014) ........................................................................................ 13
*Nas Sur. Grp. v. Precision Wood Prod., Inc.*,
  271 F. Supp. 2d 776 (M.D.N.C. July 16, 2003)............................................................... 1
*Patterson v. Capital Group*,
  No. CV 17-4399, 2018 WL 748104 (C.D. Cal. Jan. 23, 2018) .................................. 6, 7
*Spano v. Boeing Co.*,
  125 F.Supp.3d 848 (S.D. Ill. Dec. 30, 2014) ................................................................. 14
*Ragas v. Tenn. Gas Pipeline Co.*,
  136 F.3d 455 (5th Cir. 1998) ............................................................................................. 1

*Ruppert v. Principal Life Ins. Co.*,
   No. 4:07-CV-00344, 2009 WL 5667708 (S.D. Iowa Nov. 5, 2009),
   *order vacated on reconsideration as to non-mutual fund assets*, 796.F.Supp.2d 959
   (S.D. Iowa March 31, 2010) .................................................................................. 13
*Skotak v. Tenneco Resins, Inc.*,
   953 F.2d 909 (5th Cir. 1992) ...................................................................................... 2
*Tatum v. RJR Pension Inv. Comm.*,
   761 F.3d 346 (4th Cir. 2014) .................................................................... 11, 12, 13, 18

Statutes:

29 U.S.C. §1107(a)(2) ..................................................................................................... 9
29 U.S.C. §1108(b)(8) ................................................................................................... 15

## PROCEDURAL OBJECTION

Plaintiffs' opposition ("Opposition" or "Opp.") violates the Court's January 25, 2018 Order establishing a 9,000 word limit. (Dkt. 276). Although the Opposition is 8,749 words, the accompanying "Declaration of Troy A. Doles" ("Doles Declaration") includes more than 3,000 words of argument regarding the declarations the BB&T Defendants filed. The Court should (1) require Plaintiffs to file a new opposition, inclusive of any arguments regarding the declarations, complying with the 9,000 word limit, or (2) strike paragraphs 78-105 of the Doles Declaration.

## STANDARD OF REVIEW

Plaintiffs have the burden of submitting admissible evidence "showing more than some 'metaphysical doubt' that genuine and material factual issues exist." *Nas Sur. Grp. v. Precision Wood Prod., Inc.*, 271 F. Supp. 2d 776, 779 (M.D.N.C. July 16, 2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Plaintiffs cannot meet their burden by generalized references to documents; rather they are "required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports [their] claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n. 7 (5th Cir. 1992).

Plaintiffs have not met their burden. Rather than identify and articulate why specific evidence supports their claims, Plaintiffs repeatedly point to large swaths of their ten-page Statement of Additional Facts ("SAF"), which sub-references equally imprecise

1

citations. For example, on page 11, Plaintiffs write: "Disputed that Cardinal monitored the Plan's investment options and their compliance with the IPS. SAF at 2-8; Schmidt Decl., ¶3 and Buetow Decl., ¶4." The "supporting" evidence is (1) seven pages of their brief with no reference to the specific evidence they contend creates a dispute; and (2) citations to single paragraphs in their experts' declarations that authenticate their expert reports, but do not include a sub-reference to a particular subparagraph or opinion.[1]

As a second example, on page 11, Plaintiffs write: "Disputed that BB&T's internal credit for RIS's compensation received from the Plan is for 'cost accounting' purposes only and 'used to compare RIS to other business units.'" Although Plaintiffs cite "SAF 10-11," nothing on pages 10 or 11, including the portions of Mr. Schmidt's report cited on those pages (¶¶184-188, 194), reference internal credits to RIS. Accordingly, Plaintiffs have not created a material dispute of fact regarding whether BB&T's internal credits were used only for cost accounting purposes.

Neither the Court nor the BB&T Defendants are required to wade through voluminous materials and try to pinpoint the evidence that Plaintiffs maintain creates a disputed issue of fact. Since so much of their Opposition relies on vague and conclusory references, Plaintiffs have not satisfied their summary judgment burden.

---

[1]  The BB&T Defendants are concurrently filing *Daubert* motions to exclude Mr. Schmidt and Dr. Buetow's opinions.

