IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ROBERT SIMS, *et al.*,

                    *Plaintiffs*,

vs.

BB&T CORPORATION, *et al.*,

                    *Defendant*.

No. 1:15-cv-732-CCE-JEP

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF CLASS SETTLEMENT**

Plaintiffs brought this action alleging that Defendant BB&T Corporation and other Defendants (collectively referred to as the "BB&T Defendants") breached their duties under the Employee Retirement Income Security Act of 1974 (ERISA) by causing the BB&T Corporation 401(k) plan ("Plan") to pay unreasonable investment management and administrative fees, selecting and retaining underperforming investment vehicles, engaging in prohibited transactions with both fiduciaries and parties in interest, and failing to monitor and remedy the breaches of other Plan fiduciaries.

This case has been vigorously litigated for over three years. After almost one year of arm's length negotiations with the assistance of a national mediator, the parties reached a Settlement that provides meaningful monetary and significant non-monetary relief to each settlement class member. In light of the litigation risks further prosecution of this action would inevitably entail, it is proper for the Court to: (1) preliminarily approve the proposed Settlement; (2) approve the proposed form and method of notice to the Class; and (3) schedule a hearing at which the Court will consider final approval of the Settlement.

1

## I. THE CLAIMS IN THE CASE

Plaintiffs filed this action on September 4, 2015. Doc. 1. In the current and active complaint as of the filing of this motion, Plaintiffs assert the following six claims. In Count I, Plaintiffs allege that BB&T Defendants breached their fiduciary duties by causing the Plan to pay excessive administrative fees to BB&T's Retirement Institutional Services "RIS" in the form of uncapped and unrebated revenue sharing. In Count II, Plaintiffs allege that BB&T Defendants breached their fiduciary duties by selecting and retaining underperforming and high-cost proprietary investments in the Plan. In Count III, Plaintiffs allege that BB&T Defendants breached their fiduciary duties in retaining BB&T's proprietary investment in the Plan known as the Bank Investment Contract ("BIC"). In Count V, Plaintiffs allege that BB&T Defendants breached their duties to appropriately monitor, and remedy the breaches of other Plan fiduciaries. Finally, in Counts VI and VII, Plaintiffs allege that BB&T Defendants engaged in prohibited transactions. BB&T Defendants dispute these allegations and deny liability for any alleged fiduciary breaches or ERISA violations.

## II. THE ACTION

Since the filing of the initial complaint, the parties engaged in over two years of hard-fought litigation and contentious discovery proceedings that eventually included production of over 260,000 pages of documents, the designation and deposition of 6 experts, and over 16 fact depositions. Plaintiffs filed their motion for class certification on April 10, 2017, which BB&T Defendants opposed. Docs. 146, 194, 218. The Court

granted class certification on August 28, 2017. Doc. 223.

In addition, the parties filed numerous discovery-related motions and BB&T Defendants filed dispositive motions, including a motion to dismiss (Doc. 51), and a motion for summary judgment. Doc. 314. The motion to dismiss was denied. Doc. 58. Defendants' motion for summary judgment was granted in part and denied in part. Doc. 369. Ultimately, with trial less than two weeks away, the parties notified the Court that they had reached an agreement in principle.

### III. THE TERMS OF THE PROPOSED SETTLEMENT

In exchange for releases and for the dismissal of the action and for entry of a judgment as provided for in the Settlement, BB&T Defendants will make available to Settlement Class Members the benefits described below.

#### A. Monetary Relief

The settlement provides for a $24 million Settlement Fund, returning significant money to current and former BB&T employees who were participants in the Plan. All of the money will be paid out; BB&T Defendant will not receive anything back. The Gross Settlement Fund will be used to pay the participants' recoveries as well as Class Counsel's Attorneys' Fees and Costs, Administrative Expenses of the Settlement, and Class Representatives' Compensation as described in the Settlement.

Most class members will automatically receive their distributions directly into their tax-deferred retirement account. Those who already left the Plan and no longer have an active account will be given the option to receive their distributions in the form of a

3

check made out to them individually or as a roll-over into another tax-deferred account. As a result, most class members will receive their distributions tax-deferred, further enhancing the significant monetary recovery.

