| | |
|---|---|
| ROBERT SIMS, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> BB&T CORPORATION, *et al.*, <br><br> *Defendants*. | 1:15-CV-732 |
| BREWSTER SMITH, JR., *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> BB&T CORPORATION, *et al.*, <br><br> *Defendants*. | 1:15-CV-841 |

**MEMORANDUM OPINION AND ORDER**

Catherine C. Eagles, District Judge.

The plaintiffs seek court approval of a settlement agreement with the defendants and dismissal of this ERISA class action with prejudice. In December 2018, the Court granted preliminary approval and ordered notice of the settlement be issued to putative class members. No class member filed an objection to the proposed settlement. The Court held a fairness hearing on May 1, 2019. After considering the record, the proposed

settlement agreement, the supporting memorandum and exhibits, and the statements of counsel during the fairness hearing, the Court finds that the settlement has met the requirements of Rule 23 and is fair, reasonable, and adequate. The motion will be granted.

I.  **Procedural History**

In September 2015, plaintiff Robert Sims and others sued BB&T Corporation, its employee benefits plan committee, board of directors, compensation committee, investment advisor, and certain employees for violations of the Employee Retirement Income Security Act of 1974. Doc. 1.[1] In October 2015, plaintiff Brewster Smith and others filed a similar lawsuit. Complaint, *Smith v. BB&T Corp*, No. 1:15-CV-841, Doc. 1 (M.D.N.C. Oct. 8, 2015). The Court consolidated the two cases in November 2015. Doc. 33. After motions to dismiss were resolved, largely but not entirely in the plaintiffs' favor, *see* Docs. 58, 150, the Court certified a class in August 2017 of:

> All current and former participants and beneficiaries of the [Plan] from January 1, 2007 through the date of judgment, who were injured by the conduct alleged in the Second Amended Complaint, excluding the Defendants.

Doc. 223 at 2, 12 (alteration in original).

After discovery, *see* Doc. 266, the Court granted in part and denied in part the defendants' motion for summary judgment. Doc. 369. Several claims remained for trial. Doc. 369 at 8–9, 13–15, 16–18, 19, 22, 25–26 (denying summary judgment on claims

---

[1] All docket citations are to the *Sims* docket, No. 15cv732, unless noted otherwise.

based on acts or omissions between September 2009 and September 2012, fees paid to Sterling, excessive fees and underperforming mutual funds, the Bank Investment Contract, failure to monitor, certain prohibited transactions, and a claim for other equitable relief).

The parties engaged in ongoing mediation, *see* Doc. 188; Doc. 439 at 2, and less than a week before trial, the parties advised the Court that they reached a settlement of all claims. Minute Entry 10/25/2018. Class Counsel filed a consent motion on November 30, 2018, for preliminary approval of a settlement agreement that would settle all remaining claims, Doc. 436, which the Court granted. Doc. 439. The Court also ordered notice to be sent to class members, setting a deadline for objections of 30 days before the fairness hearing, i.e., April 1, 2019. *Id*. at ¶ 4. Later, the Court granted a joint motion by the parties to amend the class action settlement agreement to clearly exclude the BB&T defendants by amending the Settlement Class to comprise:

> [A]ll persons who participated in the Plan and had an Active Account at any time during the Class Period, including any Beneficiary of a deceased person who participated in the Plan at any time during the Class Period, and/or Alternate Payee, in the case of a person subject to a Qualified Domestic Relations Order who participated in the Plan at any time during the Class Period. *Excluded from the Settlement Class are the BB&T Defendants.*

Doc. 443 (emphasis on added text). Class Counsel also filed a motion for attorney's fees. Doc. 444. No class members objected to any aspect of the proposed settlement or to the motion for attorney's fees.