2

# ARGUMENT

## I.   PLAINTIFFS' CLAIMS ARE UNTIMELY.

### A.   Plaintiffs Have Not Established a Basis for Extending the Six Years Limitations Period.

Plaintiffs ask the Court to apply the wrong legal standard in determining whether to extend ERISA's statute of limitations.  Contrary to Plaintiffs' argument (Opp. at 15), a fiduciary's unintentional failure to disclose information—even legally-required disclosures—does not amount to fraud or concealment that could extend the limitations period.  An extension requires evidence of a purposeful intent to deceive—*i.e.*, that the defendant "engaged in a course of conduct *designed* to conceal evidence of their alleged wrongdoing."  *Browning v. Tiger's Eye Benefits Consulting*, 313 F. App'x 656, 663 (4th Cir. 2009) (emphasis added) (unpublished); *David v. Alphin*, 817 F. Supp. 2d 764, 779-80 (W.D.N.C. Sept. 22, 2011) ("The court finds the phrase 'course of conduct designed' to be synonymous with a requirement of 'intent.'"), *aff'd on other grounds*, 704 F.3d 327 (4th Cir. 2013).

Plaintiffs do not offer *any* evidence of an intent to deceive.  While Plaintiffs claim they have "previously submitted evidence of a pattern of concealment" (Opp. at 15), the evidence they cite shows no such concealment.  The documents cited include two briefs filed by Plaintiffs' counsel, certain Compensation Committee minutes, Investment Policy Statements, independent consultant reviews of the Plan, and a 2006 internal memorandum—none of which includes any reference to an intention or decision to withhold information.

3

Plaintiffs' "additional evidence" (Opp. at 15-16) includes (1) a page of their brief that discusses two specific investments but not any intentional act designed to deceive participants; (2) a 2006 memorandum stating that summary plan descriptions ("SPD") would include information on investment fees; and (3) a 2008 SPD that includes information on investment fees. None of these materials demonstrates an intent to hide anything from participants; to the contrary, they show BB&T's provision of *more* information.

Plaintiffs' argument that BB&T "made purposeful omissions on Plan participant annual statements" fails as a matter of law because they cannot establish that there was any duty from 2007 through 2009 to provide participants with more information than what BB&T provided. Further, their argument lacks factual support because the 2008 SPD clearly set forth the expense ratios for all Plan investments. *See* Doles Decl. ¶ 33, Exhibit FF at BBT149247[2].

Although Plaintiffs claim the internal cost accounting credits between Sterling and RIS should have been disclosed, courts have declined to recognize a duty to disclose such credits. *Hecker v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009)("The total fee, not the internal, post-collection distribution of the fee, is the critical figure … [t]he later distribution of the fees … is not information the participants needed to know")(internal citations omitted); *George v. Kraft Foods Glob., Inc.,* 684 F. Supp. 2d 992, 1016 (N.D.

---

[2]     Where a citation is to Plaintiffs' exhibit, as it is here, the citation will make that clear by referencing the Doles Declaration. Citations to "Exhibit __" or "__ Decl." refer to materials submitted by the BB&T Defendants.

Ill. Jan. 27, 2010), *aff'd in part, rev'd in part,* 641 F.3d 786 (7th Cir. 2011)(no obligation to disclose an internal breakdown of fees).

Further, Plaintiffs' citation to a 2007 memo discussing revenue that BB&T Asset Management (*i.e.*, "Trust") generated as manager of the affiliated funds is irrelevant. Opp. at 16. That memo does not address disclosures to participants. It further shows BB&T was not blind to the need to monitor expenses, which led to BB&T electing to absorb the entire cost of recordkeeping and to the Compensation Committee, acting on the advice on its investment consultant, modifying the Plan's investment line-up.

In sum, Plaintiffs have not established a genuine dispute of material fact regarding (1) whether BB&T Defendants failed to comply with any legal obligation to disclose information, or (2) whether there was any intent to withhold information from participants. Accordingly, the Court should conclude that claims based on acts or omissions between January 1, 2007 and September 3, 2009 are time-barred.

## B. Plaintiffs' Investment Claims Should Be Limited to the Period After September 4, 2012.

Plaintiffs argue that participants must know about BB&T's internal "process" or the "revenue sharing" arrangement in order to have "actual knowledge" sufficient to limit their claims to the three years preceding the commencement of the action. However, the BB&T Defendants do not seek to limit Plaintiffs' recordkeeping fee claims related to the internal cost accounting credits (the so-called revenue sharing) between Sterling and RIS.