### B. Additional Terms

The settlement also provides significant future relief in terms of scope and duration while also securing additional commitments for participants' benefit. In particular, the parties have agreed to the following additional terms: 1) the Plan fiduciaries will engage a consulting firm to conduct a Request for Proposal for investment consulting firms that are unaffiliated with BB&T and engage an Investment Consultant to provide independent consulting services to the Plan; 2) the Investment Consultant will evaluate the Plan's investment options and provide the Plan fiduciaries with an objective evaluation of the options in the Plan; 3) within two years after the entering of the Final Order, Plan fiduciaries will participate in a training session regarding ERISA's fiduciary duties; 4) during the two year period following entry of the Final Order, BB&T will rebate to the Plan participants any 12b-1 fees, sub-ta fees, or other monetary compensation that any mutual fund company pays or extends to the Plan's recordkeeper based on the Plan's investments; and 5) if, during a two-year time period following the entry of the Final Order, BB&T decides to charge Plan participants a periodic fee for recordkeeping services, the Plan fiduciaries will conduct a Request for Proposal for the provision of recordkeeping and administrative services.

### C. Notice and Class Representatives' Compensation

The notice costs and all costs of administration of the Settlement will come out of the $24,000,000 Gross Settlement Amount. In addition, the award of incentive payments in the amount of $20,000 for each of the Class Representatives will also be paid from the Gross Settlement Amount. This amount is well in line with precedent recognizing the value of individuals stepping forward to represent classes — particularly in a case like this one, where the potential benefit to any individual does not outweigh the cost of prosecuting the claim and there are significant risks, including the risk of no recovery, the risk of alienation from their employers and peers, and the risk of uncompensated time and energy devoted to a lawsuit with uncertain prospects for success. *Kruger v. Novant Health, Inc.*, 2016 2016 U.S. Dist. LEXIS 193107, *17−18 (M.D.N.C. Sept. 29, 2016); *Krueger v. Ameriprise Fin.,* Inc.*, 2015 U.S. Dist. LEXIS 91385, *10−11 (D. Minn. July 13, 2015)(approving awards of $25,000 to each of the named plaintiffs); *Tussey v. ABB, Inc.*, 2012 U.S. Dist. LEXIS 157428, *33–34 (W.D. Mo. Nov. 2, 2012)(J. Laughrey) (approving awards of $25,000 to each of three named plaintiffs in 401(k) fee ERISA class action); *Beesley v. Int'l Paper Co.*, 2014 U.S. Dist. LEXIS 12037, *13–14 (S.D. Ill. Jan. 31, 2014)(J. Herndon)(approving $25,000 to each of six surviving named plaintiffs in 401(k) fee settlement and noting that "ERISA litigation against an employee's current or former employer carries unique risks and fortitude, including alienation from employers or peers."). The total award requested for the Class Representative represents a tiny fraction of Gross Settlement Fund.

### D. Attorneys' Fees and Costs

"[I]n a common fund case such as this, a reasonable fee is normally a percentage of the Class recovery." *Smith, et al. v. Krispy Kreme Doughnut Corporation et al.*, 2007 U.S. Dist. LEXIS 2392, *3−4 (M.D.N.C. January 10, 2007); see also *Boeing Co. v. VanGemert*, 444 U.S. 472, 478 (1980). In this case, Class Counsel will request attorneys' fees to be paid out of the Gross Settlement Fund in an amount not more than one-third of the Gross Settlement Amount, or $8,000,000, as well as reimbursement for costs incurred of no more than $1,100,000. "A one-third fee is consistent with the market rate in settlements concerning this particularly complex area of law." *Kruger*, 2016 U.S. Dist. LEXIS 193107, *7−8; *Krueger*, 2015 U.S. Dist. LEXIS 91385 at *3−9; *Beesley v. Int'l Paper Co.*, 2014 U.S.Dist. LEXIS 12037, *7 citing *Will v. General Dynamics Corp.*, 2010 U.S.Dist. LEXIS 123349, *9 (S.D.Ill. Nov. 22, 2010); see also *In re Airline Ticket Comm'n Antitrust Litig.*, 953 F.Supp. 280 (D. Minn 1997)(J. Rosenbaum) (approving one-third fee of $86 million class settlement). In addition, a one-third fee to Class Counsel is also provided for in the contract with the Class Representatives. Schlichter Decl. ¶4; Specht Decl. ¶4.