Class Counsel filed a consent motion for final approval of the settlement on April 17, 2019, two weeks before the scheduled fairness hearing. In support of the motion, Class Counsel provided a memorandum from Gallagher Fiduciary Advisors, LLC, the independent fiduciary who reviewed the settlement on behalf of the BB&T employee retirement plan. Doc. 446-1. Gallagher concluded, after reviewing the proposed settlement, documents from the litigation, and interviewing counsel for the plaintiffs, that the settlement resulted from an arms-length negotiation and was reasonable. *Id.*

Class Counsel also attached to the motion an affidavit from the project manager at Analytics Consulting LLC, who stated that Analytics received data for the addresses of 72,632 Settlement Class Members from the defendants and mailed notices to these addresses. Doc. 446-2 at ¶¶ 5–6. Analytics also verified that the Notices and Claims Form were published on a Settlement website maintained by Class Counsel. *Id.* at ¶ 5. Analytics confirmed that USPS provided 928 updated addresses and returned 2,802 notices as undeliverable, of which Analytics was able to locate 2,119 new addresses through Experian. *Id.* at ¶ 7. Analytics also maintained a toll-free phone number, receiving 1,660 calls and resulting in 33 additional notices mailed. *Id.* at ¶ 8. As of April 15, Analytics had received 9,032 completed Claim Forms out of 30,611 former participants. *Id.* at ¶¶ 6, 9. The settlement does not require the 42,021 current Plan participants to submit a claim form to receive settlement payments. *Id.* at ¶ 6; Doc. 436-2 at pp. 19–20 ¶¶ 6.5, 6.6.

At the fairness hearing held on May 1, 2019, Class Counsel stated the Administrator received a total of 11,509 claim forms from former Plan participants by the April 22, 2019, deadline, which is over one third of the 30,611 former participants identified and considered a high percentage in these matters. While individual recoveries will vary according to the settlement formula, the average recovery will be approximately $342. The parties also filed materials confirming compliance with notice requirements to state and federal government officials under the Class Action Fairness Act, 28 U.S.C. § 1715, *see* Docs. 448, 448-1, 448-2, and an amended attorney's expenses request. *See* Docs. 449, 449-1, 449-2. No class member filed any objections to the terms of the settlement or the request for attorneys' fees.

II. The Proposed Settlement Agreement

The proposed settlement agreement provides for a Gross Settlement Amount[2] of $24 million. Doc. 436-2 at p. 6 ¶ 2.28. From this and subject to court approval, Class Counsel may receive up to $8 million in attorney's fees and $1.1 million for litigation costs and expenses, and each of ten representative plaintiffs may receive up to $20,000. *Id.* at p. 22 ¶ 7.1, p. 4 ¶¶ 2.13, 2.14; p. 16 ¶ 5.8. The remaining $14.7 million, less administrative expenses and a contingency reserve, will be distributed to class members in amounts proportional to their average quarterly balance during the Class Period. *Id.* at pp. 16-17 ¶ 5.8; p. 18 ¶ 6.4.2.

---

[2] All capitalized terms used herein have the Definitions in the Settlement Agreement, Doc. 436-2 at Article 2, as amended by the Court's January 31, 2019 Order, Doc. 443, which is incorporated herein by reference.

5

The agreement requires the defendants to solicit requests for proposals and hire an independent consultant to evaluate the Plan's investment options and make other recommendations. *Id.* at pp. 25–27 (Article 10). The defendants must also participate in ERISA fiduciary training, which they may pay for out of Plan assets but not the settlement fund, and the defendants must also rebate certain fees to the Plan. *Id.* at pp. 26–27 ¶¶ 10.3, 10.4.

The proposed settlement defines a Class Period of September 4, 2009 through October 25, 2018, Doc. 436-2 at p. 4 ¶ 2.12, and includes two categories of Class Members that will recover: (i) "Current Participant[s]" who had an active account during the Class Period and a balance of greater than $0 in the Plan as of October 25, 2018, *id.* at p. 4 ¶ 2.19; and (ii) "Former Participant[s]" who had an active account during the Class Period but did not have a balance greater than $0 as of October 25, 2018. *Id.* at p. 5 ¶ 2.26. Current Participants automatically receive their settlement payments into their retirement accounts, *id.* at pp. 19–20 ¶¶ 6.5, 6.6 whereas Former Participants must timely submit a claim form to receive a settlement check. *Id.* at p. 3 ¶ 2.5, p. 20 ¶ 6.7. However, not all class members will recover, as the settlement provides that distributions will not be made of $5.00 dollars or less because this amount would "cost more in processing than its value." *Id.* at p. 18 ¶ 6.4.3.