Plaintiffs cite nothing to contradict Defendants' evidence showing participants were informed of the essential facts underlying their excessive fee, underperformance,

5

and affiliated investments claims: (1) the expense ratios of the investments, (2) the performance of the investments, and (3) the affiliated nature of the BB&T/Sterling funds. Although Plaintiffs argue that BB&T Defendants did not prove participants read the information, BB&T had no obligation to do so—participants cannot turn a blind eye to information they are provided. *See Brown v. Owens Corning Inv. Review Comm.*, 622 F.3d 564, 571 (6th Cir. 2010) (participants "failure to read [] documents will not shield them"); *Patterson v. Capital Group*, No. CV 17-4399, 2018 WL 748104, *3 (C.D. Cal. Jan. 23, 2018) ("Plaintiff[s] knew Defendants had caused the Plan to engage in self-interested transactions when the Plan included Capital Group-affiliated funds").

## II. DEFEDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' STOCK FUND CLAIM (COUNT IV).

Plaintiffs propose three different "stock fund" theories: (1) the "unitized structure" theory; (2) the "inexplicable performance comparison" theory; and (3) the "over-allocation" theory. Opp at 21-23. The latter two are barred because they were not alleged in the Complaint, and all three are devoid of merit.

There is no support for Plaintiffs' claim that BB&T Defendants violated ERISA by "maintaining the Stock Fund in a unitized structure." Opp. at 21. Plaintiffs' argument that Dr. Buetow addressed the matter in his report is incorrect—the paragraph they cite offers no opinion on this topic. Moreover, their expert agreed that a unitized structure is prudent. *See* Exhibit AA at pp. 117-18. The First Circuit recently rejected a similar argument that an investment that held more cash than other similar funds did not state a claim under ERISA. *Barchock v. CVS Health Corp.*, ___ F.3d. ___, 2018 WL 1444333

6

at *8-10 (1st Cir. March 23, 2018) (dismissing claim when Plaintiffs failed to offer a theory for determining, based on financial logic, how much cash is too much). Plaintiffs otherwise failed to (a) rebut BB&T Defendants' evidence that unitized stock funds are widely used; or (b) cite any legal authority establishing a duty to "consider alternatives" to a unitized structure. Accordingly, Plaintiffs cannot establish the duty or breach elements of their "unitized structure" claim.

Plaintiffs introduce the "inexplicable performance comparison" theory via Dr. Buetow's report submitted nearly six months after the deadline to amend pleadings. Dr. Buetow opined that the performance of the Stock Fund was "concerning" because participants' statements allegedly reflected the return of BB&T stock, not the Stock Fund. *See* Exhibit. V, ¶ 161. Even if the theory was timely asserted, Plaintiffs offer no explanation of how the Plan or participants suffered a loss.

Plaintiffs' "over-allocation" theory also has no relation to their original "unitized structure theory." Even if the Court were to find that the "over-allocation" theory is timely asserted, it fails as a matter of law. Plaintiffs' argument—that plan fiduciaries should "determine whether participants would benefit from restrictions on the Stock Fund's **amount** in relation to the Plan" (Opp. at 24)—was rejected by the Fourth Circuit in *DiFelice v. U.S. Airways, Inc.*, 497 F.3d 410, 424-25 (4th Cir. 2007) (emphasis added):

> As more employers shift toward participant-driven, defined-contribution plans, and participant-driven 404(c) plans in particular, Congress may reconsider the necessity of more safeguards for participants. ***For example, ERISA already limits the amount of employer stock that can be held in any defined-benefit pension plan to 10% of total plan assets. 29 U.S.C. § 1107(a)(2) (2000). In light of the losses that have accrued to the Employees here, and others similarly situated, Congress may well decide***

7

*that a similar limitation is appropriate for participant-driven, non-ESOP, defined-contribution plans. However, this policy decision is one for Congress and not for the courts.*

Plaintiffs' over-allocation theory is premised on the exact issue that the Fourth Circuit concluded is one for Congress to decide, not the courts. Congress has not chosen to limit the amount of company stock participants can hold, and the Court should not create such a limitation.