Further, although Class Counsel will not request a fee greater than one-third of the monetary recovery, the additional terms of the Settlement add meaningful value in addition to the monetary amount. This results in the requested fee being lower than a one-third award. In addition, Class Counsel will not seek fees from the Settlement Class for the following: (1) the interest earned on the Gross Settlement Amount; (2)

communications with Class Members or BB&T Defendants during the Settlement Period and review of related documents; and (3) work required if mediation or enforcement of the Settlement is necessary. *Smith*, 2007 U.S. Dist. LEXIS 2392, at *10−11. A formal application for attorneys' fees and costs and for the Class Representatives incentive awards will be made at least 30 days prior to the deadline for Class Members to file objections to the Settlement.

## IV. ARGUMENT

The first step in approving any proposed settlement in a class action is preliminary approval. *Horton, et al. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F.Supp. 825, 827 (E.D.N.C. 1994). At this stage, the Court reviews the proposed settlement to determine whether it is sufficient to warrant public notice and a hearing. *Id*. If so, the final decision on approval is made after a "fairness" hearing. *Id*., see also Manual for Complex Litigation, Fourth, §13.14, at 172-73 (Fed. Jud. Ctr. 2004) ("Manual Fourth"). The Court is not required at the preliminary stage to make any final determinations:

> The judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing.

*Id*. § 21.632, at 321. As stated above, preliminary approval is only the first step in a two-step process required before a class action may be finally settled. *Id*. at 320. In some cases this initial assessment can be made on the basis of information already known to the court and then supplemented by briefs, motions and an informal presentation from the settling parties. *Id*.

7

In this case, the Court should preliminarily approve the Settlement for the reasons that: (a) the proposed Settlement was the product of extensive arm's length negotiations; (b) the Settlement was executed only after Class Counsel conducted very extensive discovery and extensive negotiations; (c) Class Counsel have concluded that the Settlement is fair, reasonable, and adequate; and, (d) the Settlement is sufficiently fair, reasonable, and adequate to warrant sending notice of the Settlement to the Class Members. *Smith, et al. v. Krispy Kreme Doughnut Corporation et al.*, Case 05-cv-00187-WLO, Doc. 71 at 4−5 (M.D.N.C. September 27, 2006).

### A. The Settlement is the product of extensive arm's length negotiations

There is an initial strong presumption that a proposed class action settlement is fair and reasonable when it is the result of arms-length negotiations. *Horton,* 855 F.Supp. at 830, *Great Neck Capital Appreciation Inc. Partnership, L.P. v. Pricewaterhouse Coopers, LLP*, 212 F.R.D. 400, 410 (W.D.Wis. 2002); see also *Newberg on Class Actions* §11.41 at 11-88 (3d ed. 1992). As described above, the Settlement here is the result of lengthy, contentious and complex arms-length negotiations between the parties. These negotiations extended over a period of almost a year and included the involvement of an independent mediator. Counsel on both sides are experienced and thoroughly familiar with the factual and legal issues presented. It is recognized that the opinion of experienced and informed counsel supporting settlement is entitled to considerable weight. *EEOC v. Faribault Foods, Inc.*, 2008 U.S.Dist. LEXIS 29132, *12 (D. Minn. March 28, 2008) (J. Kyle).

### B. The Settlement was executed only after significant investigation and extensive litigation

As explained above, Class Counsel conducted substantial investigation and analysis of hundreds of thousands of pages of documents that occurred over a period of years. As part of their normal discovery practice in preparing the case for depositions and trial, the majority of these documents were electronically indexed and sorted, and thereafter individually examined, analyzed and cataloged by an attorney. Class Counsel also thoroughly reviewed and analyzed additional and voluminous documents provided by the Class Representatives and third parties.