Under Article 8 of the agreement, Class Members agree to release all related parties of all related claims regardless of whether they discover facts related to the claims after the settlement is finalized. Doc. 436-2 at pp. 23–24 ¶¶ 8.1–8.3. The released parties

include all defendants, their insurers, related corporations, agents, and other associated entities. *Id.* at p. 7 ¶ 2.38. The Released Claims include all potential claims arising under any law and out of actions during the Class Period, September 4, 2009, to October 25, 2018. *Id.* at pp. 7–8 ¶ 2.39. This includes claims arising out of the approval of the settlement agreement or the amounts that Class Members recover under the agreement. *Id.* However, the agreement provides that the release shall not "preclude any action to enforce the terms of this Settlement Agreement in accordance with the procedures set forth" in the agreement. *Id.* at p. 23 ¶ 8.2. Class Counsel alone have standing to enforce the settlement agreement, and Class Counsel have the "full and sole discretion to take whatever action they deem appropriate, or to refrain from taking any action, in response to such request." *Id.* at p. 30 ¶ 13.5. Class Counsel also agree to monitor and enforce the agreement without additional fees. *Id.*

### III. Final Class Action Settlement Approval

"It has long been clear that the law favors settlement." *United States v. Manning Coal Corp.*, 977 F.2d 117, 120 (4th Cir. 1992). This is particularly true in class actions. *Sullivan v. DB Invest., Inc.*, 667 F.3d 273, 311 (3d Cir. 2011); *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998) (noting the "strong judicial policy in favor of settlements, particularly in the class action context"); *Reed v. Big Water Resort, LLC*, No. 2:14-cv-01583-DCN, 2016 WL 7438449, at *5 (D.S.C. May 26, 2016) (quoting same); William H. Rubenstein, 5 Newberg on Class Actions § 13.44, n.1 (5th ed. 2018) (gathering cases).

7

The Court should approve a class settlement if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). "In applying this standard, the Fourth Circuit has bifurcated the analysis into consideration of fairness, which focuses on whether the proposed settlement was negotiated at arm's length, and adequacy, which focuses on whether the consideration provided the class members is sufficient." *Beaulieu v. EQ Indus. Servs., Inc.*, No. 5:06-CV-00400-BR, 2009 WL 2208131, at *23 (E.D.N.C. July 22, 2009) (citing *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158–59 (4th Cir. 1991)). The Court acts as a fiduciary of the class members. *Sharp Farms v. Speaks*, 917 F.3d 276, 293–94 (4th Cir. Feb. 28, 2019).

A four-factor test is applied to determine the fairness of a proposed settlement: "(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the area [of law at issue]." *Jiffy Lube*, 927 F.2d at 159; *see also U.S. Airline Pilots Ass'n v. Velez*, No .3:14-cv-00577-RJC-DCK, 2016 WL 1615408, at *4 (W.D.N.C. Apr. 22, 2016) (applying same).

The Court assesses the adequacy of the settlement through the following factors: "(1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement." *Jiffy Lube*, 927 F.2d at 159; *Beaulieu*, 2009

WL 2208131, at *26 (applying factors). "The most important factors in this analysis are the relative strength of the plaintiffs' claims on the merits and the existence of any difficulties of proof or strong defenses." *Sharp Farms*, 917 F.3d at 299.

Under Rule 23, the Court also considers whether the proposed settlement treats class members equitably relative to each other. *See* Fed. R. Civ. P. 23(e)(2)(D). Any differential treatment requires an obvious justification. 4 Newberg On Class Actions § 13:59 (5th ed. 2018).