## III. SUMMARY JUDGMENT SHOULD BE ENTERED ON PLAINTIFFS' RECORDKEEPING CLAIMS (COUNTS I, VI & VII).

Plaintiffs concede participants were not charged recordkeeping fees, acknowledging that "BB&T may have eliminated the 'direct fees for recordkeeping.'" Opp. at 24. Instead, Plaintiffs argue that internal credits between business units for cost accounting purposes allowed BB&T to somehow "profit[] off the excessive 'income' RIS receives 'from the proprietary mutual funds' through 'revenue sharing.'" *Id.*

Plaintiffs' argument is untenable because the accounting credits do not cause participants to pay additional amounts. The Plan participants that were invested in Sterling mutual funds paid the same investment expenses that Sterling charged all other investors. In charging those expenses, Sterling received revenue in connection with the Plan's investments. The cost accounting credits between Sterling and RIS, however, did not cause participants to pay any additional fees.

In arguing that, at times, the cost accounting credit was referred to as "revenue sharing," Plaintiffs elevate nomenclature over economic reality. Plaintiffs are unable to

8

dispute that at no time did Sterling pay, or RIS receive, cash or other monetary compensation based on the cost accounting credits. *See* McCulloch Decl. ¶ 4.

Although RIS did not receive monetary compensation from Sterling, Plaintiffs argue that RIS should have rebated to participants the value of the accounting credits. This argument lacks factual support and is without merit. Their expert, Martin Schmidt, testified that he was not opining about the "reasonableness" of any revenue sharing: "I'm not calculating it, so it's not for me to determine whether [the "revenue sharing" amounts between Sterling and RIS are] reasonable or not." Exhibit W at 399-400; 406:1-6 ("It's not for me to say what's an appropriate amount [of revenue sharing].").

Plaintiffs also fail to create a disputed issue of material fact by highlighting that other RIS clients, at times, received rebates that were used to offset the recordkeeping fees paid to RIS. Opp. at 24. Because BB&T Corporation absorbed the full cost of recordkeeping starting in 2008, providing a rebate of internal accounting credits to participants who received those services for free is illogical and would result in an impermissible windfall. *Henry v. Champlain Enterprises, Inc.*, 445 F.3d 610, 624 (2d Cir. 2006) ("The aim of ERISA is 'to make the plaintiffs whole, but not to give them a windfall.'") (citations omitted).

Finally, because there is no evidence of actual monetary compensation being paid to RIS, there is no basis for Plaintiffs' claim that the recordkeeping fees amounted to payment of unreasonable compensation constituting a prohibited transaction.

## IV. SUMMARY JUDGMENT SHOULD BE ENTERED ON PLAINTIFFS' CLAIMS RELATED TO THE MUTUAL FUNDS' FEES (COUNT II).

The fees for the Plan's investment options (*i.e.*, the mutual fund expense ratios), by themselves, cannot form the basis of any claim. The fees were well within the range that courts have found reasonable. *See* Defendants Summary Judgment Brief ("Brief") at 24-26. And while Plaintiffs dispute the existence of a court-approved range, they fail to identify *any evidence* that the expense ratios were excessive in relation to the market. To the contrary, the investment consultant reports confirm the reasonableness of the investment fees. *Id.* at 25-26.

Further, there is no dispute that the Plan offered the lowest-cost share class. *Id.* at 23-24. Plaintiffs' expert Dr. Buetow did not dispute that point. Exhibit T at 228 – 229. (Q: You're not claiming in your opinion that BB&T plan fiduciaries failed to include the lowest cost share class of each mutual fund, right? A: No."). Plaintiffs' citation to the report of Defendants' expert, Dr. Jennifer Conrad, is misguided. Opp. at 31. As Dr. Conrad explained, on the rare occasion when the Plan did not have the share class with the lowest expense ratio, the participants received a fee credit that lowered the cost below any other available share class. *See* Conrad Decl., Report ¶¶ 75-79. Accordingly, the Court should grant summary judgment on Plaintiffs' excessive fee claim in Count II.

## V. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' OTHER CLAIMS RELATED TO INVESTMENT OPTIONS

### A. The use of affiliated investments is not a breach of fiduciary duty.

Plaintiffs incorrectly argue that the BB&T Defendants "blur[] the lines between Plaintiffs' prudence and loyalty claims with their prohibited transaction claims" in

10

establishing that ERISA allows the use of affiliated investment products in 401(k) plans.