As part of their trial preparations, Class Counsel had experts intimately familiar with financial services industry practices, investment management, recordkeeping, and retirement industry practices examine and analyze these and other documents and provide opinions based on the record and their experience. Thus, in preparing this case for trial and during settlement negotiations, Class Counsel extensively developed the facts supporting the Plaintiffs' claims in tremendous detail. *Horton,* 855 F.Supp. at 829−830, see also *In re Jiffy Lube Securities Litigation*, 927 F.2d 155, 157−158 (4th Cir. 1991).

### C. Class Counsel believe the Settlement is fair, reasonable, and adequate

Class Counsel is very experienced in class action litigation generally and, in particular, class litigation arising from breaches of fiduciary duties to retirement plans under ERISA. Lead Class Counsel pioneered this area of litigation and is intimately familiar with this unique and complex area of law, as noted by other courts considering cases alleging ERISA breaches of fiduciary duty with respect to fees and investments in

401(k) plans. *Kruger*, 2016 U.S. Dist. LEXIS 193107, *16−17; *Tussey v. ABB, Inc*., 2012 U.S.Dist. LEXIS 157428, *10 (W.D.Mo. Nov. 2, 2012) ("Plaintiffs' attorneys are clearly experts in ERISA litigation"); *Beesley v. Int'l Paper Co*., 3014 U.S.Dist. LEXIS 12037, *4–5 (S.D.Ill. Jan 31, 2014)(J.Herndon)("The Court remains impressed with Class Counsel's navigation of the challenging legal issues involved in this trailblazing litigation and Class Counsel's commitment and perseverance in bringing this case to this resolution."); *Will v. Gen. Dynamics Corp*., 2010 U.S.Dist. LEXIS 123349, *10 (S.D.Ill. Nov. 22, 2010)(J. Murphy)("Counsel's actions have led to dramatic changes in the 401(k) industry, including heightened disclosure and protection of employees' and retirees' retirement assets"); *Nolte v. Cigna Corp*., 2013 U.S.Dist. LEXIS 184622, *5 (C.D.Ill. Oct. 15, 2013)(J. Baker)("The law firm Schlichter, Bogard & Denton is the leader in 401(k) fee litigation."); *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, 8:15-cv-01614, Dkt. No. 188, at p.4 (Aug. 17, 2018) (approving settlement and noting "some very efficient and good work on the part of the plaintiffs' attorney" from Nichols Kaster, PLLP); *Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*, 2018 WL 2183253, at *7 (N.D. Cal. May 11, 2018) (describing class counsel from Nichols Kaster, PLLP as "skillful and experienced attorneys with significant expertise in the ERISA context"); *Moreno v. Deutsche Bank Americas Holding Corp.*, 2017 WL 3868803, at *11 (S.D.N.Y. Sept. 5, 2017) ("Plaintiffs' counsel [Nichols Kaster, PLLP] are experienced litigators who serve as class counsel in ERISA actions involving defined-contribution plans[.]");Jacklyn

Wille, *Deutsche Bank Can't Shake 401(k) Fee Lawsuit*, Bloomberg BNA (Oct. 17, 2016)[1] (stating that "Nichols Kaster has been the driving force behind [the] flurry of litigation over proprietary mutual funds."). It is Class Counsel's opinion that the Settlement is fair and reasonable. Schlichter Decl. ¶2; Specht Decl. ¶3.

As set forth above, the Settlement provides a substantial monetary relief component in the amount of $24,000,000. In addition, the Settlement provides substantial and comprehensive non-monetary and additional relief. Finally, independent of Class Counsel's opinion as to the reasonableness of the Settlement, the parties will also submit the settlement terms to an Independent Fiduciary which will provide an opinion on the Settlement's fairness before the final approval hearing.

### D. The Settlement is fair, reasonable, and adequate to warrant sending notice to the Settlement Class

Due process and Rule 23(e) do not require that each Class Member receive notice, but do require that class notice be "reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank and Trust Co.*, 339 U.S. 306, 314 (1950). "Individual notice must be provided to those class members who are identifiable through reasonable effort." *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 175 (1974).