### IV. Analysis

All four fairness factors favor approval here. Class Counsel have extensive experience in ERISA and class action litigation. *See* Doc. 445 at 9; Doc. 445-1 at ¶¶ 3–10; Doc. 445-3 at ¶ 3. BB&T vigorously defended against the plaintiffs' claims, which were likewise prosecuted zealously. The settlement was reached after extensive adversarial litigation, including two motions to dismiss, a contested motion for class certification, motions for summary judgment, and discovery that also included motions. Class Counsel declares that the parties exchanged over 275,000 pages of documents and deposed 6 experts and 25 fact witnesses during discovery. Doc. 445-2 at ¶¶ 18, 20, 28. There is no evidence or indication that those negotiations were anything but adversarial and arm's length.

The proposed settlement treats class members equitably relative to each other. *See* Fed. R. Civ. P. 23(e)(2)(D). While no distributions will be made of $5.00 or less, the justification for this different treatment is obvious, as this *de minimis* recovery would

9

"cost more in processing than its value," Doc. 436-2 at p. 18 at ¶ 6.4.3, and thus would increase administrative costs and diminish recovery to class members overall while providing marginal benefits to the few class members.

The record also supports the conclusion that the settlement is adequate. There is no doubt that the parties will incur substantial additional litigation expense if this matter were to proceed to trial. The Court had set aside approximately two weeks for the trial, which would require the full-time attendance of several lawyers and back-up assistance from others, as well as administrative support, and there would be substantial expenses associated with travel and hotels for counsel and expert witnesses.

The proposed settlement provides that administrative fees and a contingency reserve will be deducted from the settlement fund before distribution, in addition to attorney's fees, expenses, and the service awards. Doc. 436-2 at p. 16 ¶ 5.8. At the Court's request, the parties provided the Court with an estimated of these costs, including approximately $150,000 for the Settlement Administrator, Analytics; $35,000 for the independent Fiduciary, Gallagher Fiduciary Advisors, LLC; and an estimated $50,000 for the Plan's current recordkeeper to pull records necessary to administer the settlement; at the fairness hearing, counsel confirmed that these amounts had been adequate.

As noted, there is an average recovery of approximately $342 per class member, though individual recovery will vary depending on the class member's account size. Some class members may recover as much as $10,000. The settlement amount is substantial in light of the tens of thousands of class members who will recover damages.

10

As for strength of the merits of plaintiffs' case, multiple claims survived summary judgment but that does not necessarily mean success at trial or on appeal. *See, e.g., Tussey v. ABB, Inc.*, 746 F.3d 327 (8th Cir. 2014); *Tibble v. Edison Int'l*, 843 F.3d 1187 (9th Cir. 2016). The Court has developed deep familiarity with this case through the extensive motions practice over the years it has been pending and concurs with Class Counsel's evaluation that while there was substantial evidence to support the plaintiffs' claims, there were several obstacles, both legal and factual, to ultimate recovery. The settlement amount reasonably takes into account the strengths and weaknesses of plaintiffs' case, as well as the likelihood that the defendants would appeal a full recovery at trial, thus delaying any benefit to the class members, and that the settlement includes non-monetary terms beneficial to the class that might not be included in any recovery at trial.

The recovery for the class is substantial and adequate, in view of the risks and costs of proceeding to trial. Class Counsel assert and the record supports that the $24 million in monetary compensation represents 19% of the total investment and recordkeeping damages sought by the plaintiffs. *See* Doc. 445 at 12 (citing Doc. 413 at 46–47, 67–96 and estimating $124 million in total damages). Non-monetary relief and tax benefits add an additional value of almost $15 million to the settlement class. *Id.* at 13–14 & n.4.

Class Counsel have not expressed any concerns as to the solvency of the defendants or their ability to recover if they were to proceed to trial. Nor is there a basis for any such concerns on the record.

Overall, the record and materials submitted by Class Counsel, the report of the independent fiduciary, and the absence of any objections by class members support the conclusion that the proposed settlement is fair, reasonable, and adequate, and it should be approved. The Court so finds.

## V. Conclusion

The motion for final approval of the settlement agreement, Doc. 446, is **GRANTED** and the settlement of the Class Action is approved as adequate and as fair and reasonable to the Plan and the Settlement Class. Judgment will be entered concomitantly.

**SO ORDERED**, this the 6th day of May, 2019.

UNITED STATES DISTRICT JUDGE