Opp. at 26. The courts, however, have concluded that use of affiliated products does not

create any inference that plan fiduciaries acted imprudently or disloyally. *See Dupree v.*

*Prudential Ins. Co. of Am.*, No. 99-8337, 2007 WL 2263892, at *45 (S.D. Fla. Aug. 10,

2007) ("Nor can a breach of loyalty be presumed from the mere fact that Prudential

needed § 408(b) exemptions in order to avoid engaging in prohibited transactions with

the Plan."); *Brotherston v. Putnam Investments, Inc.*, No. 15-13825, 2017 WL 2634361 at

*3 (D. Mass. June 19, 2017) (to maintain a breach of loyalty claim it is insufficient for

plaintiff "merely to point to a defendant's self-dealing, such as investment of plan assets

in [plan sponsor's] own mutual funds"). The case cited by Plaintiffs, *Tatum v. RJR*

*Pension Inv. Comm.*, 761 F.3d 346, 357 (4th Cir. 2014), does not address whether a

fiduciary violates ERISA by using affiliated mutual funds.

Moreover, Plaintiffs do not dispute that, since 2006, not one affiliated investment

was added to the Plan, and ten affiliated investments were removed. Because there is no

inference that the use of affiliated products violates ERISA and the undisputed evidence

showing the Compensation Committee did not improperly include affiliated products,

summary judgment should be entered as to Plaintiffs' breach of fiduciary duty claims

related to use of affiliated investment products.

## B. The Use of Affiliated Mutual Funds is Not a Prohibited Transaction (Counts VI and VII).

Plaintiffs argue that only one of the four elements of PTE 77-3 is not satisfied

because, in their view, BB&T had a "practice of providing other investors [in Sterling

funds] better deals than the Plan."  Opp. at 27.  Plaintiffs' argument focuses on rebates that RIS made to other client plans.  *See id.*

In focusing on the rebates, Plaintiffs misinterpret the requirements of PTE 77-3. The exemption focuses on the dealings between the Plan and the investment company— Sterling.  Whether RIS, as the recordkeeper, rebated certain amounts to customer plans is irrelevant since the exemption concerns *Sterling's* dealings with the Plan and whether they are "on a basis no less favorable" than those with other Sterling shareholders.  The rebating Plaintiffs focus on is a "dealing" between the client plans and RIS—not the client plans and Sterling.  The rebating by RIS is of no import to PTE 77-3.

Plaintiffs' argument that Plan participants paid more than Bauer Foundation plan participants for the Sterling Capital Special Opportunities Fund is wrong.  The participants in both plans paid the same investment fees to Sterling for that fund.  *See* McAlister Decl. at ¶¶ 4-6.

Plaintiffs' argument that the Sterling management fees and internal accounting credits to RIS involve "plan assets" under ERISA is unpersuasive.  Opp. at 28.  Plaintiffs cite *Haddock v. Nationwide*, 419 F. Supp. 2d 156, 166-67 (D. Conn. 2006), a case that has been widely criticized and distinguished in other fee cases brought by Plaintiffs' counsel.  *See, e.g.*,  Hecker, 556 F.3d at 584.  The other cases cited by Plaintiffs (Opp. at 28-29) do not address what constitutes "plan assets," particularly not in the context of intercompany accounting credits.

Plaintiffs' further suggestion that the migration from mutual funds to separate accounts in the Pension Plan "arguably" represents "less favorable treatment" for the Plan

12

is equally unpersuasive.  Opp. at 28.  Plaintiffs again miss the mark as PTE 77-3 focuses

on whether the 401(k) Plan was treated differently than other shareholders *in the mutual*

*funds*.  PTE 77-3 does not address the availability of investments in vehicles other than

mutual funds, such as separate accounts and collective investment trusts, for which

different prohibited transaction exemption rules apply.  *See* 29 U.S.C. §1108(b)(8)

(describing different terms for exemption for separate accounts and bank-maintained

collective funds).  The only case Plaintiffs cite*, Spano v. Boeing Co.,* 125 F.Supp.3d 848

(S.D. Ill. Dec. 30, 2014), does not involve PTE 77-3.

### C.     Summary Judgment Should Be Granted on Plaintiffs' "Alternative Investment" Claims.

#### (i)     Separate Accounts and CITs

Plaintiffs argue BB&T Defendants breached a fiduciary duty to select alternatives

to mutual funds due to "corporate self-interest."  Opp. at 31 (citing *Spano,* 125 F.Supp.3d

at 867-68).  Unlike *Spano*, Plaintiffs have provided no credible evidence that, except for

cost, separate accounts were "otherwise identical" to BB&T mutual funds.  Opp. at 31.