Here, the proposed form and method of notice of proposed settlement agreed to by

---

[1] Available at www.bna.com/deutsche-bank-cant-n57982078691/ (last visited Nov. 27, 2018).

the parties satisfy all due process considerations and meet the requirements of Fed. R. Civ. P. 23(e)(1). Plaintiffs' proposed forms of settlement notices are attached to the Settlement. The proposed Settlement Notices will fully apprise Class Members of the existence of the lawsuit, the Settlement, and the information they need to make informed decisions about their rights, including (i) the terms and operation of the Settlement; (ii) the nature and extent of the release, (iii) the maximum counsel fees that will be sought; (iv) the procedure and timing for objecting to the Settlement and the right of parties to seek limited discovery from objectors; (v) the date and place of the fairness hearing; and (vi) the website on which the full settlement documents, and any modifications to those documents, will be posted.

The notice plan consists of multiple components designed to reach Class Members. First, the Settlement Notice will be sent by first-class mail to the current or last known address of all Class Members shortly after entry of the Preliminary Approval Order. Addresses of the Class Members are maintained by the Plans' recordkeeper and/or BB&T personnel, who use this information for, *inter alia*, mailing plan notices, participant communications, and other plan-related information. Class Members include both current and former employees of BB&T and its affiliates. In addition to the Settlement Notice, Class Counsel will develop a dedicated website, www.BB&T401ksettlement.com, solely for the settlement, and a link to that website will appear on Class Counsel's website, www.uselaws.com and www.nka.com. The notice plan also includes a requirement for follow-up by the Settlement Administrator for those Class Members whose notice letters

are returned because they no longer reside at such address. Class Members may also receive notice of the settlement by reading published articles likely to mention the settlement.

Thus, the form of notice and proposed procedures for notice satisfy the requirements of due process and the Court should approve the notice plan as adequate. *See* Newberg on Class Actions, § 8.34.

## V. CONCLUSION

For these reasons, the Motion for Preliminary Approval of Class Settlement should be granted.

November 30, 2018

/s/ Kai H. Richter
NICHOLS KASTER, PLLP
Kai H. Richter, MN No. 0296545*
Carl F. Engstrom, MN Bar No. 0396298*
4600 IDS Center
80 S 8th Street
Minneapolis, MN 55402
Telephone: 612-256-3200
Facsimile: 612-338-4878
krichter@nka.com
cengstrom@nka.com

*Additional Class Counsel and Attorneys for Bowers Plaintiffs*

*appearing by special appearance

Respectfully submitted,

/s/ Jerome J. Schlichter
SCHLICHTER BOGARD & DENTON LLP
Jerome J. Schlichter, MO No. 32225*
Troy A. Doles, MO No. 47958*
Heather Lea, MO No. 49872*
100 South Fourth Street
St. Louis, Missouri 63102
(314) 621-6115, (314) 621-5934 (fax)
jschlichter@uselaws.com
tdoles@uselaws.com
hlea@uselaws.com

*Lead Class Counsel and Attorneys for Smith Plaintiffs*

*appearing by *special appearance*

/s/ David B. Puryear, Jr.
David B. Puryear, Jr.
North Carolina State Bar No. 11063
PURYEAR & LINGLE, PLLC
5501-E Adams Farm Lane
Greensboro, NC 27407
(336) 218-0227
puryear@puryearandlingle.com

*Local Counsel for all Plaintiffs*

# CERTIFICATE OF COMPLIANCE

Pursuant to the Civil Local Rules of Practice for the United States District Court for the Middle District of North Carolina, this is to certify that the foregoing document complies with the font and point selections approved by the Court in Local Rule 7.3(d)(1). The foregoing was prepared on computer using Times New Roman font (13 point). I certify that the above-referenced Memorandum contains 3073 words.

/s/ Jerome J. Schlichter

# CERTIFICATE OF SERVICE

I certify that on November 30, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically send notification of filing to all counsel of record.

/s/ Jerome J. Schlichter

14