Instead, they simply assume the presence of BB&T's self-interest because the 401(k)

Plan did not transition from mutual funds to separate accounts as the Pension Plan did.

*Id.*

Courts have concluded that ERISA does not require fiduciaries to prefer one type

of investment type over another, and they have rejected claims based only on *cost*; i.e.,

without any additional showing that the investment was otherwise imprudent.  *See*

*Hecker*, 556 F.3d 575, 586 (7th Cir. 2009) ("nothing in ERISA requires every fiduciary to

13

scour the market to find and offer the cheapest possible fund (which might, of course, be plagued by other problems")).

Further, even if there was a duty to consider alternatives to mutual funds, Plaintiffs incorrectly argue that the Compensation Committee failed to do so. At the same 2006 meeting when approval was granted to move the Pension Plan's investments from mutual funds to separately managed accounts, the Committee was advised by its investment consultant that due "to administrative requirements" not applicable to pension plans, "mutual funds are the most common types of investment vehicles used within defined contribution plans." *See* Doles Decl. ¶ 25, Ex X at BBT218831. Moreover, Plaintiffs do not dispute that the Committee approved moving from mutual funds to collective investment trusts (CITs) when the investment consultants recommended the change to CITs. *See* Reeder Decl. ¶¶ 25-26 and Exhibit P at BBT003787-88. Accordingly, Plaintiffs' claim that BB&T Defendants did not consider alternative investments fails as a matter of law and is contrary to the record evidence.

### (ii) Passive versus Active Funds

Plaintiffs deny claiming "that actively managed funds are per se imprudent," but at the same time argue the BB&T Defendants should have used only index funds. *See* Opp. at 32. There is no fiduciary duty to "consider" using index funds, much less include them in a 401(k) plan. *See Brotherston*, 2017 WL 1196648 at *7. Plaintiffs' expert could not provide any data showing that index funds were predominant in defined contribution plans at any time. *See* Exhibit AA at 325-27. Moreover, even if Plaintiffs could show there was a duty to include passively managed funds, the Committee *did* consider and did

14

include them.  *See* Exhibit X at BBT3913 (adding passively managed Vandguard Institutional Index Fund); Exhibit Y at BBT3443-44 (adding passively managed Vanguard International Index Fund).  Plaintiffs' passive fund claim fails as a matter of law and otherwise lacks foundation.

### (iii)  BIC

Plaintiffs do not attempt to distinguish the cases that the BB&T Defendants cited establishing there is no ERISA duty to favor a stable value fund over the BIC.  *See* Brief at 27, 29-30.  They base their claim, instead, on the difference between an initial draft of a 2009 Cardinal report and the final version provided to the Committee.  Plaintiffs argue that changes from the initial draft demonstrate an issue of fact regarding whether BB&T Defendants, "for disloyal reasons," rejected Cardinal's initial recommendation to replace the BIC with a stable value fund.  Opp. at 32.[3]

The initial draft Plaintiffs rely upon was Cardinal's first-ever report to BB&T, when it had little understanding of the BIC's history, benefits, and risks.  *See* Exhibit Z, Cardinal Advisor Sean Kane Dep. Tr. at 161-179.  Cardinal's revision reflected a deeper analysis of the BIC prior to making final recommendations.  *Id.*  The fact that Cardinal made the revision, in part, following discussions with BB&T employees does not evidence disloyalty or self-dealing.  Rather, it reflects the investment advisor's exercise of due diligence in discussing the investment with those knowledgeable about it, and

---

[3]  While Plaintiffs also make passing reference to the Money Market Fund, *see* Opp. at 32-33, they make no argument nor offer factual support for why this investment option was imprudent.

courts have recognized the benefits of discussing the benefits and risks of affiliated

products with internal experts.  *See DuPree*, 2007 WL 2263892, at *47.

## VI.  BB&T DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON  PLAINTIFFS' UNDERPERFORMANCE CLAIM (COUNT II).

Plaintiffs fail to rebut the evidence establishing that the Committee followed a

prudent process for selecting and monitoring Plan investment options.  *See* Opp. at 33-34.

They again cite the Cardinal reports regarding the BIC discussed above and argue that

Cardinal's allegedly "critical" comments "were frequently removed or diluted before the

reports were sent to the Compensation Committee."  *Id.* at 33.   As discussed above,

Plaintiffs' argument lacks foundation.  And, even if Plaintiffs were correct as to the

evaluation process for the BIC, they failed to provide evidence calling into question the

Committee's process for selecting and monitoring the other investment options they

inappropriately challenge based on their hindsight review.  *DiFelice,* 497 F.3d at 424

("Whether a fiduciary's actions are prudent cannot be measured in hindsight.").

Plaintiffs' citation to a Committee member's testimony that he did not recall

Cardinal's process for analyzing investment options (Opp. at 33) is a red-herring because

Plaintiffs do not provide evidence of any deficiency in Cardinal's process.  Whether or

not the Committee was aware of Cardinal's process is of no moment given Plaintiffs'

failure to identify any deficiency with that process.

At bottom, Plaintiffs have not cited evidence disputing that BB&T engaged

"outside . . .  financial expertise" from a consultant; held "meetings to ensure fiduciary

oversight of the investment decision"; continued "to monitor and receive regular updates

16

on the investment's performance"; and "appropriately investigate[d] the merits of an investment decision prior to acting"—all of which allow BB&T Defendants to "easily clear [the] bar" of reasonable fiduciary conduct. *See Tatum*, 761 F.3d at 358.

Plaintiffs also fail to provide an appropriate basis to establish a Plan loss. Dr. Buetow did not compare "the performance of the [BB&T funds] with the performance of a prudently invested portfolio." Opp. at 34 (citing *Evans v. Akers*, 534 F.3d 65, 74 (1st Cir. 2008); Exhibit AA at 274-75, 311-12, 324-26. Instead, he invented a methodology, unsupported by any data or experience, which maps all assets in the allegedly underperforming funds as of January 1, 2007 to several Vanguard index funds that have completely different risks, styles, and other investment characteristics. *See* Exhibit V, Buetow Report at ¶¶ 92-97. As Dr. Buetow later admitted, actively-managed funds would have offered a better comparison. *See* Exhibit AA at 312. Plaintiffs argue that index funds are "commonly included in other retirement plans" (Opp. at 34), but provide no admissible evidence supporting that position. In the absence of a comparison to the performance of a prudently managed portfolio, summary judgment should be granted on Plaintiffs' underperformance claims.

17

This the 6th of April, 2018.


Respectfully submitted,

*/s/ Mark L. Bieter*
Michael J. Prame*
Mark L. Bieter*
Justin M. Holmes*
GROOM LAW GROUP, CHARTERED
1701 Pennsylvania Ave., NW
Washington, DC 20006
Phone: (202) 861-9383
Fax" (202) 659-4503

Ronald R. Davis
NC State Bar No. 20408
Brent F. Powell
NC State Bar No. 41938
WOMBLE BOND DICKINSON (US) LLP
One West Fourth Street
Winston-Salem, NC 27101
Telephone: (336) 721-3600
Facsimile: (336) 721-3660
Email: ron.davis@wbd-us.com
        brent.powell@wbd-us.com


*Attorneys for BB&T Defendants*
*\*Appearing by special appearance*

## CERTIFICATE OF COMPLIANCE WITH WORD COUNT

I hereby certify, in reliance on the word-count feature in Microsoft Word, that this brief contains 4,397 words, including headings, footnotes and citations.

*/s/ Mark L. Bieter*
Mark Bieter

## CERTIFICATE OF SERVICE

This is to certify that, on April 6, 2018, an electronic copy of the foregoing ***REPLY IN SUPPORT OF BB&T DEFENDANTS' MOTION FOR SUMMARY JUDGMENT*** was served by email to the following:

Kai H. Richter*
krichter@nka.com

Heather Lea*
hlea@uselaws.com

Carl F. Engstrom*
cengstrom@nka.com

Sean E. Soyars*
ssoyars@uselaw.com

Jerome J. Schlichter
jschlicter@uselaw.com

David B. Puryear, Jr.
puryear@puryearandlingle.com

Michael A. Wolff*
mwolff@uselaws.com

Troy A. Doles*
todoles@uselaws.com

Adam W. Hansen*
ahansen@nka.com

*Appearing by special appearance*

*/s/ Mark L. Bieter*
Mark L. Bieter

19